IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY JAKES, | |
| Plaintiff, | |
| v. | Case No. 19 C 2204 |
| KENNETH BOUDREAU, et al., | Judge Manish S. Shah |
| Defendants. | Magistrate Judge Beth W. Jantz |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Kenneth Boudreau, Fred Bonke, Louis Caesar, Michael Delacy, and Ken Burke's (collectively, the "Officer Defendants") motion challenging Plaintiff's privilege assertions and objections over Plaintiff's medical, mental-health, and educational records. *See* dkt. 97.

For the reasons explained below, Officer Defendants' motion, dkt. 97, is granted in part and denied in part. Defendants are limited to seeking medical, mental-health, and school disciplinary records from no more than 5 years prior to Plaintiff's incarceration, which began with his arrest on September 16, 1991. With particular respect to Plaintiff's school disciplinary records, however, Plaintiff does have the statutory right to review them and to challenge their contents pursuant to the Illinois School Student Records Act, 105 ILCS 10/1 *et seq.*, before they are produced to Defendants. The Court also finds good cause to enter Officer Defendants' proposed HIPAA order, *see* dkt. 97-7, as explained below.

## BACKGROUND

The following allegations are drawn from Plaintiff's complaint. *See* dkt. 1. In 1991, City of Chicago police officers interrogated Plaintiff Anthony Jakes, who was then 15 years old, about the murder of Rafael Garcia. Plaintiff falsely confessed to acting as a lookout for a botched robbery, was arrested and subsequently convicted of murder and attempted armed robbery, and spent 20 years in prison before he was exonerated.[1] He has sued Defendants, raising claims under 42 U.S.C. § 1983, including for coerced confession, violation of due process, and liberty deprivation, and claims under Illinois law, including for intentional infliction of emotional distress. As relevant here, Plaintiff seeks damages for the "extreme suffering, humiliation, fear, nightmares, anxiety, depression, and despair" that he continues to experience because of his wrongful imprisonment. Dkt. 1 at 24–25.

After Officer Defendants relayed to Plaintiff their intention to issue several subpoenas to obtain, among other things, Plaintiff's medical, mental-health, and school records, Plaintiff objected. In pertinent part, Plaintiff asserted that (1) his mental-health records are privileged, (2) the unlimited temporal scope of the requested medical and mental-health records is too broad, and (3) his school disciplinary records are irrelevant. Dkt. 100 at 5–15. In order to protect his asserted

---

[1] Plaintiff confessed to acting as a lookout for "Little A," a nickname for Arnold Day, and a person named "Darren," who tried to rob Garcia. Day was tried for Garcia's murder but was acquitted. Day has filed his own lawsuit against the City and individual police officers based on his wrongful conviction for a different murder and attempted armed robbery. *See Day v. Boudreau*, No. 19 C 7286 (N.D. Ill. filed Nov. 15, 2019).

privileges, Plaintiff proposed a procedure by which any subpoenas for his medical and mental-health records be returnable to his counsel for a privilege review within 7 days, after which Plaintiff would either produce all the documents, or provide a privilege log identifying the documents withheld.[2]

## DISCUSSION

Officer Defendants now move this Court to enter a HIPAA and Mental Health Protective Order that would allow them to obtain all of Plaintiff's educational records including his disciplinary records, and to obtain his medical and mental-health records without Plaintiff's counsel first conducting a privilege review. *See* dkt. 97. Plaintiff opposes the motion and asks that the Court entirely deny Defendants access to his school disciplinary records, and enter a HIPAA protective order that would allow his counsel to review his medical and mental-health records for privilege before Defendants receive them. *See* dkt. 100. The Court heard oral argument on the motion on August 7, 2020. Dkt. 104.

### I. Disclosure of Plaintiff's Mental-Health Records

Federal law recognizes a psychotherapist-patient privilege. *Jaffee v. Redmond*, 518 U.S. 1, 15–16 (1996). A plaintiff can waive that privilege, however. *Id.* at 15 n.14*; see Santelli v. Electro-Motive*, 188 F.R.D. 306, 308 (N.D. Ill. 1999). Courts have not settled on a definitive test to determine whether a plaintiff has waived the privilege; instead courts apply essentially three different approaches—

---

[2] Plaintiff does not object to Defendants obtaining his juvenile criminal records nor his educational records (other than the school disciplinary records).

