## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ANTHONY JAKES ) | |
| ) | Case No. 19 CV 02204 |
| Plaintiff, ) | |
| ) | Hon. Manish S. Shah |
| ) | |
| vs. ) | Magistrate Judge Beth W. Jantz |
| ) | |
| ) | |
| KENNETH BOUDREAU, ESTATE OF MICHAEL ) | JURY DEMAND |
| KILL, LOUIS CAESAR, THOMAS PACK, ) | |
| MICHAEL DELACY, KEN BURKE, FRED ) | |
| BONKE, CITY OF CHICAGO, and UNKNOWN ) | |
| EMPLOYEES OF THE CITY OF CHICAGO ) | |
| ) | |
| Defendants. ) | |

### DEFENDANT CITY OF CHICAGO'S RESPONSE IN
### OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

Defendant City of Chicago, by its attorneys, responds in opposition to Plaintiff's Motion to Compel Discovery Responses from Defendant City of Chicago ("Motion") and states:

### INTRODUCTION

Plaintiff has moved to compel the City to produce documents culled from four requests for production taken almost entirely from his Second Set of Requests for Production (RFPs) from the City. That set of RFPs was served on October 14, 2019, almost fourteenth months before this motion was filed. In the interim, Plaintiff wrote three letters pursuant to L.R. 37.2 to the City; engaged in two consultations with City counsel pursuant to that rule; and sent one email and one letter memorializing those meet-and-confers. During that period of time, the City timely answered that discovery, timely responded to Plaintiff's L.R. 37.2 correspondence, and participated without delay in the consultations required by the rule. Plaintiff's motion to compel was finally filed on December 10, 2020.

Plaintiff's obvious lack of urgency in seeking to obtain the documents at issue in its motion reflects their insignificant nature: Defendant Officers' payroll records, their thirty-year-old photographs, and a range of "communications" that Plaintiff acknowledges he does not even know exist. Additionally, Plaintiff's third set of RFPs relating to twenty-two non-404(b) witnesses is similarly problematic. As explained below, the City has made good faith and valid objections to producing these documents; based on these objections and the reasons supporting them, the City asks this Court to deny Plaintiff's motion in its entirety.

**I.     Plaintiff's Request for Documents Showing "Location, Movements and Assignments" Should Be Denied Because the Documents Sought Do Not Provide that Information and are Irrelevant. They Also No Longer Exist.**

Plaintiff's Second Set of RFPs No. 17 and the City's original objections read as follows:

17.    Documents sufficient to show the location, movements, and assignments of each of the individual Defendant Officers from September 15, 1991 through September 18, 1991 and February 3 to February 5, 1992. This request specifically seeks but is not limited to the Department Attendance and Assignment sheets for the specified time period, as well as any personal or work-related calendars, diaries, journals, and the like. This request includes but is not limited to any and all Documents that would be relevant to determining your location and movements on the dates described in Plaintiff's Complaint, such as, for example, any police reports, arrest lists, ticket book, log sheets, time sheets, payroll records, overtime requests, etc.

**RESPONSE:** Defendant City of Chicago objects to this request for production as vague and ambiguous ("sufficient to show," "location," "movements," "assignments," "personal or work-related calendars," "diaries," "journals," "and the like," "etc."), overbroad, unduly burdensome, not relevant, not proportional to the needs of the case, not limited to a reasonable time frame, and directed to the Individual Defendants.

Plaintiff's RFP No. 17 asks the City to produce various categories of documents for specific dates "*sufficient to show the location, movements, and assignments of each of the individual Defendant Officers.*" *Id.* (emphasis added). As an initial matter, the City has advised Plaintiff that it already has produced the most significant police reports responsive to this request—namely, the Investigative File and the Records Division (RD) File related to the

Chicago Police Department's (CPD) investigation of the Garcia homicide for which Plaintiff was arrested and convicted. See Dkt. 126-2 (April 20, 2020, L.R. correspondence at 5). Taken together, these two files contain official Department reports, notes, and miscellaneous documents generated or received by detectives during a homicide investigation, and they directly show each Defendant Officer's relevant "location, movements, and assignments" as well as his activities related to the investigation leading to Plaintiff's arrest.