3

broad, narrow, and middle-ground. *Coleman v. City of Chicago*, No. 1:18-cv-00998, 2019 WL 7049918, at *1 (N.D. Ill. Dec. 23, 2019). Under the broad approach, a plaintiff waives the privilege simply by seeking emotional-distress damages. *Id.* In contrast, under the narrow approach, a plaintiff must affirmatively use his communications with his psychotherapist in the litigation, including by calling the therapist as a witness, in order to waive the privilege. *Id.* Unsurprisingly, the middle-ground approach falls between the 2 others: a plaintiff waives the privilege when he alleges something more than "garden variety" emotional damages. *Id.* "Garden variety" damages arise from "the negative emotions that [a plaintiff] experienced essentially as the intrinsic result of the defendant's alleged conduct," as opposed to the "resulting symptoms or conditions [the plaintiff may have] suffered" (*e.g.,* sleeplessness, nervousness, depression). *Santelli*, 188 F.R.D. at 309; *see also Flowers v. Owens*, 274 F.R.D. 218, 225–26 (N.D. Ill. 2011) (collecting various definitions of "garden variety").

After *Jaffee*, the Seventh Circuit has addressed this privilege issue just once, briefly opining without much further analysis that "[i]f a plaintiff by seeking damages for emotional distress places his or her psychological state in issue, the defendant is entitled to discover any records of that state." *Doe v. Oberweis Dairy*, 456 F.3d 704, 718 (7th Cir. 2006). As Officer Defendants urge the Court to do here, some opinions in the Northern District of Illinois have concluded that this statement indicates that the Seventh Circuit employs the broad approach. *See Laudicina v. City of Crystal Lake*, 328 F.R.D. 510, 514–15 (N.D. Ill. 2018);

4

*Taylor v. City of Chicago*, No. 14 C 737, 2016 WL 5404603, at *3 (N.D. Ill. Sept. 28, 2016). But others have concluded that *Oberweis*' statement is unclear, and therefore should not be taken as holding that the broad approach necessarily governs. *See Caine v. Burge*, No. 11 C 8996, 2012 WL 6720597, at *2 (N.D. Ill. Dec. 27, 2012); *Flowers*, 274 F.R.D. at 224.

The Court reads *Oberweis* as requiring less to waive a plaintiff's psychotherapist-patient privilege than the narrow approach's mandate that the plaintiff actively use his treatment provider's records or testimony in the litigation. But beyond that, the Court need not decide in this case whether the broad or middle-ground approach governs. Because Plaintiff has alleged emotional-distress damages and those allegations go beyond "garden variety," as follows, the Court concludes that Plaintiff has waived his psychotherapist-patient privilege under either approach.

First, Plaintiff asserts a state-law tort claim for intentional infliction of emotional distress ("IIED"), which by its very terms requires Plaintiff to prove that Defendants' conduct caused him "severe emotional distress." *Gross v. Chapman*, No. 19-cv-02743, 2020 WL 4430564, at *4 (N.D. Ill. July 31, 2020) (quotation marks and citation omitted). Thus, because Plaintiff's mental health is "clearly at issue" as an element of this claim, he has waived the psychotherapist-patient privilege. *Laudicina*, 328 F.R.D. at 513 n.4.

Next, in addition to Plaintiff's IIED claim, Plaintiff alleges long-lasting effects from Defendants' actions and from being wrongfully incarcerated for

5

20 years, including "extreme suffering, humiliation, fear, nightmares, anxiety, depression, and despair." Dkt. 1 at 24–25. These allegations go beyond the ordinary emotional effects a plaintiff might allege; they are far more akin to "symptoms and conditions" that Plaintiff developed as a result of Defendants' conduct. *Santelli*, 188 F.R.D. at 309. Indeed, it is difficult to imagine mental effects from such a long period of allegedly wrongful imprisonment as ever being categorized as "garden variety." *See Coleman*, 2019 WL 7049918, at *2. Thus, Plaintiff waived the privilege by electing to pursue damages for the unusual distress he alleges that he suffered.

Finally, although Plaintiff argues that he could make some later decision to limit his claims, the Court bases its decision on the case as it stands now. *See id.* at *3–4 (finding Plaintiff had waived privilege and distinguishing other cases where it was not clear as to the extent to which plaintiff had put his mental state at issue); *see also Flowers*, 274 F.R.D. at 229 ("indeterminate state" of damages allegations by plaintiff insufficient for protective order). Plaintiff has already made strategic choices to plead and pursue an IIED claim and to allege damages that are out of the norm, dkt. 1 at 24–25, 34–35, and has made no stipulation or promise not to pursue such damages at this point. And, as Officer Defendants' point out, dkt. 102 at 10–11, allowing Plaintiff to review his mental-health records first enables him potentially to use the privilege as a sword and shield: he could disclose "favorable mental health records and claim privilege over records weakening [his] emotional damages claims." *Coleman*, 2019 WL , at *4; *see also Santelli*, 188 F.R.D. at 308. At this point in the case, Plaintiff and

6

Defendants should have equal opportunity to review the mental-health records that are incredibly pertinent to Plaintiff's IIED claim and asserted damages for emotional distress.