Nonetheless, Plaintiff's motion states he "seeks time sheets, payroll documents, overtime requests and the like to shed light on when, where, and how long each defendant was working during the investigation," and that "[t]hese records show Defendants' activities related to the Garcia homicide investigation while they were interrogating Plaintiff and his co-defendant . . . ." Motion at 3. However, Plaintiff's Motion should be denied for one simple reason: the requested documents do not provide the information Plaintiff seeks. Rather, these documents merely indicate if the Defendant Officers were working on any given day and for how long. They do not indicate their geographic whereabouts or track their activities during any specified time period. Thus, as it advised Plaintiff in its April 20, 2020, L.R. 37.2 letter, "[t]he City's core objection to this request . . . is relevance . . . ." Dkt. 126-2 at 5. Time sheets, payroll documents, and overtime requests simply have no probative value with regard to the location, movements, and assignments of the Defendant Officers.

A review of examples of the documents Plaintiff has requested plainly shows that they are devoid of the information Plaintiff seeks. Exhibit A is a CPD "Time and Attendance Record"—a combination "time sheet" and "payroll document" for an individual Department member—that indicates days and hours worked (including overtime) over a seven-week period. Exhibit B is an CPD "Attendance & Assignment Record" that indicates the members of a CPD

3

unit who were present or absent for duty on a given day and their "assignment description" in general categories (*e.g.*, "Supv Sergeant"). Nowhere on these documents is there *any* information about the "location, movements, and assignments" of CPD members.[1] Accordingly, Plaintiff's motion to compel a response to Request to Produce No. 17 should be denied.

Plaintiff's Request to Produce No. 17 is irrelevant for other reasons as well. Plaintiff specifies in this request that he seeks responsive documents "from September 15, 1991 through September 18, 1991 and February 3 to February 5, 1992." Those ranges include irrelevant dates. Regarding the September 1991 dates, CPD documents and sworn testimony in the record indicate that (1) Garcia was murdered on September 15 at 11:55 p.m.; (2) Defendant Louis Caesar investigated the crime scene soon after the shooting; (3) Defendants Thomas Pack and Michael DeLacy transported Plaintiff to Detective Area Three for questioning after Pack received an anonymous phone call on September 16 at approximately 12:30 p.m. that Plaintiff may have knowledge about the murder; (4) Defendants Michael Kill and Kenneth Boudreau later that day conducted a field investigation and located a witness who identified Plaintiff as a lookout for a planned robbery of Garcia; (5) Kill and Boudreau confronted Plaintiff with this information at about 10:45 p.m., and Plaintiff confessed to his role in the crime and identified Arnold Day as the shooter; and (6) Plaintiff gave an oral statement to Assistant State's Attorney Brian Grossman on September 17 at approximately 4:30 a.m. at which Defendants Caesar and Burke were present. Thus, the investigation of the Garcia homicide as it related to Plaintiff began on September 16 and ended the next day by 4:30 a.m.[2]

---

[1] As explained below, "Time and Attendance" and "Attendance & Assignment" records for the time periods at issue in Plaintiff's request no longer are systemically retained. The documents described in text were extracted from the personnel file of an individual Department member and a Complaint Register file, respectively, where such documents can be randomly found on a limited basis.

[2] According to Plaintiff, September 15 through 18 are the "rough dates" when he and Day were interrogated. Dkt. 126 at 2. This statement is disingenuous. Plaintiff certainly knows the exact date when

4

Hence, Plaintiff's request for documents pertinent to September 15 and September 18 is not only irrelevant, but unduly burdensome, overbroad, and disproportional to the needs of the case. Indeed, these objections also apply to Plaintiff's request for time sheets, payroll records, or overtime requests pertinent to September 16 and 17. According to Plaintiff, "[t]he requested documents would verify whether a Defendant was working on [a] particular date and the hours for which he was paid. This would serve as evidence that the Defendant was not sick or off duty on the date or time certain events occurred during the Garcia investigation, and could thus support Plaintiff's claims." Dkt. 126 at 4. As explained above, however, the investigation of Plaintiff's role in the Garcia homicide essentially began and ended in fewer than thirty hours, and the investigative role of each Defendant Officer in that time period can be accounted for.[3] Consequently, even if the purpose of obtaining the requested documents is to confirm that a Defendant was in fact "working" on the date the investigation was taking place—and that is *not* the explicitly stated purpose of this request—Plaintiff's document production request is irrelevant.