## II.     Temporal Scope of Plaintiff's Medical and Mental-Health Records

Plaintiff argues that Defendants should be limited to obtaining the medical and mental-health records beginning from 2 years prior to his incarceration and "to only those medical and mental health records relevant" to his claims.[3] Dkt. 100 at 5–7. Officer Defendants counter that the appropriate timeframe for these records is from 10 years prior to Plaintiff's incarceration because Plaintiff's claimed injuries span 30 years and are wide ranging. Dkt. 102 at 6–10.

Under Federal Rule of Civil Procedure 26.1(b)(1), a party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and ***proportional*** to the needs of the case" (emphasis added). The Court has "extremely broad discretion in controlling discovery." *Coleman*, 2019 WL 7049918, at *5 (quoting *Jones v. City of Elkhart*, 737 F.3d 1107, 1115 (7th Cir. 2013)) (quotation marks omitted). Although Defendants are certainly entitled to some records predating Plaintiff's arrest and incarceration as they are relevant to his claims, the Court must ensure that the discovery sought is proportional.

---

[3] At oral argument, Plaintiff's counsel clarified that Plaintiff is not seeking to place a temporal limitation on purely educational records, e.g., test scores and grades, and focused on the appropriate scope of the temporal limitations for the medical and mental-health records.

To the parties' credit, both counsel during oral argument acknowledged that it is difficult to draw a bright-line rule when it comes to temporal limitations of this sort, and the Court agrees with that sentiment. Nevertheless, Officer Defendants have not established that discovery of these records starting from a full decade prior to Plaintiff's arrest is appropriate in this case. Indeed, the cases Officer Defendants cite in support of a 10-year period are inapposite. One involved a child's exposure to radioactive materials potentially decades earlier that allegedly caused her brain cancer; the discovery in that case needed to encompass a lengthy period of time in order to explore causation. *Sauer v. Exelon Gen. Co., LLC*, No. 10 C 3258, 2011 WL 3584780, at *1–2 (N.D. Ill. Aug. 15, 2011). And in another case that Officer Defendants cite, the Court concluded that the scope of discovery should match the period of an alleged conspiracy. *Superior Beverage co., Inc. v. Owens-Illinois, Inc.*, No. 83 C 512, 1989 WL 65030, at *1, 5 (N.D. Ill. June 5, 1989). Furthermore, as a practical matter, Officer Defendants' proposed timeframe would entitle them to records from when Plaintiff was 5 years old. Such records seem of limited utility, where records from closer in time will provide a more pertinent picture of Plaintiff's relevant physical and mental state before his arrest at age 15.

Indeed, other opinions in this District have limited the temporal scope of similar records to 2 or 5 years before the incidents giving rise to similar § 1983 claims. *See Coleman*, 2019 WL 7049918, at *5–7 (finding that mental-health records from 2 years before arrest in a case where plaintiffs spent 23 years wrongfully imprisoned were discoverable when balancing plaintiffs' privacy interests against

8

the relevancy of the records); *Laudicina*, 328 F.R.D. at 511 (allowing for discovery of records from 5 years before excessive-force incident); *Glaze v. City of Chicago*, No. 14 C 3120, Dkt. 100-5 (N.D. Ill. filed Dec. 17, 2014) (order regarding plaintiff's motion to quash subpoena) (adopting temporal limitation of 5 years prior to incident as reasonable under the circumstances where records would cover relevant prior injuries), attached as Ex. E to Plaintiff's response, dkt. 100-5.

The Court therefore will set a temporal limit on the medical and mental-health records of 5 years before Plaintiff's arrest in September 1991. In this case, 5 years is appropriate as opposed to 2 years because Plaintiff's alleged injuries span a significant length of time, and 5 years of records will allow Defendants to establish Plaintiff's baseline health prior to his arrest and allegedly wrongful incarceration, which is relevant and proportional here.

### III. Plaintiff's School Disciplinary Records

Lastly, Officer Defendants maintain that they are entitled to subpoena Plaintiff's disciplinary records because the records could contain information relevant to Plaintiff's prior contacts with law enforcement and be used to impeach Plaintiff's testimony concerning his relationship with Arnold Day and with what the Defendants refer to as the "Blackstone street gang." Dkt. 102 at 11–12. Plaintiff contends, however, that his school disciplinary records are irrelevant and not discoverable.

The Court concludes that the information Officer Defendants seek does fall into the broad purview of relevancy under Federal Rule of Civil Procedure 26.1.