The same objections noted above—lack of relevance, undue burden, overbreadth, and disproportionality to the needs of the case—also apply to Plaintiff's request for similar documents from February 3 to February 5, 1992. CPD police reports indicate that on February 4, 1992, Day was arrested for and confessed to his role in the Garcia homicide and his role in the unrelated May 17, 1991, murder of Jerrod Irving. Among the Defendants in *Jakes*, only Kill and

---

he was questioned about the Garcia murder, and the City has produced to Plaintiff documents that show the exact date when Day was questioned about the Garcia homicide and the murder of Jerrod Irving, for which Day was charged.

[3] Defendant Sergeant Fred Bonke did not participate in the Garcia homicide investigation. In his role as supervisor, he approved various paperwork related to the investigation, prepared by certain Defendant detectives during that time period. It is unclear from the Complaint under what theory Plaintiff seeks to hold Defendant Bonke liable.

Boudreau were involved in any capacity in the investigation of Day's roles in the Garcia and Irving homicides. Allegations that Day has made against Kill are based solely on his investigation of the Garcia homicide that led to Plaintiff's confession to the crime in which he also implicated Day; Kill played no role in the Irving homicide investigation. Allegations against Boudreau appear to be based on his interactions with Jakes as described above and his interactions with Day on February 4, 1992, when he interviewed Day regarding both homicides—interactions that are documented in police reports already produced to Plaintiff. Hence, production of the documents requested by Plaintiff for February 3 through 5, 1992, related to Arnold Day, regarding all of the Defendant Officers in this case, add nothing to Plaintiff's prosecution of his claims against them, and the City stands on its objections to producing them.

     If Plaintiff wishes to discern "the location, movements, and assignments of each of the individual Defendant Officers" during the Garcia homicide investigation as it relates to Plaintiff, that information is already available to him, not only in the documents contained in the Investigative and RD Files referred to above, but by way of the extensive testimony the Defendant Officers have given in various judicial proceedings—pretrial motion hearings, trial, post-conviction hearings, and depositions in other cases. Transcripts of this testimony are part of the evidentiary record in this case, and many of these documents were produced by Plaintiff himself. Plaintiff contends that "the fact that information has been provided in one format does not mean the City is not required to produce responsive documents that contain the same or related information." Dkt. 126 at 6. But as explained above, the documents requested in RFP No. 17 do not contain any information about the location, movements, and assignments of the Defendant officers, and therefore do not contain "the same or related information" as that

6

available in sworn testimony given by the Defendant Officers on multiple occasions. If this Court denies his motion to compel as to this request for production, Plaintiff still has access to precisely the information he purports to seek in this document production request.

Finally, apart from the substantive reasons why Plaintiff's motion should be denied, there is a practical reason as well: the requested documents no longer exist. As the attached 1991 and 1992 retention schedules demonstrate, the kinds of records Plaintiff seeks from those years (Attendance and Assignment Records, Time and Attendance Records, and "overtime" records) are long past their retention periods and have been destroyed. *See* Group Exhibit C. And the attached Records Disposal Certificates show the same thing for Attendance and Assignment Records. *See* Exhibit D.[4]

In sum, for the reasons explained above, Plaintiff's RFP No. 17 is (among other things) overbroad, unduly burdensome, not relevant, and not proportional to the needs of the case, and this Court should deny Plaintiff's motion to compel the City to produce the documents requested.[5]

### II. Plaintiff's Request for Defendant Officers' Photographs Showing Their Appearance "Closest in Time" to the Investigation Should Be Denied Because They are Irrelevant and the Rationale for Obtaining Them is Disingenuous.

Plaintiff's Second Set of RFPs No. 19, and the City's original objections, read as follows:

19. A photograph of each of the Defendant Officers showing each Officer's appearance. This request seeks the photographs of each Officer in the Department's possession taken closest in time to the Garcia Murder Investigation.

---

[4] The information in the attached retention schedules for Time and Attendance Records suggests that Records Disposal Certificates also exist for these records for the time periods at issue in Plaintiff's RFP. As of the filing of this brief, however, the City had requested but not yet received these documents from CPD.

[5] As the discussion in text clearly demonstrates, the City's objections are not "boilerplate," as Plaintiff contends, *see* Dkt. 126 at 3-4, and therefore should not be considered "waived." The same is true of the City's objections to the other RFPs at issue in Plaintiff's motion.