9

Information need not be admissible to be discoverable under Federal Rule of Civil Procedure 26.1(b)(1), and impeachment material may be discoverable even if otherwise not relevant to the parties' claims or defenses. *City of Chicago v. Smollett*, No. 19 C 4547, 2020 WL 3643121, at *2 (N.D. Ill. July 6, 2020). Because Plaintiff raises a claim alleging that his confession was coerced, Plaintiff's prior experience with law enforcement is indeed a relevant topic for discovery. *See Dassey v. Dittmann*, 877 F.3d 297, 304 (7th Cir. 2017) (en banc) (in voluntariness analysis, "[r]elevant factors include the suspect's age, intelligence, and education, as well as his familiarity with the criminal justice system."). Additionally, the disciplinary records are also likely relevant because they could be used to attack Plaintiff's credibility or lead to evidence that could be used to attack his credibility. For example, should the records reveal Plaintiff's connections to Day or to a street gang, Defendants may use that information to impeach Plaintiff if he denies any such association. The records may also reveal potential associates of Plaintiff's whom Defendants may want to contact to further explore these connections. Again, however, the Court finds that the appropriate temporal scope of these records should be from 5 years prior to Plaintiff's arrest, as that will provide Defendants with a sufficient picture of Plaintiff's disciplinary records from ages 10 to 15.

This finding does not end the matter, however. Plaintiff asserts that he has a privacy interest in his school disciplinary records, citing to both the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232(g), and the Illinois School Student Records Act, 105 ILCS 10/6(a). The assertion of a privilege or

10

privacy interest under FERPA is a nonstarter; the statute does not give individuals any enforceable rights. *Jackson v. Indian Prairie SD 204*, No. 08 C 4312, 2009 WL 10681225, at *2 (N.D. Ill. Aug. 26, 2009).

But the Illinois School Student Records Act provides that no school student records may be released unless one of the enumerated exceptions are fulfilled, including that when a court orders that the records must be turned over, the student's parents (or the student, after he becomes an adult) receive written notice and an opportunity to review the records and challenge their contents. 105 ILCS 10/2(g), 10/6(a)(5). As explained in *Jackson*, the Illinois Appellate Court has interpreted that provision to mean that any privilege a nonparty has over school records does not protect those records from discovery if the trial court undertakes an in-camera inspection to determine their relevancy prior to production. 2009 WL 10681225, at *3; *see People v. K.S.*, 900 N.E.2d 1275, 1278–80 (Ill. App. Ct. 2008); *People v. Harlacher*, 634 N.E.2d 366, 373 (Ill. App. Ct. 1994). Thus, the Court in *Jackson* concluded that, "out of an abundance of caution," it should review the school records of a third party in-camera to determine their relevancy before production. 2009 WL 10681225, at *3.

But what should happen here, when the records are those of a party, in this case the (now adult) plaintiff? The statute provides that Plaintiff has the right to prompt written notice of the court order, "the nature and substance of the information proposed to be released," and "an opportunity to inspect and copy the school student records and to challenge their contents pursuant to Section 7" of the

11

statute. 105 ILCS 10/6(a)(5). Section 7 provides that Plaintiff is able to challenge "the accuracy, relevance or propriety of any entry in the school student records" except, as potentially relevant here, "references to expulsions or out-of-school suspensions" under a procedure established by the State Board of Education. 105 ILCS 10/7. In the absence of any specific guidance from the Illinois state or federal courts, the Court follows the plain terms of the statute.

Accordingly, the Court orders that Plaintiff's school disciplinary records for the 5-year period before his arrest are discoverable by Defendants via subpoena, as they are relevant under Federal Rule of Civil Procedure 26.1. Before they are produced to Defendants, however, Plaintiff has the right to inspect and copy the records and to challenge their contents pursuant to the procedures outlined in the Illinois School Student Records Act, 105 ILCS 10/1 *et seq.*

## CONCLUSION

For the reasons above, Officer Defendants' motion challenging Plaintiff's privilege assertions and objections over Plaintiff's medical, mental-health, and educational records, dkt. 97, is GRANTED in part and DENIED in part. The Court finds good cause to enter Officer Defendants' proposed HIPAA order. Defendants are limited to seeking medical, mental-health, and school disciplinary records from no more than 5 years prior to Plaintiff's arrest and incarceration. Officer Defendants must issue all of their contemplated subpoenas within 14 days of this order.

Further, because the Court is ordering that Plaintiff's school disciplinary records can be disclosed, Plaintiff has the right to review them and to challenge their contents pursuant to the Illinois School Student Records Act, 105 ILCS 10/1 *et seq*. In order to facilitate the prompt disclosure of those records, Officer Defendants should issue any subpoenas for the school disciplinary records within 14 days of this order, and direct that they be made returnable to Plaintiff's counsel. Upon receipt of the disciplinary records, Plaintiff must review them and begin any necessary statutory challenges within 14 days of receipt.

E N T E R:

Dated: September 4, 2020

BETH W. JANTZ
United States Magistrate Judge