> **RESPONSE:** Defendant City of Chicago objects to this request for production as vague and ambiguous ("showing each Officer's appearance," "taken closest in time to the Garcia Murder Investigation," "the Garcia Murder Investigation"), not relevant, and not proportional to the needs of the case. The City further objects to the production of any photograph of any police officer based on privacy and safety concerns, and to producing any photograph of any of the Defendant Officers without a procedure and protocol so that any identification using such photographs is properly non-suggestive.

Plaintiff purports that he "does not seek the [requested] photographs for the purpose of identifying Defendants." Dkt. 126 at 6. Rather, "as but one example of the reason the photographs are relevant, Plaintiff plans to show the jury how Defendants appeared to 15-year-old Plaintiff at the time of his interrogation. All parties have aged in the nearly 30 years since Plaintiff's wrongful conviction and Plaintiff is entitled to show the jury that the now-elderly Defendants were far younger at the time relevant to Plaintiff's claims." *Id.* at 6-7.

That one and only reason Plaintiff offers for why these photographs are relevant is entirely meritless. How Defendants "appeared" to Plaintiff at the time of the Garcia homicide investigation has no probative value whatsoever; based on common human experience, the jury surely will understand and appreciate the effects of the aging process on Defendant Officers and Plaintiff alike.

Additionally, the City has legitimate concerns that, despite his assertion otherwise,Plaintiff *does* intend to use these photographs to help himself and witnesses identify particular Defendant Officers and the particular conduct in which each engaged. Indeed, that is one logical interpretation of what Plaintiff means when he says he wants the photos to show how Defendant Officers "appeared." The City's concerns are reinforced by Plaintiff's use of group pleading in his Complaint, referring to "Defendants" generally rather than identifying the specific Defendants who engaged in the specific misconduct required for Section 1983 individual liability. Finally, Plaintiff's request is vague and ambiguous. "Appearance" and "taken closest in

8

time" are imprecise, and there is no necessary reason that a photograph "taken closest in time to the Garcia Murder Investigation" will "show each Officer's appearance" during that investigation. For these reasons, the City maintains its objections to producing the photographs that Plaintiff has requested.[6]

If this Court orders it to produce these photographs, the City asks that Plaintiff first be required to identify the photographs that correspond to each of the Defendant Officers by means of the non-suggestive protocols set out in *Davis v. City of Chicago*, 219 F.R.D. 593 (N.D. Ill. 2004). Such protocols include the requirements that Plaintiff provide a full physical description of each Defendant Officer before examining photos (preferably by means of answers to formal interrogatories); appropriate filler photos be included in the array; the identifications be made and stated during the identification process before Plaintiff can confer with his attorney; a recording of the statements of Plaintiff at the procedure be made; and Plaintiff provide a degree of certainty for each identification. *See id.* at 596-600. Use of such "a fairly conducted identification procedure," *id.* at 600, will ensure a valid identification, and allow Defendants to adequately test the reliability of Plaintiff's identifications at deposition and/or trial. *See also Abernathy v. Village of Park Forest,* 2018 WL 5499789 (N.D. Ill., Oct. 29, 2018) (same, citing *Davis* and *Saunders v. City of Chicago*, 12-cv-9158 [ECF 468] (attached as Exhibit E)); *Ezell v. City of Chicago,* 18-cv-1049 [ECF 203] (attached as Exhibit F).[7]

---

[6] For instance, does "appearance" mean facial or body features? Does "closest in time" mean before or after the Garcia murder investigation, and how long before or after? What if the CPD photograph "closest in time" does not reflect the Officer's appearance as it was in September 1991 or February 1992, and how does the City know what each Officer looked like in those time periods? The City's objections to the vagueness and ambiguity of the request are hardly "boilerplate."

[7] Furthermore, the City requests that if photographs are ordered to be produced, they be produced as "Attorney's Eyes Only," as Judge Finnegan required in *Saunders,* so that they cannot be shown to witnesses in the absence of non-suggestive protocols.

### III. Plaintiff's Request for "Communications" Should be Denied Because it is Extraordinarily Overbroad, Burdensome and Disproportional.

Plaintiff's Second Set of RFPs No. 22, and the City's original objections, read as follows:

22. All Documents comprising, containing, or memorializing Communications of any kind relating to this case, including but not limited to memos, letters, faxes, e-mails, reports, notes, etc. This Request includes but is not limited to (a) all Communications between the Investigators and Plaintiff; (b) all Communications between the Investigators and the witnesses in this case; (c) all Communications with employees of the Cook County Sheriff's Department; (d) all Communications with any other law enforcement agencies; (e) all Communications with employees of the Cook County State's Attorney's Office; (f) all Communications between or among any person within the Department; and (g) all Communications between any of the Investigators. This request also includes any such Communications that are not included in the Investigative File for the Garcia Murder Investigation.

**RESPONSE:** Defendant City of Chicago objects to this request for production as vague and ambiguous ("Documents comprising, containing, or memorializing Communications of any kind relating to this case," "memos, letters, faxes, e-mails, reports, notes, etc.," "Communications," "Investigators," "the witnesses in this case," "any other law enforcement agencies," "any person within the Department," "Garcia Murder Investigation"), overbroad, unduly burdensome, not relevant, disproportional to the needs of the case, and calling for documents in the possession of other parties to this action and third parties. Subject to and notwithstanding these objections, Defendant City refers Plaintiff to RD File # P 454289 (CITY_JAKES 00001-00022), Investigative File RD # P 454289 (CITY_JAKES 00023-00195), and Defendants' Joint MIDP Responses (RFC_JAKES 000001-018568). Investigation continues.

Plaintiff's RFP No. 22 is a classic "fishing expedition"—"an attempt to discover information without knowing what it may be." https://idioms.thefreedictionary.com. This request asks for numerous "communications" between or among various individuals or entities, Plaintiff repeatedly uses the modal verb "may," which indicates that something *possibly* happened, to describe the documents he is seeking (e.g., "CPD investigators and other employees *may have sent or received* communications . . ."; ". . . investigators *may have discussed* other suspects . . ."; "CPD employees *may have discussed* . . .") (added emphasis). Thus, Plaintiff plainly has propounded this document production request without any idea what he hopes to

10

discover. For this reason alone, this Court should deny his motion to compel the City to respond to it any further than it already has.

This Court should deny Plaintiff's motion for other reasons as well. Request for Production No. 22 is vague and ambiguous (e.g., "Communications of any kind relating to this case," "the witnesses in this case," "any other law enforcement agencies," "any person within the Department"). It is overbroad, unduly burdensome, and disproportional to the needs of the case, insofar as it calls for all communications of any kind relating to this case over at least a thirty-year time period.[8] Finally, several of its subparts call explicitly for communications involving the "Investigators" (i.e., the Defendant Officers) and most of the remaining ones call implicitly for such communications, which would include documents in their possession and not that of the City.

Subject to and notwithstanding these objections, the City referred Plaintiff to the Investigative and RD Files in this case. These files contain documents responsive to subparts (a), (b), (f), and (g) that are relevant to this case. Furthermore, although Plaintiff omits telling the Court this, the City in 37.2 discussions informed Plaintiff that if he could identify a specific "communication" he believed was made and the basis for that belief, the City would endeavor to search for a record of that communication. Plaintiff has not done so, and the City stands on its objections as to the production of any additional documents and asks this Court to deny Plaintiff's motion to compel their production.

---

[8] Definition and Instruction No. 19 states that "[u]nless otherwise stated, the relevant time period for these discovery requests is the period beginning ten years before the date of Rafael Garcia's murder continuing through the conclusion of this litigation."

11

**IV. Plaintiff's Request for Investigative Files for Persons Who are Not Designated as 404(b) Witnesses Should Be Denied as Irrelevant, Overbroad, Vague, Unduly Burdensome and Disproportional to the Needs of the Case.**

Plaintiff's Third Set of RFPs, and the City's original objections, read as follows:

1. Your complete investigative file for every homicide in connection with which the Chicago Police Department investigated and/or questioned the individuals named in paragraph 83 of Plaintiff's complaint (ECF No. 1). [34 individuals listed]

**RESPONSE:** Defendant City objects to this request for production as vague and ambiguous ("complete investigative file," "in connection with which," "investigated and/or questioned," "paragraph 83 of Plaintiff's complaint"), overbroad ("complete investigative file," "every homicide," "investigated and/or questioned"), unduly burdensome, not relevant, disproportional to the needs of the case, not limited to a reasonable time frame, and calling for documents subject to the stay of *Monell* discovery entered in this case. Objecting further, Defendant City states that Plaintiff is or appears to be in possession of responsive documents for some if not all of the individuals listed in his request. Attorneys from the law firm of Loevy & Loevy currently represent or have represented some of the listed individuals, and Plaintiff in this case has produced more than 117,000 pages of documents that appear to be related to some if not all of the listed 404(b) witnesses in this request.

On December 9, 2020, the City and Plaintiff consulted regarding Plaintiff's Third Set of RFPs, which consists of a single request for CPD's Investigative Files for thirty-four individuals. In the interim between the service of the City's response and the parties' meet-and-confer, Plaintiff produced a "reduced list" of twelve Rule 404(b) witnesses, pursuant to this Court's order, *see* Dkt. 122, for purposes of his Rule 26(a)(1) disclosures. That list is attached hereto as Exhibit G.

Acting in the good faith to resolve discovery disputes required by L.R. 37.2, and subject to various objections, the City agreed to produce documents responsive to Plaintiff's request for production for the twelve individuals on the court-ordered reduced list. Plaintiff accepted the City's offer, but continues to insist that the City produce responsive documents for all thirty-four persons identified in the request for production. *See* Dkt. 126-12 (December 9, 2020, correspondence between counsel for Plaintiff and the City). This demand should be denied.

12

### A. The request is vague, overbroad, unduly burdensome, irrelevant, and disproportional to the needs of the case.

Plaintiff seeks homicide Investigative Files, from any year, in which any of the thirty-four persons listed in his request were "investigated" or "questioned." These terms are both vague on their face and meaningless without further context, which Plaintiff fails to provide. Short of performing a hand search of literally every CPD homicide file (of which there are thousands), the City would have to search its files electronically, and it has told Plaintiff it is limited in the electronic searches it can perform. The City has no reasonable way to search in this manner for homicide Investigative Files by the name of anyone included in them who was "investigated" or "questioned" or by the designation "witnesses." The City can directly search its files by the name of "suspects," but only from 1999 forward; further, such search results would not reflect whether the crime involved a homicide, or whether the named suspect was the person Plaintiff has identified or someone else with the same name. However, the City is capable of identifying the Investigative File related to a particular crime if it knows the RD number associated with the investigation of that crime. That information often is available from the criminal history of the person arrested for the homicide in question or the arrest report related to that homicide.

Moreover, this Court has adjudicated the issue of the disclosure of 404(b) witnesses and ordered Plaintiff to "narrow his identification" of them. *See* Dkt. 118. Plaintiff purports to have complied with this Court's order by providing Defendants with a "reduced list" of twelve 404(b) witnesses "pursuant to the Court's order," *see* Exh. G, yet he has propounded discovery concerning an additional twenty-two such witnesses. This Court's order provides the standard by which "proportionality to the needs of the case" on the issue of propensity evidence should be measured, and Plaintiff's request for production plainly is an attempt to circumvent it.

13

In the spirit of compromise, the City has agreed to conduct such a search for the homicide Investigative Files of the twelve 404(b) witnesses on Plaintiff's "reduced list," based on information available on their criminal history or arrest reports, in the manner described above. But to conduct similar searches for the rest of the thirty-four persons would be unduly burdensome, overbroad, disproportional to the needs of the case, and as discussed below, because those other persons have no relevance to this case.[9]

### B. The documents sought are irrelevant for 404(b) purposes and improper for *Monell* purposes.

There is no relevance to this case of the twenty-two persons whom Plaintiff did not choose as his 404(b) witnesses, and thus there is no basis to overcome the undue burden of time, costs and resources required to search for documents related to those persons. Nowhere in his motion does Plaintiff identify for this Court the relevance of these persons, much less the need for any Investigative Files related to them. Plaintiff admits he wants such documents for such persons essentially for propensity reasons – to "demonstrate that these Defendants engaged in similar misconduct with other individuals both before and after Defendants allegedly abused and coerced him" (Motion at 11) – but Plaintiff fails to explain why anyone other than the twelve persons he has identified as his 404(b) witnesses matter in this regard.

In his December 9, 2020, letter purporting to "memorialize the discussions" during the parties' 37.2 conference,[10] Plaintiff asserts simply that "even if the other individuals are not named as witnesses to call at trial, he seeks to ask Defendants about their interactions with all

---

[9]. Indeed, in this case Plaintiff has produced an Excel spreadsheet entitled "26(a)(1) 404b Disclosure Spreadsheet," that includes information about at least eleven of the twenty-two 404(b) witnesses not on the "reduced list" in this case and the misconduct to which they allegedly were subjected. In arguing that he needs documents related to these individuals, Plaintiff has not advised this Court that he already has much of the information he now is seeking in discovery.

[10] That letter, attached as Exhibit 126-12 to Plaintiff's Motion, is neither a complete nor an accurate account of the discussions between the City and Plaintiff.

14

those individuals" and further claims "the City has not articulated a basis as to why Plaintiff should be prevented from doing so." Dkt. 126-12 at 3. The latter assertion is untrue; the City articulated to Plaintiff the same reasons in that discussion as it raises here. And the former assertion is specious. If the twenty-two non-404(b) witnesses are not intended to be called at trial, then they have no relevance. Further, it is untenable, and highly unlikely, that Plaintiff plans to ask questions of Defendant Officers about allegations of misconduct by thirty-four persons, plus those Defendants' backgrounds, plus those Defendants' role in this case, in a single deposition. And as noted above, Plaintiff already has documents and information about many of these persons, yet fails to explain why he needs more to ask questions at deposition.

What seems clear is that despite the bifurcation and stay of discovery on his *Monell* claims, Plaintiff nonetheless is seeking to discover documents which have no relevance to any issue except possibly *Monell*. In other pending cases, Plaintiff's counsel seeks numerous homicide Investigative Files for a variety of stated purposes that purportedly support non-bifurcated Monell claims, despite the questionable merits of those purposes. *See e.g. DeLeon-Reyes v. Halvorsen,* 18-cv-1028 at Dkt. 384 (attached as Exhibit H). No such purpose exists in this case, however, and Plaintiff's attempt to obtain and rely on such evidence under the guise of 404(b) discovery should fail.

## **CONCLUSION**

For the foregoing reasons, Defendant City of Chicago asks this Court to deny Plaintiff's Motion to Compel Discovery Responses from Defendant City of Chicago in its entirety, and for any further relief this Court deems just.

Date: January 6, 2021               Respectfully submitted,

                                    CELIA MEZA
                                    Acting Corporation Counsel of the City of Chicago

                                    /s/ George J. Yamin Jr.
                                    GEORGE J. YAMIN JR, Attorney No. 6217483
                                    Special Assistant Corporation Counsel
                                    *One of the Attorneys for City of Chicago*

James G. Sotos
Jeffrey N. Given
Joseph M. Polick
Sara J. Schroeder
George J. Yamin, Jr.
THE SOTOS LAW FIRM, P.C.
141 W. Jackson, Suite 1240A
Chicago, Illinois 60604
(630) 735-3300
gyamin@jsotoslaw.com

16

**CERTIFICATE OF SERVICE**

   I, George J. Yamin Jr., an attorney, certify that a copy of the attached **Defendant City of Chicago's Response in Opposition to Plaintiff's Motion to Compel** was served upon counsel of record via electronic mail at the electronic addresses listed below on January 6, 2021.

| *Attorneys for Plaintiff:* | *Attorneys for Individual Officers* |
|---|---|
| Arthur Loevy | Eileen E. Rosen |
| Jon Loevy | Patrick R. Moran |
| Russell Ainsworth | Andrew J. Grill |
| Allison Leff | Brittany D. Johnson |
| Heather L. Donnell | Rock Fusco & Connelly, LLC |
| Renee Spence | 312 N. Clark St., Suite 2200 |
| Loevy & Loevy | Chicago, IL 60654 |
| 311 N. Aberdeen, 3rd Floor | (312)494-1000 |
| Chicago, Illinois 60607 | ersosen@rfclaw.com |
| (312) 243-5900 | pmoran@rfclaw.com |
| arthur@loevy.com | agrill@rfclaw.com |
| jon@loevy.com | bjohnson@rfclaw.com |
| russell@loevy.com | |
| allison@loevy.com | |
| heather@loevy.com | |
| spence@loevy.com | |

          /s/George J. Yamin Jr.
          GEORGE J. YAMIN JR., Attorney No. 6217483
          Special Assistant Corporation Counsel
          *One of the Attorneys for City of Chicago*