**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

ANTHONY JAKES,

                Plaintiff,

       v.

KENNETH BOUDREAU *et al*.,

               Defendants.

Case No. 19-cv-02204

Hon. Manish S. Shah

Hon. Beth W. Jantz

# EXHIBIT 32

LOUISVILLE   LEXINGTON   LONDON   FLORENCE   CINCINNATI   INDIANAPOLIS   ORLANDO   JACKSONVILLE   TAMPA



# KENTUCKIANA
## — COURT REPORTERS —

# CASE NO. 19-CV-02204

# ANTHONY JAKES

# V.

# KENNETH BOUDREAU, ET AL.

## DEPONENT:

## COMMANDER ERIC WINSTROM

## DATE:

### September 21, 2021



a courtroom
**powerhouse**



✉ schedule@kentuckianareporters.com

☎ 877.808.5856  |  502.589.2273

www.kentuckianareporters.com

1              IN THE UNITED STATES DISTRICT COURT

2            FOR THE NORTHERN DISTRICT OF ILLINOIS

3                      EASTERN DIVISION

4                  CASE NO. 19-CV-02204

5                  HON. MANISH S. SHAH

6                  HON. BETH W. JANTZ

7

8

9                      ANTHONY JAKES,

10                       Plaintiff

11

12                          V.

13

14              KENNETH BOUDREAU, ET AL.,

15                      Defendants

16

17

18

19

20

21

22

23   DEPONENT:   COMMANDER ERIC WINSTROM

24   DATE:       SEPTEMBER 21, 2021

25   REPORTER:   BETHANY BELLOFATTO



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 4 of 78 PageID #:9058
The Deposition of COMMANDER THOMAS WINSTROM, taken on September 22, 2021

2..5

Page 2

APPEARANCES

1       APPEARANCES
2
3   ON BEHALF OF THE PLAINTIFF, ANTHONY JAKES:
4   Heather Lewis Donnell
5   Loevy & Loevy
6   311 North Aberdeen Street
7   Chicago, Illinois 60607
8   Telephone No.: (312) 243-5900
9   E-mail: heather@loevy.com
10  (Appeared via videoconference)
11
12  ON BEHALF OF THE DEFENDANT, THE CITY OF CHICAGO:
13  George Yamin
14  The Sotos Law Firm
15  141 West Jackson Boulevard
16  #1240A
17  Chicago, Illinois 60604
18  Telephone No.: (630) 773-0980
19  E-mail: gyamin@jsotoslaw.com
20  (Appeared via videoconference)
21
22
23
24
25

Page 4

INDEX

1       INDEX
2                                           Page
3   PROCEEDINGS                              7
4   DIRECT EXAMINATION BY MS. DONNELL        8
5   CROSS EXAMINATION BY MR. YAMIN           187
6   REDIRECT EXAMINATION BY MS. DONNELL      191
7
8       EXHIBITS
9   Exhibit                                  Page
10  1 - Amended Notice of Deposition         11
11  2 - General Order 87-7, Effective Date
12      October 31, 1987 - CITY_JAKES00922-00926    23
13  3 - Special Order Processing of Juveniles 78-33
14      - CITY_JAKES00950-00953              58
15  4 - Chicago Police Department Manual of Procedure
16      Youth Division - CITY_JAKES01009-01247    122
17  5 - You Detective Training Document - CITY_JAKES
18      23970-23995                          100
19  6 - Examination Study Cards - CITY_JAKES
20      23996-24024                          142
21  7 - Detective Division Standard Operating
22      Procedures 1988 - CITY_JAKES00714-007200
23  8 - Detective Division MemorandumNo. 92-8-6,    191
24      August 31, 1982 - CITY_JAKES01007-01008    52
25

Page 3

APPEARANCES (CONTINUED)

1       APPEARANCES (CONTINUED)
2
3   ON BEHALF OF ALL DEFENDANT OFFICERS:
4   Brittany Johnson
5   Rock Fusco & Connelly, LLC
6   321 North Clark Street
7   Suite 2200
8   Chicago, Illinois 60654
9   Telephone No.: (312) 494-1000
10  E-mail: bjohnson@rfclaw.com
11  (Appeared via videoconference)
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 5

EXHIBITS

1       EXHIBITS
2   Exhibit                                  Page
3   9 - General Order 78-1 Processing Persons Under
4       Department Control - CITY_JAKES 00927-00949    93
5   10* - Juvenile Court Act of 1987 Illinois Statute,
6       Annotated 1988, Section 805-6, from Chapter
7       37, Relating to Delinquent Minors    152
8   11* - Detective Division Standard Operating
9       Procedure, 1988 - CITY22234-22440    166
10  12* - Detective Division Standard Operating
11      Procedure, 1992 - CITY22441-22650    171
12
13
14  *Will forward exhibit 10, 11 & 12 upon receipt
15
16
17
18
19
20
21
22
23
24
25

Kentuckiana Reporters
30 South Wacker Street, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 5 of 78 PageID #:9059
The Deposition of COMMANDER ERIC WINSTROM, taken on September 21, 2021

6 . . 9

Page 6

```
 1              STIPULATION

 2

 3    The video deposition of COMMANDER ERIC WINSTROM was

 4    taken at KENTUCKIANA REPORTERS, LLC 30 SOUTH WACKER

 5    DRIVE, 22ND FLOOR, CHICAGO, ILLINOIS 60606, via

 6    videoconference in which all participants attended

 7    remotely, on TUESDAY the 21ST day of SEPTEMBER 2021 at

 8    10:00 a.m. CST; said video deposition was taken pursuant

 9    to the FEDERAL Rules of Civil Procedure.

10

11    It is agreed that BETHANY BELLOFATTO, being a Notary

12    Public and Court Reporter, may swear the witness.

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 7

```
 1              PROCEEDINGS

 2

 3        COURT REPORTER:  Good morning.  We are now on

 4    record.  My name is Bethany Bellofatto.  I'm the

 5    video technician and court reporter.  Today is the

 6    21st day of September 2021 and the time is 10:02 a.m.

 7    We were convened today by video conference to

 8    take the deposition of commander Eric Winstrom in

 9    the matter of Anthony Jakes's versus Kenneth

10    Boudreau et al pending in the United States

11    District Court for the Northern District of

12    Illinois, Eastern Division.  Case Number 19 CV

13    02204.  Will counsel please state your appearance,

14    how you're attending, and the location you're

15    attending from starting with Plaintiff's counsel?

16        MS. DONNELL:  Good morning.  Heather Lewis

17    Donnell on behalf of the plaintiff, Anthony Jakes.

18    I'm appearing from Chicago, Illinois from my home

19    today.

20        MR. YAMIN:  George Yamin, representing the

21    defendant, City of Chicago, appearing remotely.

22        MS. JOHNSON:  Brittany Johnson, representing

23    the defending officers, appearing from the City of

24    Evanston, remotely.

25        COURT REPORTER:  Perfect, thank you.
```

Page 8

```
 1    Commander Winstrom, will you please state your name

 2    for the record?  You're muted, sorry.

 3        THE WITNESS:  Thanks.  My name is Eric

 4    Winstrom.

 5        COURT REPORTER:  Perfect.  Thank you.  So

 6    since we were all able to take a look and verify

 7    commander Winstrom's ID prior to going on the

 8    record, Counsel, do we agree that he is who he says

 9    he is?

10        MS. DONNELL:  Plaintiff stipulates.

11        MR. YAMIN:  Yeah.

12        MS. JOHNSON:  Agreed.

13        COURT REPORTER:  Perfect.  Thank you so much.

14    Commander Winstrom, when you're ready, please raise

15    your right hand.  Do you solemnly swear or affirm

16    the testimony you're about to give will be the

17    truth, the whole truth, and nothing but the truth?

18        THE WITNESS:  I do.

19        COURT REPORTER:  Thank you.  You may proceed.

20             DIRECT EXAMINATION

21    BY MS. DONNELL:

22    Q    Good morning, Commander Winstrom.  Nice to see

23    you again.

24    A    Good morning.  Nice to see you, Heather.

25    Q    We are going to depose you.  Last time I
```

Page 9

```
 1    deposed you in person, this time it's remotely via Zoom.

 2    So if possible, can you just identify for me what you

 3    have available in front of you?

 4    A    Got it.  I've got all the exhibits and this is

 5    the complaint I got one of -- my dogs.

 6    Q    And you've got your dogs.  Okay.  So just to

 7    be clear, the exhibits that you held up are the hard

 8    copy exhibits that your counsel provided to you

 9    yesterday?

10    A    Yes.

11    Q    Okay.  And then you also have a copy of the

12    complaint in this case; is that right?

13    A    That is correct.

14    Q    Okay.  And so those are all the hard copy

15    documents you have available to you.  And I'm just going

16    to ask that you don't refer to anything unless, you

17    know, we've identified what you're looking at.  And if

18    you do look at something, you're going to have to tell

19    me what you're looking at because we're not in the same

20    room together; is that fair?

21    A    Yes.

22    Q    And then in terms of the computer, do you have

23    any files open on your computer or access to any files

24    or you just have your Zoom application --

25    A    This is my -- this is my mommy's computer, and
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 6 of 78 PageID #:9060
The Deposition of COMMANDER DORIS WINSTROM, Taken on September 21, 2021

10..13

Page 10

1  I just -- I just have Zoom.
2       Q    Got it.  Okay.  And then in terms of your
3  phone, do you have your phone available to you as well?
4       A    I have my phone out of sight and sound, but
5  it's -- it's activated to ring in case of -- of a
6  bonafide emergency from work.
7       Q    Understood.  And if you were to get a call
8  from work and you need to take that call, please just
9  let us know.  We can take a break for you.  Not a
10  problem.  We'll go off the record, okay?
11      A    Yes.
12      Q    And then I'm just going to ask that you do
13  not, you know, communicate with counsel or anyone else
14  regarding your dep while we're on the record,
15  understood?
16      A    Yes.
17      Q    Okay.  And I was able to get you some of the
18  exhibits in advance in hard copy, but some of the ones
19  I'm going to be using today, I'm going to need to show
20  you remotely on my screen.  And when we get to that
21  point, just let me know if you can see what I'm showing
22  you.  My apologies.  Yeah.  And if not, I can zoom in
23  and make sure you can see, okay?
24      A    Yes.
25      Q    Okay.  And then the other thing is because

Page 11

1  we're doing this remotely, if you don't hear my question
2  or there's a glitch and you need me to restate it,
3  please just let me know and I'm happy to do that, okay?
4       A    Yes.
5       Q    And also for our court reporter, you just have
6  to do your best not to talk over one another.  And I
7  know sometimes it's not clear when a question has been
8  completed, and I'll do my best not to interrupt one of
9  your answers, so we'll just try and do that for Bethany,
10  okay?
11      A    Yes.
12      Q    All right.  Let's get started.  Do you have
13  Exhibit 1 in front of you, the Amended Notice of
14  Deposition pursuant to Rule 30(b)(6)?
15      A    I do.
16      Q    Okay.  So and I'm designating as Exhibit 1,
17  the Notice of Rule 30(b)(6) deposition that I served on
18  the City on August 9, 2021, pursuant to the agreement
19  with the City in this case.  Have you had a chance to
20  review what we've -- the amended Rule 30(b)(6),
21  Commander Winstrom?
22                (EXHIBIT 1 MARKED FOR IDENTIFICATION)
23      A    Yes
24      Q    Okay.  And are you prepared today to testify
25  on behalf of the City as its corporate representative

Page 12

1  for topic one, which is the City's written and unwritten
2  policies, general orders, practices, customs, and
3  training in effect from January 1, 1988 through December
4  31, 1993, relating to each of the three -- or the --
5  yeah, three sub topics?
6       A    Yes.
7       Q    Okay.  And those subtopics are interrogations
8  and interviews in homicide investigations of witnesses,
9  eyewitnesses, suspects, and juvenile suspects and
10  juvenile witnesses, right?
11      A    Yes.
12      Q    And then subtopic 1A goes on a bit more about
13  what's in that topic, but you're prepared to testify as
14  the corporate witness for this City of Chicago for all
15  of topic 1A?
16      A    Yes.
17      Q    Okay.  And the same is true for topic 1B, "The
18  duties of Youth Officers during the interrogations of
19  juvenile suspects or interviews of juvenile witnesses,
20  including when a Youth Officer is permitted or required
21  to attend an interrogation," and it goes on?
22      A    Yes.
23      Q    And the same thing is true -- is that true for
24  subtopic 1C, the "Training provided to police detectives
25  pertaining to the order contained in Exhibit A," which

Page 13

1  was general order 87-7?
2       A    Yes.
3       Q    Okay.  Commander Winstrom, how many times have
4  you served as the city's corporate witness on --
5  pursuant to Rule 30(b)(6) related to a topic of
6  interrogations, either of adults or juveniles?
7       A    Maybe three.
8       Q    Okay.  Thank you.  Can you identify the cases?
9       A    Well, we did Hood Washington case together.  I
10  usually push -- push the cases out of my mind once I'm
11  done with the deposition, they're very exhausting.  Let
12  me see.  And you said specific to interviews and
13  interrogations?
14      Q    Yes.  If you --
15           MR. YAMIN:  Interrogations.
16      Q    If you recall.  Yes.
17      A    A lot of topics kind of overlap.  I recently
18  testified -- let's see, Ms. Spence from your office
19  deposed me and I can't remember the title of that case.
20  And that was mostly on identification procedures, but I
21  believe the notice also included dealing with juveniles
22  and Russell Ainsworth deposed me last month.  I want to
23  say that was on identification procedures only but he --
24  he could have asked topics about interviews and
25  interrogations, as well.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Page 14

1    Q    Thank you.

2    A    Okay.

3    Q    Oh, sorry. I didn't want to interrupt you.

4  Were you --

5    A    I think -- I think as far as interviews and

6  interrogations go, I think that's probably for 30(b)(6).

7    Q    And then let me ask you the broader, more

8  general question. On how many occasions approximately

9  have you served as just the 30(b)(6) witness for the

10  City of Chicago other than the three you've just

11  testified to?

12    A    Probably two more.

13    Q    Were those office -- also with cases with our

14  office or other offices if you recall?

15    A    I did. I'm sure one was with your office, and

16  one was with Riley Safer.

17    Q    Got it. And as you sit here today, do you

18  recall whether any of the topics for those two

19  additional cases that you served as the city's Rule

20  30(b)(6) witness involved interviews or interrogations

21  or things expected juveniles?

22    A    I don't think so.

23    Q    No problem.

24    A    I don't think so.

25    Q    Got it. I know it's hard in this format, so

Page 15

1  no problem at all, I'm -- if we interrupt each other, I

2  can stop and rephrase or I'll let you finish your

3  question. Okay. Commander Winstrom, can you please

4  identify for me the general orders that you reviewed to

5  prepare for today?

6    A    I reviewed general orders processing persons.

7  I don't know the number off the top of my head.

8  Processing juveniles under department control, and as

9  well as 87-7, which I believe is titled Interrogations

10  Field and Custodial. I did my -- reviewed the SOPs in

11  case they came up.

12    Q    Can you identify for me -- so before we move

13  on to SOPs, are there any other general orders other

14  than 87-7 and the processing of persons or processing of

15  juveniles under the department control that you reviewed

16  to prepare for today's deposition?

17    A    Not that I can think of.

18    Q    And I know you just talked about SOPs but

19  before we get to SOPs, did you review any detective

20  department special -- I mean, special directives -- any

21  special directives after the general orders?

22    A    Well the SOPs, you know, prior to becoming SOP

23  in 1988, they were titled, DSO, Detective Vision Special

24  Orders, I believe. And then they've since reverted back

25  to being named DVSO so I don't want to get to you, you know,

Page 16

1  I don't -- I don't want to play games with semantics, so

2  the SOPs would consist of a unit level directive. Aside

3  from that, I did review a 1992 memo by, I believe, chief

4  of detectives perhaps Stibich at the time, referencing

5  investigations involving juveniles in the detective

6  division.

7    Q    Is that detective division memo 92-8?

8    A    Yeah. Well, I trust you that it is, but I

9  know it's from 1992.

10    Q    Okay. And I -- did you review the CPD youth

11  division manual procedure?

12    A    That one too, yes. I sure did. Sure did.

13    Q    Okay. And then let's talk about the SOPs for

14  just a second. What SOPs did you review to prepare for

15  your deposition?

16    A    I looked at -- I probably looked at the table

17  of contents just to make sure it wasn't missing anything

18  and then I reviewed chapter 8 again.

19    Q    Okay. And so did you review chapter 8 of the

20  detective division SOP?

21    A    Yes. That's what I reviewed yes.

22    Q    Okay. And was that the 1988 version of the

23  detective division SOP?

24    A    Oh boy. If it -- if it was the '92 version, I

25  don't think that there was any edits between '88 and

Page 17

1  '92.

2    Q    That --

3    A    I'm not -- I'm not positive. Under oath, I'm

4  not positive which one I was looking at.

5    Q    And would you agree with me that chapter 8 of

6  the detective division SOP, whether it was in 1988 or

7  1992 is relevant for your testimony today, pursuant to

8  the amended Rule 30(b)(6) deposition notice?

9        MR. YAMIN:  Objection. Objection. Calls for

10    speculation and form of the question.

11        MS. JOHNSON:  Join.

12    A    Yes.

13  BY MS. DONNELL:

14    Q    Okay. Thank you.

15        MS. DONNELL:  So, George, I'm going to be

16    using chapter 8 of the 1988 SOP today because it's

17    something that this witness reviewed in preparation

18    for his testimony pursuant to the topics we agreed

19    upon. So, you know, I think you guys could produce

20    it and we can get to it later in the dep, but I

21    think it's relevant and I also think pursuant to

22    prior notice it should've been produced in advance

23    of the dep. But we can take it up if we need to,

24    I'm going to go on right now, but I'll just put a

25    note in the record right now that I do intend to

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Page 18

1    ask questions and refer to chapter 8 of the
2    detective division SOP.  Okay.
3        MR. YAMIN:  I'll respond now that I don't
4    agree with everything that you just said, but I'll
5    let it go for now.
6        MS. DONNELL:  Okay.  Well, I guess maybe we
7    should know, are you going to agree to produce it
8    or are you going to object if I produce it, the
9    version produced from Hood in -- during today's dep
10   so we can use it and we don't have to bring
11   Commander Winstrom back?
12       MR. YAMIN:  I'm going to decide at the lunch
13   break.
14   BY MS. DONNELL:
15       Q   Sure.  That's fine.  We can put it to the side
16   for now.  Okay.  Commander Winstrom, the last time I
17   deposed you I do not believe you had been promoted to
18   commander.  So when did you receive this promotion?  And
19   congratulations.
20       A   Thank you.  That was a -- good luck
21   deposition, I think.  It was February of 2020 is when I
22   was promoted to commander.
23       Q   Okay.  And were you assigned to a new position
24   when you were promoted to commander?
25       A   I was.  I became the commander of the new Area

Page 19

1    5 Detective Division, which had been not in existence
2    since 2012 when it was closed.
3        Q   And when did the new detective -- the new Area
4    5 Detective Division reopen?
5        A   April 29th of 2020.
6        Q   Okay.  And do you mind identifying for me,
7    just briefly, what the new Area 5 geographic boundaries
8    are?
9        A   Sure.  It includes the 14th, 16th, 17th, and
10   25th district which would include all of the City of
11   Chicago, north of Division Street and west of the
12   Chicago River, approximately.
13       Q   All right.  Does it include the 18th district?
14       MS. JOHNSON:  No.
15       A   It -- it does not.
16       Q   Okay.  Thank you.  Do you -- then if you were
17   promoted to commander in February of 2020.  Do you have
18   -- maintain any of your prior responsibilities that you
19   had when you served as -- in the CPD Office of General
20   Counsel?
21       A   I still serve on a few committees which have
22   carried over from that.  And I'm still occasionally
23   called upon for other things like a witness on behalf of
24   the City.
25       Q   Got it.  Okay.  In your current capacity,

Page 20

1    though, do you have any roles or responsibilities under
2    current policies, or directors, or general orders, or
3    training of the CPD?
4        A   I am occasionally still called upon to provide
5    input on policy.  Yes.
6        Q   Okay.  Have you -- let me strike that.  In
7    your role as the supervising attorney in the discovery
8    unit of the CPD Office of General Counsel would you --
9    that was your prior position before you were promoted to
10   commander; is that correct?
11       A   I -- I did have two positions in between
12   there.
13       Q   Oh, I'm sorry.  Maybe you can fill me in then
14   so, just briefly, what were your positions that you've
15   had in-between being the supervising attorney at the
16   discovery unit and the Office of the General Counsel and
17   your current position?
18       A   I left the Office of General Counsel in
19   February of 2017 when I was promoted to lieutenant.
20   Yeah.  And I became a lieutenant of the 18th district,
21   which is downtown river north area.  I then was detailed
22   to the superintendent's office to create the office of
23   reform management and to take part in negotiations with
24   the attorney general of the state of Illinois for the
25   impending consent decree.

Page 21

1        Q   Okay.
2        A   I then moved over to research and development
3    where I was the commanding officer for palliate --
4    policy and procedure until November of 2019 when I was
5    promoted to captain of the 9th district, which is
6    located in Bridgeport.  And was there just briefly until
7    February of 2021.  I was promoted again.
8        Q   Thank you so much.  And when you were -- what
9    was your position, maybe you just said that -- sorry
10   mister -- what was your position of the research and
11   development of policy and procedure that you had?
12       A   I was a lieutenant and the title is Lieutenant
13   and Commanding Officer of Policy.  So --
14       Q   Did you, in that capacity, have any
15   involvement in any of the policies respect to
16   interrogations?
17       MR. YAMIN:  Objection to the form of the
18   question.
19       A   So the responsibility of that position is to
20   have sort of maintenance duties for all of department-
21   wide policies, which would include policies regarding
22   those subjects.  However, I would not have authority by
23   myself to change them.  The authority of those policies
24   are through the superintendent.
25       Q   Understood.  I just -- my question and I'm

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 9 of 78 PageID #:9063
Video Deposition of COMMANDER Doris Winstrom / taken September 2, 2020
22..25

Page 22

1    sorry, if it wasn't clear but did you, in your time
2    there, work on any of the -- we're going to oversee any
3    policies related to interrogations?
4              MR. YAMIN:  Objection.  Form.
5         A    I don't -- I can't recall any major changes
6    that we made.  We probably made some technical changes
7    of wording and that would be not substantive but simply
8    changing like bureau titles changed like we created a
9    Bureau of Constitutional Policing.  So where -- where
10   Bureau's mentioned in a policy like that, we would
11   change it.  But I don't recall any substantive changes
12   to interviews or interrogations for officer.
13        Q    And same question with respect to the youth
14   officers or youth division, were any work done during
15   that time for those that you recall?
16        A    I think it --
17             MR. YAMIN:  Objection.  Form.
18        A    I believe most of the major -- the major
19   changes with youth, like, changes to the youth Miranda
20   Law.  I believe they occurred right before I got there.
21   So I don't think that we did any significant substantive
22   changes while I was there.
23        Q    Okay.  And do you -- are you -- what was that
24   -- we'll move on.  I know I've asked you this before,
25   but just briefly for this record, can you state your

Page 23

1    college education and when you graduated from law school
2    and any additional education you've obtained?
3         A    Yes.  I graduated from Rutgers College in 1997
4    with a Bachelor of Science in Administration of Justice.
5    I then graduated from Brooklyn Law School in June of
6    2000.  I have not enrolled in any other schools since
7    then.
8         Q    And are you admitted to practice in Illinois?
9         A    Yes.
10        Q    Do you -- when was your date of admission?
11        A    2011.
12        Q    And do you have any other active admissions in
13   any other jurisdictions?
14        A    No.
15        Q    Okay.  And have you ever practiced law?
16        A    No.
17        Q    Okay.  All right.  Okay.  I'm going to start
18   with the General Order 87-7.  Okay?
19        A    Should -- should I?
20        Q    Yes.  Yeah.  If you want to have it in front
21   of you, that's fine.  I've designated that as   Exhibit
22   2.  Is that what you have as Exhibit 2 just to confirm?
23             (EXHIBIT 2 MARKED FOR IDENTIFICATION)
24        A    Yes.
25        Q    Okay.  And for the record, Exhibit 2 is Bates

Page 24

1    stamped City_Jakes00922 consecutive through 00926 and
2    its General Order 87-7, that was effective October 31,
3    1987.  And the last page has the addendum of general
4    order 87-7, number 87-7A that was effective December 22,
5    1998.  Is that what you have?
6         A    Yes.
7         Q    Okay.  Great.  Okay.  Commander Winstrom, can
8    you please tell us how the general order 87-7 defines a
9    custodial interrogation?
10        A    Yes.  It defines "Custodial interrogation as
11   being interpreted by the United States Supreme Court as
12   questioning initiated by law enforcement officers after
13   a person has been taken into custody or has otherwise
14   been deprived of his freedom of action by the
15   authorities in any significant way."  It further under
16   the definition goes on to state a note that
17   "Interrogation encompasses not only questioning, but
18   also any remarks, psychological tactics, or patient
19   maneuvering designed to elicit a response or to
20   undermine a suspect's will to resist further
21   questioning."
22        Q    And would you agree with me that general order
23   87-7 was in effect and applicable for all custodial
24   interrogations conducted by the CPD in 1991?
25        A    Yes.

Page 25

1         Q    Okay.  All right.  And you would agree with me
2    also that general order 87-7 would also be applicable
3    for any juveniles that are being interrogated as a
4    suspect as well during this time frame, 1991, correct?
5         A    Yes.
6         Q    Okay.  Okay.  Let's turn to page 2 of Exhibit
7    1, which is custodial interrogations and advising the
8    individual of his or her rights, okay?
9         A    Yes.
10        Q    And what does section 9 of general order 87-7
11   referred to?
12             MR. YAMIN:  Objection to form.
13        A    Section 9 refers to providing an individual
14   being interrogated in the custodial setting their
15   Miranda warnings.
16        Q    Okay.  And just for the record, what's Miranda
17   warnings?
18        A    Miranda warnings are from the Supreme Court
19   decision in Miranda versus Arizona.  They are laid out
20   in this document here: Advising the individual that they
21   have the right to remain silent, that anything they say
22   can be used against them in Court, that they have a
23   right to an attorney before any questioning and to have
24   the lawyer present, and that if the individual cannot
25   afford a lawyer, a lawyer will be pres -- provided for

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 10 of 78 PageID #:9064
The Deposition of COMMANDER ERIKA WINTERROTH, taken on September 8, 2022
26..29

Page 26

1  them. That's a good summary.

2      Q   Okay. Great. And general order 87-7 lays out

3  the specific Miranda warnings, correct?

4      A   It does.

5      Q   And in section 9 of 87-7, the policy of the

6  Chicago Police Department required that before an

7  interrogation of an individual who is in custody or who

8  was in any way being deprived of his or her freedom of

9  movement and action, had to be expressly warned of these

10 constitutional rights and clear and unequivocal words,

11 correct?

12     A   Yes.

13     Q   Okay. And that is true for a juvenile who's

14 being held as well, correct?

15     A   Yes.

16     Q   And so to be clear, the requirement that the

17 Miranda warnings to be given before any interrogation or

18 questioning, right?

19         MR. YAMIN: Object to the form.

20     A   Cus -- custodial.

21     Q   Thank you for clarifying. Before any

22 custodial questioning, they had to be -- Miranda

23 warnings had to be admonished, correct?

24         MR. YAMIN: Objection. Form.

25     A   Yes.

Page 27

1      Q   And General Order 87-7 also, requires that

2  there had to be -- all the warnings had to be orally

3  recited and the question -- and the person had to be

4  questioned, had to be asked whether they understood

5  these rights, correct?

6      A   That is correct.

7      Q   And whether they wish to answer any questions

8  at this time, correct?

9      A   That is correct.

10     Q   And was it the -- was the policy of the public

11 police department pursuant to 87-7, that there had to be

12 an express statement by the person being questioned that

13 they had an understanding of the meaning of their

14 Miranda rights, correct?

15     A   That is correct.

16     Q   Okay. Okay. Let's look at 9B, and -- I'm

17 sorry, 9 -- sorry. You'll have to bear with me. My

18 eyes are such that I would need to take my time and look

19 at that. It's gotten to that point.

20     A   No worries.

21     Q   So let's do this. Do you want to just read

22 the Subsection F of general order 87-7 into the record

23 and then I'm going to ask you some questions?

24     A   F. "In addition to the above warnings before

25 accepting any admission or statement of a juvenile, the

Page 28

1  juvenile will be advised that his case might be

2  transferred to criminal court where he will be

3  prosecuted as an adult. An express statement by the

4  juvenile that he understands the meaning of this advice

5  is required. A juvenile should be warned in question

6  only in the presence of an adult (parent, other

7  relative, friend) if such an adult can't be located."

8      Q   Okay. Thank you for reading that. So let's

9  talk about this. So what is -- do you know the purpose

10 of section 9F? What is this -- purpose of this

11 Subsection and general order 87-7?

12     A   It's specific to --

13         MR. YAMIN: Objection. Form.

14     A   It is specific to a juvenile offender and

15 provides added protection for the juvenile offender in

16 relation to the Miranda warnings.

17     Q   Okay. And what are those additional

18 protections that 87-7 9F provides to a juvenile offender

19 for their -- with respect to the Miranda warning?

20     A   First, that it is perfectly clear that the

21 juvenile could be charged as an adult and the case

22 transferred to criminal court. And secondly, that the

23 juvenile should be provided these warnings and questions

24 in the presence of an adult if such an adult can be

25 located.

Page 29

1      Q   Okay. And these additional protections are in

2  addition to the Miranda warnings that we've already

3  reviewed in subsection 9A, correct?

4      A   Yes.

5      Q   So a juvenile who's being questioned in

6  custody would receive both the Miranda warnings from

7  Subsection 9A, as well as these additional protections

8  laid out in Subsection line 9F, correct?

9      A   That is correct.

10     Q   Okay. And the first one you said was that it

11 needed to be perfectly clear that the juvenile offender

12 could be charged as an under -- an adult, and that its

13 case could be transferred to adult court to be -- the

14 adult criminal court, correct?

15     A   Correct.

16     Q   And why was that provision included in

17 Subsection 9F of 87-7?

18         MR. YAMIN: Objection. Form. Foundation.

19         MS. JOHNSON: Join.

20     A   Well, I know it was the policy because it's

21 written here. And I would have to guess that it stems

22 from the Juvenile Court Act, but I'm not positive.

23     Q   Okay. That was my question, if it was

24 pursuant to the Juvenile Court Act. Are you aware, as

25 you sit here today, whether that was pursuant to the

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Page 30

1  Juvenile Court Act?
2      A    No.
3      Q    Is there anything that would refresh your
4  recollection with respect to subsection 87-7 9F
5  additional provisions here that we're reviewing as a
6  result of that Juvenile Court Act?
7      A    Yes.
8      Q    What's that?
9      A    The Juvenile Court Act section which was in
10  effect at the time.
11      Q    Okay.  Is it Chapter 13 -- well, sure.
12      A    Is it an attachment?
13      Q    Yeah.  You know, not right now.  So I can show
14  you that, but let's -- I can show that in a minute.  So
15  let's -- we'll put that to the side, but for purposes of
16  right now, this was the policy and procedure of General
17  Order 87-7 and a requirement for all prior to any
18  custodial interrogation of a juvenile, correct?
19      A    That is correct.
20      Q    Okay.  And here in Subsection F, it says right
21  after it said an addition to the above warnings
22  referring to the Miranda warnings if the general order
23  Subsection 9 says "Before accepting any admission or
24  statement of a juvenile," do you see that?
25      A    Yes.

Page 31

1      Q    Okay.  And what does that mean?
2      A    This means --
3          MR. YAMIN:  Objection to form.
4          MS. JOHNSON:  Join.
5          MR. YAMIN:  You can answer.
6      A    This means that prior to answers to your
7  questions in a custodial interrogation of a juvenile,
8  you have to take these steps.
9  BY MS. DONNELL:
10      Q    Okay.  And so that refers to prior to any
11  questioning, correct?
12          MR. YAMIN:  Objection.  Mischaracterizes
13      testimony and form.
14      A    Custodial questioning is as far as questioning
15  about the case, I would agree.  Questions such as what's
16  your name?  Where do you live?  What's your phone
17  number?  Would probably define.
18          MR. YAMIN:  I need to interrupt for a second.
19      I'm having trouble hearing some of Commander
20      Winstrom's answers.  I don't know -- I can't -- I
21      keep switching the -- keep adjusting my volume.  I
22      don't know if it's me or maybe been -- maybe
23      Commander Winstrom's not close enough to his
24      computer.  Is anyone else having that issue or --
25          MS. DONNELL:  I am not, George.  I'm hearing

Page 32

1  him, but I'm happy to adjust so that we make sure
2  you can hear him properly.
3          MR. YAMIN:  And I would need that answer re-
4      read too, once we've addressed this, if we can.
5          COURT REPORTER:  Do we need to go off the
6      record to address it?
7          MR. YAMIN:  Maybe we should.  Yeah.
8          COURT REPORTER:  Okay.
9  BY MS. DONNELL:
10      Q    I don't think.  I think -- why don't you just
11  talk, Commander?
12          THE WITNESS:  I moved the -- so I have one of
13      these detachable mic combo things and moved it
14      closer to my head.
15          MR. YAMIN:  That was a lot better.
16          THE WITNESS:  Okay.  I'll -- I'll sit at this
17      distance then.  Sorry --
18          MR. YAMIN:  Okay.  Thanks.
19          THE WITNESS:  -- for my giant head being in
20      the way.
21          MR. YAMIN:  I object to the last statement,
22      but thanks for the -- what you just given.  Court
23      Reporter, please, could you read Mr. Commander
24      Winstrom's last answer?
25          COURT REPORTER:  Just the last answer is all

Page 33

1  you need?
2          MR. YAMIN:  Yes.
3          COURT REPORTER:  Let me just -- one second.
4          MR. YAMIN:  Yes.  Please.
5          (REPORTER PLAYS REQUESTED TESTIMONY)
6          COURT REPORTER:  Did you catch that?
7          MR. YAMIN:  Most of it.
8          MS. DONNELL:  George, I'm going to just clear
9      it up anyway, so maybe that'll help.  Is that okay?
10          MR. YAMIN:  No.  I rather hear the answer.
11      Can you read it, Ms. Court Reporter?
12          COURT REPORTER:  Give me just a second.
13          MR. YAMIN:  Yeah.  Thanks.
14          (REPORTER READS BACK REQUESTED
15          TESTIMONY)
16          MR. YAMIN:  Okay.  Now, I got it.  Thank you.
17          COURT REPORTER:  No problem.
18          MS. DONNELL:  May I proceed, George?
19          MR. YAMIN:  As far as I'm concerned.  Yes.
20  BY MS. DONNELL:
21      Q    Okay.  Well, that was to clear it up so you
22  could hear the answer.  Okay.  So, Commander Winstrom,
23  you would agree with me that the protections that are
24  extra protections for juveniles in 87-7, section 9F,
25  that we've been reviewing.  These are added protections

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 12 of 78 PageID #:9066
The Deposition of COMMANDER GREGG WILLIAMS, taken on September 2, 2016
34..37

Page 34

1  that are supposed to be given, prior to any custodial
2  interrogation, correct?
3      A    Yes.
4      Q    And these are added protections that relate to
5  making sure that the juvenile offender has given Miranda
6  -- their Miranda warnings and haven't waived them,
7  correct?
8      A    That is correct.
9      Q    Okay.  And so to be clear, these protections
10 in Section F are not limited to before a written
11 statement by a juveniles taken or a concession, correct?
12          MR. YAMIN:  Objection.  Form of the question.
13          MS. JOHNSON:  Join.
14     A    Correct.
15     Q    Okay.  Okay.  So I think we already went over
16 the first protection, it was just that the -- there
17 needs to be this advisement given that the case could be
18 transferred to criminal court and the individual could
19 be processed as an adult.  So I think can we can move on
20 from there.  The next sentence has an express statement
21 by the juvenile that he understands the meaning of this
22 advice as required, correct?
23     A    Yes.
24     Q    Okay.  And what is -- what does that require?
25          MR. YAMIN:  Objection to form.

Page 35

1      A    Well, it requires that the individual being
2  questioned says affirmatively that they understand, you
3  can't just assume that they understand.  And this
4  section is actually redundant of the adult Miranda in
5  the section above, as well.
6      Q    Does that mean that -- is that to be
7  interpreted that a juvenile suspect has to give their
8  expressed statement that they understand the meaning
9  twice, or it's just a reiteration that it has to happen?
10     A    I believe it is just a reiteration that it has
11 to happen.
12     Q    Okay.  Thank you.
13     A    Yes.
14     Q    Okay.  Then the last sentence of Subsection F
15 "The juvenile should be warned or questioned only in the
16 presence of an adult."  And that is all in all caps,
17 correct?
18     A    Yes.
19     Q    And then it says, "(parent, other relative,
20 friend)" and then "if such an adult can be located,"
21 correct?
22     A    Yes.
23     Q    Okay.  And so can you explain what this
24 provision of Subsection F means?
25     A    Yes.  This provision means that the sworn

Page 36

1  members, who are conducting the custodial interrogation
2  have a responsibility to seek out a -- an adult to be
3  present when they question the juvenile.
4      Q    And because it's in Subsection F, does that
5  mean before they've initiated any custodial
6  interrogation?
7      A    Yes.
8      Q    And you said it's this sworn members who are
9  conducting hearing interrogation responsibility to seek
10 out an adult.  An adult is defined as -- in this as a
11 parent or relative or friend.  A parent, other relative,
12 or friend, right?
13          MR. YAMIN:  Object to the form.  But go ahead
14     and answer.
15     Q    Can you tell me the answer again?
16     A    Yes.
17     Q    Okay.  And what does 87-7 require in terms of
18 the responsibility of the sworn members seeking out an
19 adult to be present for the Miranda warnings and
20 custodial interrogation of a juvenile suspect?
21     A    It requires --
22          MR. YAMIN:  Objection.  Form.  Excuse me.
23     Objection.  Form.  You can answer it, please.
24     A    It requires this sworn member to make a
25 reasonable effort to locate an adult to be with the

Page 37

1  juvenile.
2      Q    What constitutes a reasonable effort to locate
3  an adult to be present with the juvenile for
4  questioning?
5      A    That would depend on the specifics of the case
6  and vary, like, case by case.
7      Q    Would it be considered a reasonable effort to
8  ask the juvenile if they have a family member, parent,
9  or relative, or adult that they could contact to be
10 present for the questioning?
11          MR. YAMIN:  Objection.  Form of the question.
12     Calls for speculation.  Incomplete hypothetical.
13          MS. JOHNSON:  Join.
14     A    It very well could be, but again, it would
15 depend on the specific facts of the case at hand.
16 BY MS. DONNELL:
17     Q    Well, are there some bare minimums that would
18 constitute a reasonable effort?
19          MR. YAMIN:  Same objections but I add form to
20     them.
21          MS. JOHNSON:  Join.  Instead of me just
22     saying join every time, can we just go ahead and
23     stipulate that the objections apply to all
24     defendants, so I don't have to keep doing that.
25          MS. DONNELL:  I'm fine giving that standing



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 13 of 78 PageID #:9067
The Deposition of COMMANDER CHRIS WINSTROM, taken on September 8, 2015

38..41

Page 38

1    objection, Brittany. That's fine
2         MS. JOHNSON: Thanks.
3         MS. DONNELL: So let the record reflect that
4    Ms. Johnson will join any of Mr. Yamin's
5    objections. Go ahead.
6         MR. YAMIN: Would you probably, restate or
7    reread the question, please?
8         MS. DONNELL: I asked -- I will just restate
9    it. I asked Commander Winstrom if there are any
10   bare minimums that constitute a reasonable effort
11   to locate an adult, meaning a parent other relative
12   or friend to be present before the custodian
13   interrogation of the juvenile deponent.
14        MR. YAMIN: Objection. Form of the question.
15   Calls for speculation and incomplete hypothetical.
16   A    So not to sound like a broken record, but it
17   would literally depend on the case. It would be
18   possible to write a policy with suggestions. But on a
19   case-by-case basis, it would not be possible to come up
20   with a bare minimum list that would be appropriate in
21   every situation.
22   BY MS. DONNELL:
23   Q    Okay. Would you agree with me that at the
24   very minimum, the sworn members who are present with
25   juvenile suspect that they want to interrogate, that

Page 39

1    they should ask that juvenile if they have a parent or
2    other relative or friend that they could contact to be
3    present for the questioning?
4         MR. YAMIN: Objection. Same objections.
5    A    That would seem to be a very reasonable step
6    for them to take.
7    Q    And would you agree that it would be also
8    considered a reasonable step if they had any parent or
9    guardian information from the juvenile that they should
10   make reasonable attempt to contact that parent or
11   guardian?
12        MR. YAMIN: Same objections.
13   A    If it is appropriate in this specific case,
14   that would be reasonable to do.
15   Q    If the sworn members had any contact
16   information, phone number or address of a parent or
17   guardian for the juvenile suspect, would it be
18   considered a reasonable step to try and locate that
19   individual?
20        MR. YAMIN: Same objections.
21   A    It -- it could be, depending on the case.
22   Q    If a parent, guardian, relative, or friend was
23   present at the detective area, would it be a reasonable
24   step to allow that individual to be present for the
25   questioning?

Page 40

1         MR. YAMIN: Same objections.
2    A    Absence, some other circumstances that would
3    prohibit it. That would be a reasonable thing to do.
4    There are situations where it would not be reasonable.
5    Q    Would it be reasonable staff to -- for the
6    sworn member to permit the juvenile to make a call --
7    phone call from the detective area to see if they could
8    contact a parent, other relative, or friend to be
9    present --
10        MR. YAMIN: Objection. Sorry.
11        MS. DONNELL: I'm sorry. That's okay. I
12   paused. I apologize. I'll just restate it.
13   BY MS. DONNELL:
14   Q    Would it be considered a reasonable step, um,
15   for the sworn member of the department to allow the
16   juvenile to make a phone call to a parent, other
17   relatives, or friends, to see if they could come to the
18   detective area for the questioning?
19        MR. YAMIN: Objection. Form. Calls for
20        speculation. Incomplete hypothetical.
21   A    Again, that would -- that would depend on the
22   actual case. It may make more sense for the detective
23   call. It may make sense not to call the individual at
24   all. So it would be on a case by case basis.
25   Q    I understand that it's hard. The purposes of

Page 41

1    the orders are to be more general because you can't
2    apply to every specific factual scenario; is that fair?
3    A    It is. Yeah. It is not possible to
4    contemplate every scenario in writing police policy.
5    That is correct.
6    Q    But that import of this provision of the
7    general order is that sworn officers were supposed to
8    make reasonable attempts to make sure that an adult,
9    meaning a parent or a relative or friend, is present for
10   the Miranda warnings and questioning of a juvenile
11   suspect who is going to be interrogated in custody,
12   correct?
13        MR. YAMIN: Objection. Form.
14   A    Yes.
15   Q    Okay. And you would agree with me that
16   detectives were trained on General Order 87-7, all of
17   its provisions including Subsection F, correct?
18   A    Yes.
19   Q    Okay. If an adult -- if reasonable steps are
20   made by the sworn office member to have an adult present
21   for a juvenile suspect's questioning in Miranda rights,
22   and the sworn officers are unable to obtain an adult, is
23   another reasonable step that the officer could take to
24   contact and have a youth officer present?
25        MR. YAMIN: Objection. Form.



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 14 of 78 PageID #:9068
The Deposition of COMMANDER CHRIS WINSTROM, taken on September 17, 2008
42..45

Page 42

1      MS. DONNELL:  I agree with you, George, that
2      was a terrible question.  Let me say it a little
3      more simply.
4 BY MS. DONNELL:
5      Q    So I'm going to strike that question and say
6 it again.  I apologize.  Commander Winstrom, is another
7 reasonable step that a sworn officer could take to have
8 an adult present is to contact the division and have a
9 youth officer be present for the juvenile's questioning?
10     MR. YAMIN:  Objection.  Form and incomplete
11     hypothetical.  Calls for speculation.
12     A    Depending on the circumstances, that could be
13 very reasonable.
14     Q    And at this time in 1991, during first and
15 second shift, were youth officers assigned to all the
16 detective areas?
17     MR. YAMIN:  Objection.  Form.  Foundation.
18     A    Just to clarify, we would refer to what you
19 would call first, second shift, second watch, and third
20 watch.  Second watch being the day shift, third watch
21 being the afternoon shift.
22     Q    Thank you for clarifying.  I'm sorry.  Thank
23 you.
24     A    That's okay.  And the answer is that generally
25 speaking, there would be a youth officer on duty on

Page 43

1 second watch and third watch.
2      Q    At the detective areas?
3      A    Yes.
4      Q    And how about for the first watch, if a
5 detective needed a youth officer present for an
6 interrogation of a youth suspect, what could they do on
7 first watch?
8      MR. YAMIN:  Objection.  Form and foundation.
9      A    During this time period, there was a central
10 youth division which maintained a first watch, which
11 included youth officers working the midnight shift or
12 first watch.
13     Q    And so those youth officers that were located
14 in the central office could be called out to the area
15 during first watch; is that right?
16     A    Yes.
17     Q    Okay.  Commander Winstrom, if there are -- if
18 the sworn officers take all reasonable steps to have an
19 adult present or including a youth officer present prior
20 to a juvenile interrogation -- custodial interrogation,
21 can -- is there any reason why a juvenile suspect should
22 be questioned outside the presence of either an adult or
23 a youth officer pursuant to 87-7?
24     MR. YAMIN:  Objection.  Form.  Calls for
25     speculation.  Incomplete hypothetical.

Page 44

1      A    87-7 does contemplate that there may be need
2 for flexibility.  For example, by including the
3 underlying word "if" such an adult can be located.  So
4 it does contemplate the scenario that an adult is unable
5 to be located.
6      Q    Is that part of 87, that flexibility you just
7 referred to an 87-7F, is that referring just to a
8 parent, or relative, or friend, however?
9      A    No.  This is an adult altogether.
10     Q    So you're interpreting this 87-7F if such an
11 adult can be located to incorporate and include a youth
12 officer, even though it's not specifically mentioned in
13 that part of this order?
14     A    Correct.
15     Q    And on what basis are you interpreting if such
16 an adult can be located to include youth officers?
17     A    There is no policy during this time period
18 regarding youth officers.  The common practice was when
19 a parent was unable to be found in the training was to
20 request a youth officer.
21     Q    Okay.  Let's unpack that a little bit.  Can
22 you tell me what the common practice was at this time,
23 meaning the applicable time frame for our noticed which
24 was January 1, 1988 through December 31, 1993?  And so,
25 could you tell me what that kind of practice was?

Page 45

1      A    Yes.
2      Q    Okay.  What was it?
3      A    The practice is if you were unable to locate a
4 parent or guardian or other adult, to make a request to
5 have a youth officer present.
6      Q    And that was to be prior to any custodial
7 interrogation?
8      A    Yes.
9      Q    Okay.  So just to be clear, prior -- it was
10 the common practice in 1988 through 1993 that if the
11 sworn officer was unable to locate a parent, other
12 relative, or a friend and had made all reasonable
13 attempts to do so, that they would make a request, have
14 youth officer present prior to any custodial
15 interrogation of a juvenile suspect, correct?
16     A    Yes.
17     Q    Okay.  And then you said that was also -- what
18 you've just described as the common practice, that was
19 how detectives and other sworn members were trained in
20 the department; is that correct?
21     A    Yes.
22     Q    Okay.  And can you describe the training that
23 sworn officers, including detectives and youth officers
24 received during this time frame, with respect to that
25 common practice?



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 15 of 78 PageID #:9069
The Deposition of COMMANDER ERIKA WILSON, on September 5, 2019
46..49

Page 46

```
1              MR. YAMIN:  Objection.  Form.
2      A    Yes.
3      Q    Okay.  Please describe.
4      A    Detectives during this time period received a
5  two-hour training during their pre-service training, as
6  well, on the job training.  This is the common practice
7  in the area so that day by day, as juveniles were
8  arrested, they would learn through doing the job of this
9  practice.
10     Q    And when you're saying this practice, that
11 means after they took -- they were first supposed to
12 take reasonable steps to locate a parent, guardian,
13 other relative, or friend, correct?
14     A    Yes.
15     Q    And if they were unable to do that, then the
16 next step was to request the presence of a youth officer
17 prior to the question -- custodial interrogation,
18 correct?
19     A    Yes.
20     Q    Okay.  Was the common practice and or training
21 during this time period, that if a sworn member was
22 going to deviate from that common practice and their
23 training received prior to becoming -- in-service
24 training as a detective, if they were going to depart
25 from that, were they supposed to contact the supervisor
```

Page 47

```
1  before doing so?
2              MR. YAMIN:  Objection.  Form.  Foundation.
3  Calls for speculation.  Incomplete hypothetical.
4      A    Not necessarily.
5      Q    Why not?
6              MR. YAMIN:  Same objections.
7      A    Just that every situation is different.
8  Perhaps a supervisor made them aware that there was no
9  youth officer available or there's some emergency going
10 on, you know, so it would be just depending on the
11 specifics of the case.
12     Q    Thanks to that clar -- oh, sorry, did I
13 interrupt you?
14     A    No.
15     Q    Thanks for that clarification.  I guess, let
16 me just phrase it a different way.  If there was going
17 to be a deviation from the common practice in detectives
18 training, that they should have an adult present or
19 youth officer present prior to a juvenile's custodial
20 interrogation.  Was it required that the supervisor have
21 knowledge of that deviation one way or another?
22             MR. YAMIN:  Objection.  Form.  Foundation.
23 Calls for speculation.  Incomplete hypothetical.
24     A    So again, not necessarily.  Supervisors have a
25 responsibility to monitor their subordinates and their
```

Page 48

```
1  cases.  However, depending on the circumstances, it may
2  or may not be appropriate to make the supervisor aware.
3  It would depend on the facts of the specific case.
4      Q    So just to be clear, it's your testimony that
5  if a detective was going to deviate from the common
6  practice and training and the requirements of 87-7, that
7  there was no requirement that they notify -- that the
8  supervisor have knowledge of that deviation; is that
9  correct?
10             MR. YAMIN:  Objection.  Form.
11 Mischaracterizes.
12     A    As far as 87-7, I would say that if they're
13 unable to locate an adult, that wouldn't be deviating
14 from 87-7, that's contemplated in there.  But as far as
15 being unable to obtain the assistance of a youth officer
16 after making such a request, that could be something
17 that they brought to their supervisor's attention, but
18 it may not be depending on the circumstances of the
19 case.
20     Q    Okay.  And then with respect to -- and I'm
21 sorry.  I think you clarified this, but something you
22 just said made me -- makes me want to make sure I've got
23 it clear.  It's your testimony that 87-7 Subsection F
24 required the sworn officer to seek the presence of an
25 adult including a youth officer before conducting the
```

Page 49

```
1  custodial interrogation, right?
2      A    The policy is silent on the presence of youth
3  officer.  The practice is that they would request a
4  youth officer if they were unable to obtain a parent,
5  other relative, friend, adult.
6      Q    Yes.  I'm sorry.  I just want to make clear
7  because I thought earlier when I said that was silent as
8  to youth officer, you testified that an adult -- if such
9  an adult can be located also refer to a youth officer.
10 I just want to make sure I got that right.
11     A    Well, perhaps I didn't get it right because
12 the policy is -- silent on the presence of the youth
13 officer.  This is a practice that was in place.
14     Q    So the interpretation, the practice, and the
15 training with respect to 87-7 9F at the time was for
16 sworn members to make reasonable steps to find a parent,
17 relative, or friend, and if unable to do -- so to
18 seek out a youth officer, correct?
19     A    Correct.
20     Q    Okay.  Great.  Okay, I think I'm clear now.
21 All right.  So -- okay.  So we were talking about -- I'm
22 just trying to make sure I've got it, whether or not
23 there was any practice training requirement that
24 supervisors needed to be aware that a juvenile suspect
25 was being interrogated in custody without an adult youth
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 16 of 78 PageID #:9970
The Deposition of COMMANDER CHRIS WILLROW, taken on September 8, 2021

50..53

Page 50

1  officer present before that interrogation proceeded.
2  And it sounds like if I got it right, your testimony
3  was: There is no such requirement in the policy,
4  practices, or orders of the CPD at this time.
5      MR. YAMIN:  Objection.  Form of the question.
6      A    There would be no specific requirement for
7  that.  However, sergeants in the detective division have
8  a responsibility to monitor their subordinates and the
9  cases of their subordinates.  So depending on the
10 circumstances of the case, they could have a
11 responsibility.
12     Q    So for example, if there was a detective in a
13 division and the sergeant knew that that detective was
14 repeatedly interrogating juvenile suspects without an
15 adult or youth officer present, they should step in and
16 do some supervision and corrective measures to make sure
17 87-7 is being followed, correct?
18     MR. YAMIN:  Objection.  Form of the question.
19     Calls for speculation.  Incomplete hypothetical.
20     A    It would -- so the way you're characterizing
21 it sounds like that's a reasonable thing to say.
22     Q    I guess what I'm saying is that maybe another
23 way of saying it is 87-7, section F -- 9F, really
24 contemplates that juveniles are only questioned in the
25 presence of an adult or a youth officer and it should

Page 51

1  really be the rare exception that a juvenile is being
2  questioned by detectives without the presence of another
3  adult, correct?
4      MR. YAMIN:  Objection.  Form of the question.
5      Mischaracterizes prior testimony of the witness.
6      You can answer.
7      A    The order does contain flexibility written
8  into it.  The practices, as I've stated.  I hope that
9  answers the question.  If not, I'll probably have to
10 hear it again because it was a lot.
11 BY MS. DONNELL:
12     Q    Well, I guess what I'm saying is that the
13 purpose of this is to really -- and the training and the
14 common practice was to have an adult or youth officer
15 present for juvenile custodial interrogations; isn't
16 that true?
17     A    Yes.
18     Q    And so while there's flexibility written into
19 these general orders, and, you know, not every scenario
20 is specifically addressed, it was the intent, purpose,
21 and practice to have juveniles being interrogated only
22 with the presence of another adult present who wasn't
23 one of the interrogators?
24     MR. YAMIN:  Object to the form of the
25     question especially its compound nature.  You can

Page 52

1      answer.
2      A    The intent of the policy and the practices was
3  to have another adult present, usually for custodial
4  interrogation of a juvenile, yes.
5      Q    Okay.  You know, I think I'm going to show you
6  what I've designated as  Exhibit 8 right now because I
7  think that that might be helpful just to clarify what
8  we're doing.  So you may have to give me just a minute.
9  I haven't done this in a while.  But let me pull it up
10 for just a second.  Also, I forgot to tell you, but it
11 is true if you ever want a break, let me know, we can
12 pause and take a break, okay?
13     (EXHIBIT 8 MARKED FOR IDENTIFICATION)
14     A    I'll wait for somebody else to go on break
15 first.
16     MR. YAMIN:  Let's go for a little bit more
17     and then --
18     MS. DONNELL:  I'm fine.  Yeah.
19     MR. YAMIN:  -- we can take a short break.
20 BY MS. DONNELL:
21     Q    All right.  Okay.  I think I'm sharing with
22 you my screen which should have Exhibit -- what I've
23 designated as Exhibit 8 to your deposition, which has
24 the Bates stamp City_Jakes01007, 1008.  And I'm happy to
25 adjust the -- this so you can see it.  Do you recognize

Page 53

1  what I've designated as Exhibit 8 detective division
2  memorandum number 92-8-6 from August 31, 1992?
3      A    Yes.
4      Q    Okay.  And this was one of the directives, the
5  DD -- the -- one of the special directives that you
6  reviewed for your deposition today?
7      A    Yes.
8      Q    And I appreciated, you said earlier, some of
9  these directive division standards got incorporated in
10 the SOPs or then, you know, sometimes they were back
11 special orders.  But for purposes of today and your
12 testimony, this is something that wasn't part of the
13 policies and procedures governing juvenile
14 Interrogations, correct?
15     A    As of the effective date and just for the
16 detective division, yes.
17     Q    Okay.  And for purposes of this detective
18 division, there was a special -- it was a special
19 directive that was issued because there had been a
20 change in the Juvenile Court Act that was amended as of
21 July 1989, correct?
22     A    I don't know th --
23     MR. YAMIN:  Excuse me.  Calls for
24     speculation.
25     Q    You can read the first part of the directive.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 17 of 78 PageID #:9071
The Deposition of COMMANDER CHRIS WINEBROW, taken on September 9, 2021
54..57

Page 54

1   "Chapter 37 of the Illinois Revised Statutes, Juvenile
2   Court Act as amended 1 July 1989, directive said no
3   minor shall be detained in a county jail or municipal
4   lock up for more than six hours." Do you see that?
5        A   Yes.
6        Q   Okay. So this directive was on its face
7   because of the issue -- because the particular change
8   made to the Juvenile Court Act back in 1989?
9            MR. YAMIN: Objection. Calls for
10       speculation. Foundation.
11       A   I would just say it's three, you know, it's --
12  that was three years ago so I don't know if this was
13  just clarification or if they wanted to reduce, you
14  know, the Juvenile Court Act into a policy, which is not
15  a bad idea. So I would be speculating to say that it
16  was because of the change that it was issued.
17       Q   All right. These -- this could have already
18  been trained -- incorporated, correct?
19       A   This could've already been practiced. I
20  believe this is the first of this sort of policy.
21       Q   Well, some of this policy -- I'm going to go
22  to page 2, is just reiterating things that were already
23  part of the general orders of the CPD that existed prior
24  to that, correct?
25           MR. YAMIN: Objection.

Page 55

1        A   Correct.
2            MR. YAMIN: Excuse me, form of the question.
3        A   That is correct.
4        Q   Okay. So let's look -- I'm going turn -- can
5   you see page two of Exhibit 8 now? On your screen can
6   you see it?
7        A   I think I see what -- what you see, I see
8   "Interrogations: Detectives who interrogate juveniles
9   will -- will."
10       Q   Yeah. That's right. And the first part of
11  that says, "The detective who takes a minor into custody
12  with or without a warrant will immediately make a
13  reasonable attempt to notify a parent or other
14  responsible person and document same." Do you see that?
15       A   Yes.
16           MR. YAMIN: Just before the answer, just want
17       to note that that's a continuation of something
18       that's on the previous page.
19           MS. DONNELL: Oh, thank you, George. Yes.
20       Okay. So sorry. Thank you, George.
21  BY MS. DONNELL:
22       Q   Page 1 of this -- of the Detective Division
23  memorandum is talking about the procedures of when a
24  juvenile is taken into custody, correct?
25       A   Yes.

Page 56

1        Q   Okay. And then George is right, we're going
2   to focus on the interrogation part. But for an in-depth
3   of when a juvenile is taken into custody -- well, let us
4   start in the beginning. When a juvenile is taken into
5   custody, the assigned detective has to ensure proper
6   placement of the juvenile in an unlocked room, correct?
7        A   Yes.
8        Q   "Ensure that the juvenile is not confined
9   where he can see or hear adult prisoners."
10       A   Correct.
11       Q   "Ensure the completion of a daily log of
12  juveniles taken into custody at Chicago Police."
13       A   Yes.
14       Q   "Ensure that the juvenile supervisor to the
15  youth officer is present."
16       A   Yes.
17       Q   And "Avoid placing a juvenile in secure
18  custody whenever possible."
19       A   Yes.
20       Q   Okay. And the note that's "Where escape,
21  injury, or other exigent circumstances are present, the
22  Area Watch Commander will determine whether secure
23  custody should be instituted. Such custody cannot
24  extend beyond six hours."
25       A   Yes.

Page 57

1        Q   And then finally, "The detective who takes a
2   minor into custody with or without a warrant, will
3   immediately make reasonable attempt," which is all caps
4   and underscored, "to notify a parent or other
5   responsible person to document the same."
6        A   Yes.
7        Q   Okay. And these -- what I've just read for
8   you were the policy and procedure of the Chicago Police
9   Department also in 1991, correct?
10           MR. YAMIN: Objection. Mischaracterizes
11       testimony. Foundation. Form. Calls for
12       speculation.
13       A   What -- can you -- can you scroll up again?
14       Q   Sure.
15       A   Okay. Well, this -- these definitely were the
16  practices. I am not positive that all of this is
17  reduced into policy prior to this document. Oh, that's
18  better.
19       Q   Which part are you not sure about, the holding
20  in custody, having in restraints for six hours or more
21  than six hours?
22       A   No. I think that -- I think that may have
23  been in processing of juveniles already. Just -- just
24  the wording, you know, "Ensure prompt placement of the
25  juvenile in an unlocked room." I don't know that that

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 18 of 78 PageID #:9072
The Deposition of COMMANDER ERIK J. WINSTROM, taken on September 8, 2017

58..61

Page 58

1  appears elsewhere policy prior to this.  It says sight
2  and sound it's worded differently, but I believe that
3  that wasn't policy.  The daily log is -- was in policy.
4  Worded differently, but the supervision until youth
5  officer or a desk sergeant was previous policy.  Would
6  placing the juvenile -- I don't know that the policy was
7  written but you should avoid placing the juvenile in
8  secure custody whenever possible.  But that would have
9  been the practice at the time.  I don't believe the note
10  was in policy previously, but again, that would have
11  been the practice at the time.  That's all for this
12  page.  A reasonable attempt.  Different wording, but
13  this is what we discussed in 87-7P for interrogations
14  but now this is discussing not -- not simply
15  interrogations, but it's adding just when a minor is
16  taken into custody at all.  So again, I don't think this
17  was in policy, but that was the practice.  And there was
18  um, policy at the patrol level for -- for such things.
19      Q   Okay.  I don't know if -- do you -- would it
20  refresh your recollection if I showed you 78-33, the
21  processing of juveniles department special order.  Would
22  that be helpful here for you or to refresh your
23  recollection?
24      A   I'm -- I'm familiar with it.  Is it an exhibit
25  by any chance or no?

Page 59

1      Q   Yeah.  It's  Exhibit 3 and you should have
2  that one in front of you.
3                  (EXHIBIT 3 MARKED FOR IDENTIFICATION)
4      A   It would now.  Okay.  Yes.  It would.  Do you
5  mind if I look at it?
6      Q   No.  Not at all.  I was just going to see if
7  that would be helpful to you.
8      A   So this -- and off the top of my head, I
9  believe it has requirements at the bottom of the first
10  page for desk sergeants.  So this is more patrol
11  centered.  Whereas this memorandum makes it clear,
12  responsibilities of detectives.  So this is, you know,
13  it's -- a lot -- a lot of the same themes are in -- are
14  in 78-33, but this is new because this puts it incumbent
15  on the detectives to take certain steps where the ideas
16  are still in this.  But this puts responsibilities, for
17  example, on the desk sergeant to notify juveniles'
18  parent, guardian custodian, et cetera.  Whereas this
19  directive puts it as a responsibility of the arresting
20  detective.
21      Q   So you never --
22      A   A little change.
23      Q   A little change but do -- well, and I guess
24  we're going to pull up the 1988 SOP, whether those were
25  in the detective division SOP 1988, some of these same

Page 60

1  provisions, right?
2      A   I --
3          MR. YAMIN:  Objection.  Form.
4      A   I don't believe that they were -- I believe
5  that this was brand new to the SOPs.
6      Q   Okay.  But let's look at this interrogation
7  section.  Well, first of all, do you want to -- I'm
8  sorry.  I want to give you a chance to look at 78-33 or
9  did you get a chance to do that?
10      A   Yeah.  I think I -- I kind of understand.  I
11  mean, when I was saying is there are a lot of the same
12  themes here, but this -- this is for patrol
13  responsibilities and what this does is take a lot of
14  those responsibilities and say, okay, now it's the
15  detective's job.
16      Q   Got it.  Okay.  Let's look at interrogations.
17  This part of detective division memo is incorporating
18  87-7 -- or not incorporating, but this part of the
19  detective division memo has the same provisions that
20  were already policy and 87-7 with respect to
21  interrogations of juveniles, correct?
22          MR. YAMIN:  Objection.  Form.  And misstates
23          evidence and the testimony.
24      Q   Well, let's go through it.  So detectives,
25  this AT -- this directive division memo says that,

Page 61

1  "Detectives who interrogate juveniles will number 1,
2  advise the juvenile of those constitutional rights,"
3  correct?
4      A   Yes.
5      Q   There's nothing new about that, right?
6      A   Correct.
7      Q   Okay.  That was an 87-7 and its precursor
8  probably too, right?
9      A   Probably so.
10      Q   Okay.  I've been around the law for a long
11  time.  Okay.  "Number 2, advise the juvenile that this
12  case may be transferred to criminal court where he may
13  be prosecuted as an adult."  That's also in 87-7, right?
14      A   Yes.
15      Q   Okay.  Then obtaining -- "Number 3, obtain an
16  express statement from the juvenile, that he understands
17  his constitution rights and understands that he may be
18  prosecuted as an adult for accepting any admission or
19  statement."  Do you see that?
20      A   Yes.
21      Q   That's in 87-7, right?
22      A   Yes.
23      Q   "Ensure that the juvenile is warned and
24  questioned in the presence of an adult, parent, other
25  relative, or a friend if such an adult can be located."

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 19 of 78 PageID #:9073
The Deposition of COMMANDER CHRIS WINSTROM, taken on September 8, 2021
62..65

Page 62

1  That's taken from 87-7, too, correct?
2         MR. YAMIN: Objection. Form. Foundation.
3  Misstates the evidence.
4     A   It's the same theme, I would say it maybe
5  worded slightly differently.
6     Q   It's the same requirement, correct?
7         MR. YAMIN: Objection. Form.
8     A   I'd have to look again at 87-7. I mean, it's
9  very close. Ensure that juvenile is warned and question
10 in the presence of a -- it's close enough, I would say.
11    Q   I mean, oh, sorry, I didn't mean to interrupt
12 you. Go ahead.
13    A   I just said it's close enough. It's the same
14 requirement. I don't remember the exact wording in 87-
15 7.
16        MR. YAMIN: Do you want to see 87?
17        MS. DONNELL: I'm sorry, George. I'm
18 questioning you can -- I'm questioning the witness.
19        MR. YAMIN: I asked him if he wants to see it
20 --
21        MS. DONNELL: That's coaching the witness.
22 So I'm going to question the witness and I ask that
23 you object on the record because I know we both
24 know how to do it. So --
25        MR. YAMIN: And that's not coaching the

Page 63

1  witness in any way.
2         MS. DONNELL: George, if I ask my witness if
3  he wants to refer or she wants to refer to a
4  certain document you absolutely object to me
5  coaching the witness.
6  BY MS. DONNELL:
7     Q   So putting that to the side, let's just move
8  on. Commander Winstrom, if you would like to refer to
9  Exhibit 2, Section 9F, and see if there's any material
10 differences between 87-7 and what's here and the direct
11 -- division memo in Subsection 4, you can do so and let
12 me know if there's any material difference.
13    A   Thank you. Yeah. So this is -- I mean, it's
14 still has the flexibility, but 87-7 had even more
15 flexibility because it simply said, "A juvenile should,"
16 whereas this says, "ensure," which in my policy writing
17 experience, this is a stronger requirement than 87-7.
18 The same thing, but a slightly stronger requirement
19 without the flexibility of the word "should."
20    Q   So the "should" that's bolded and underscored
21 in 87-7, your testimony today has more flexibility than
22 the detective division memo 928-6?
23    A   Correct.
24    Q   And so you're saying this was a policy change
25 in 1992?

Page 64

1         MR. YAMIN: Objection. Misstates the
2  testimony.
3     Q   Is that your test -- I'm sorry. Go ahead,
4  George. Let me just finish my question. Is your
5  testimony today, Commander Winstrom, that detective
6  division 82 -- 92-8-6 was a policy change in -- to 87-7?
7         MR. YAMIN: Objection. Form.
8     A   Okay. So it would not have changed 87-7.
9  This is a unit level policy for the Bureau of Detectives
10 so 87-7 would still be in effect, this would piggyback
11 on that and strengthen it. It would be a separate
12 policy all together, not for a department-wide policy
13 like -- like 87-7, but a unit level policy just for the
14 Bureau of Detectives, which emphasizes the requirement
15 of the presence of an adult, in my reading of it, more
16 than 87-7. So this language is stronger.
17    Q   Okay. I'm going to come back to -- and what
18 are you basing that upon?
19    A   Oh, the -- just simply the word "ensure". So
20 "ensure" is strong. It's -- it's stronger than word
21 "should" which the -- the word "should" means what it --
22 what it does, but it's not the word "shall" or it's not
23 the word "will." It's the word "should". So combined
24 with the -- if flexibility, it's -- if I was going to
25 emphasize it more, I would take out the word "should"

Page 65

1  and I would use the word "ensure" which the chief has --
2  did so. So in my policy reading, this is stronger than
3  87-7.
4     Q   Okay. If that's your testimony, then in 93-3,
5  the policy and custodial interrogation that replaces 87-
6  7, did it use the word, "ensure"? Did it keep the same
7  language, "should"?
8         MR. YAMIN: Could you repeat that question,
9  Heather?
10    Q   Well, are you familiar with General Order 93-
11 3?
12    A   I do not unless I can see it.
13        MR. YAMIN: Was that an exhibit, Heather?
14        MS. DONNELL: Not yet but it's -- really.
15        MR. YAMIN: Well, I mean, was it -- let me
16 rephrase the question. Was that one of the 80
17 exhibits that we're aware of?
18        MS. DONNELL: No. I don't think I've
19 provided it yet, but it's certainly one of the
20 applicable policies for this time period.
21        MR. YAMIN: Okay. Then would you restate the
22 question?
23 BY MS. DONNELL:
24    Q   Sure. Commander Winstrom, are you familiar
25 with General Order 93-3?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 20 of 78 PageID #:9074
The Deposition of COMMANDER KRISTL WILLETT, taken on September 2, 2021
66..69

Page 66

1          MR. YAMIN:  Objection to form --
2     A    I --
3          MR. YAMIN:  Excuse me, Commander.  Form and
4     foundation.
5     A    I probably am, but I won't know for sure until
6     I've seen it.
7     Q    Okay.  Well, if it's -- I'm just curious, if
8     it's your testimony -- it sounds like your testimony
9     today on behalf of the City of Chicago is that 92-8-6
10    was to be interpreted as an even more robust requirement
11    that the juvenile being questioned has the presence of
12    an adult, parent, relative or friend, and the adult
13    could be located then was in place in 87-7 as a special
14    directive to the detective division, correct?
15         MR. YAMIN:  Objection of form.  Misstates the
16    deponent's prior testimony.
17    A    Yes.  Keep in mind, you have two different
18    policy writers here, the 87-7 policy writers would have
19    been the research and development or whatever it was
20    called at the time.  And this is from the detective
21    bureau.  But my reading of this -- the -- the author of
22    this and the authority under Chief Stibich that this is
23    a stronger, more enhanced version of 87-7.  Yes.
24    Q    And you're basing that on your -- is there
25    anything you're basing it on other than your

Page 67

1     interpretation as the city's corporate representative?
2          MR. YAMIN:  Objection to form.
3     A    I'm -- I'm basing it on my experience as a
4     policy writer.
5     Q    And based on that experience, you think that
6     "ensure" demands more requirements than "should"?
7          MR. YAMIN:  Objection.  Form.  Misstates
8     witness's testimony.
9     A    Pretty close, yes.  That's right.
10    Q    Okay.  Anything else that your testimony is
11    based on, other than your experience as a policy writer
12    for how we should interpret the word "ensure" utilized
13    in detective division memo 928-6?
14    A    My 21 years in the police department.
15    Q    Okay.  Okay.  So Section 57 form, "The
16    juvenile being questioned regardless of the fact that
17    rights have been waived.  If at any time a lawyer or
18    parent appears requesting to see him, the juvenile shall
19    have the opportunity to have the lawyer or parent
20    present during the subsequent questioning if so
21    desires."  Do you see that?
22    A    Yes.
23    Q    Okay.  And that is incorporating section 11C
24    of 87-7, correct?
25         MR. YAMIN:  Objection.  Form.  But, when

Page 68

1     you're ready to answer?
2     A    Yes.
3     Q    Okay.  So Subsection 5 was already part of the
4     general order, right?
5     A    Yes.
6     Q    Okay.  And then Subsection 6 says, "Ensure
7     that present the youth officer to fulfill their
8     requirements to Juvenile Court Act, which states the
9     juvenile taken into custody, will be taken to the
10    nearest youth officer without delay."  Do you see that?
11    A    Yes.
12    Q    Okay.  And that part, is that part of 87-7?
13    A    No.
14         MR. YAMIN:  Objection.  Form.
15    Q    Okay.  That stems from the Juvenile Court Act?
16         MR. YAMIN:  Form.
17    A    Yes.
18    Q    Was that part of the policy and practice of
19    the Chicago Police Department prior to 928-6?
20    A    It was not in policy.  This is a new policy.
21    It was stated here in the Juvenile Court Act and it was
22    the practice of the police department.
23    Q    So you're saying 92-8-6 Subsection 6 is a new
24    policy; is that right?
25    A    It is a new written policy, yes.

Page 69

1     Q    A new written policy, but it was the practice
2     and training of the Chicago Police Department prior to
3     the enactment of 928-6 or the issuance of 928-6?
4     A    Yes.
5     Q    Okay.
6          MS. JOHNSON:  Would this be a good time to
7     take a short break?
8          MS. DONNELL:  Yeah.
9          MR. YAMIN:  I was just about to say the same
10    thing.
11         MS. DONNELL:  I was just taking a nice long
12    pause to see where I want to go next.  Yeah, that's
13    totally fine.  What if we take -- how about a ten
14    minute break and we'll come back at 11:45?
15         MR. YAMIN:  Sounds good.
16         COURT REPORTER:  Okay.  We're off record.
17         (OFF THE RECORD)
18         COURT REPORTER:  We're back on the record.
19    BY MS. DONNELL:
20    Q    When I went to apologize because I misstated
21    General Order 93-3.  Different things going in my brain
22    has to do with the disciplinary procedures, not
23    custodial and interrogation, so my apologies for that
24    earlier reference.  Okay.  Let's continue.  I'm going to
25    go back to Exhibit 2, which is General Order 87-7 and

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 21 of 78 PageID #:9075
The Deposition of COMMANDER ERIKA WINTERHALTER, taken on September 1, 2021

70..73

Page 70

1  now I'm going to ask you some questions about Section
2  9G, okay?
3      A    Yes.
4      Q    Okay.  And I'll just read it for the record
5  and then we can ask her some questions about it.  So it
6  says, "It is not enough for the person to be questioned,
7  is warned and decides nonetheless to answer questions.
8  Any circumstances of lengthy and combating --
9  incommunicado custody, deception, promises or
10  suggestions of benefits, or other forms of a
11  psychological pressure will be -- will invalidate the
12  acceptability of anything the person questions, states,
13  or otherwise."
14     A    That's right.
15     Q    Okay.  And I'm just going to pause for a
16  minute.  My e-mail to you of the exhibits bounced back
17  so on the next break I'll get your e-mail and resend to
18  you so you have all these exhibits, okay?
19     A    Okay.
20     Q    I'm sorry.  This is to the court reporter, but
21  I think you should have them, too.  Sorry.
22         MR. YAMIN:  Were you planning to do with the
23     -- you're talking about a new exhibit?
24         MS. DONNELL:  No.  This is not a new exhibit,
25     but my -- I attempted to send the exhibits I've

Page 71

1      given you the link to Bethany and it bounced back,
2      so I didn't get --
3         MR. YAMIN:  I thought you're talking about
4      different exhibits other than 1 through 8?
5         MS. DONNELL:  No.  Not yet.  Not yet.
6  BY MS. DONNELL:
7      Q    Okay.  So sorry.  So we're just focused here
8  on Exhibit 2, which is General Order 87-7, and we're
9  looking at Subsection G, Section 9, right?
10     A    Yes.
11     Q    Okay.  And so what is the purpose of this
12  Subsection to the CPD's policies and procedure regarding
13  custodial interrogation?
14         MR. YAMIN:  Objection.  Form.  Foundation.
15     You can answer.
16     A    The purpose of this is to inform sworn members
17  not to conduct interrogations in certain way that would
18  invalidate the statements or admissions made during
19  those interrogations.
20     Q    Okay.  And so these conditions include a
21  lengthy automatic incommunicado custody, correct?
22     A    Yes.
23     Q    Okay.  And what does incommunicado custody
24  mean?
25     A    That would be having someone secured in such a

Page 72

1  way that they're unable to speak to others, say over the
2  phone, or otherwise, prohibiting them from making
3  contact with those in the outside world.
4      Q    During the relevant time frame for your
5  testimony today, was that -- was there any specified
6  durations of time that juveniles could be held
7  incommunicado?
8         MR. YAMIN:  Objection to the form.
9      A    There was not a specific time requirement as
10  for this provision.  No.
11     Q    Okay.  Okay.  But it's fair to say that for
12  both adults and juvenile, a lengthy incommunicado
13  custody could invalidate any inculpatory statements made
14  by an individual, correct?
15     A    Yes.
16     Q    Okay.  The next one listed is deception,
17  right?
18     A    Yes.
19     Q    So sworn officers or detective using deception
20  with an individual that they're interrogating could also
21  invalidate any admissions or inculpatory statements,
22  correct?
23     A    It could, yes.
24     Q    The same is true here for promises or
25  suggestions of benefit if the detective would make

Page 73

1  converses or suggestions of benefits to the individual
2  being questioned that too could possibly invalidate any
3  inculpatory statements that they make, right?
4      A    Yes.  It could.
5      Q    And the General Order, 87-7 and also
6  prohibited other forms of psychological pressure that
7  could invalidate the acceptability of anything the
8  person in question states were provides in writing,
9  right?
10     A    Correct.
11     Q    Okay.  Okay.  Under deposition notice
12  Subsection 10, the waiver of rights.
13     A    Okay.
14     Q    Okay.  Here, a person's waiver of rights needs
15  to be knowing, voluntary, and intelligent, right?
16     A    That is correct.
17     Q    Okay.  And that -- the sworn members at the
18  department are supposed to take into mind the
19  individual's age when they're considering and knowing
20  involuntary waiver of Miranda rights, correct?
21     A    Can you --
22     Q    Subsection 10A?
23     A    Okay.  So the wording here is -- yes.
24     Q    A specific language there's an order to show
25  such a waiver, meaning waive Miranda rights, being

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 22 of 78 PageID #:9076
The Deposition of COMMANDER CHRIS WINBROM, taken on September 2, 2021
74..77

---

Page 74

1   knowing and voluntary, and intelligent, that -- sorry.
2   Let me try again.  Subsection A, says, "An individual
3   may waive these rights, provided the waiver's made
4   voluntarily, knowingly and intelligently.  In order to
5   show such waiver established and incorporate in the
6   statement, the individual's age, education, employment,
7   and the fact that he understands the English language."
8   Do you see that?
9       A   I do you see that.
10      Q   So in other words, CPD, the policy and
11  procedure of the Chicago Police Department was:  Sworn
12  members were supposed to have in mind individual's age,
13  education, employment, and their understanding of the
14  English language to determine whether a waiver of
15  Miranda was knowing, voluntary, and intelligent, right?
16          MR. YAMIN:  Objection.  Form.
17      A   Yes.
18      Q   Okay.  Okay.  I want to talk about
19  interrogation procedures and what was permissible or
20  impermissible under the policies and procedures of the
21  Chicago Police Department during relevant time period,
22  okay?
23      A   Yes.
24      Q   All right.  Were detectives permitted to use
25  any physical force in the context of a custodial

Page 75

1   interrogation?
2           MR. YAMIN:  Objection.  Form.
3       A   No
4       Q   Okay.  So all physical force is prohibited
5   under the policies and procedures of the Chicago Police
6   Department; is that right?
7           MR. YAMIN:  Objection.  Form.
8       A   Yes.
9       Q   So detectives could not hit an individual in
10  their custody that they are questioning; is that right?
11          MR. YAMIN:  Objection.  Form.
12      A   Absent some other circumstance, as part of
13  custodial interrogation striking an individual would be
14  prohibited.
15      Q   And you're saying absent some other
16  circumstances, I'm not sure what you mean by that.  So
17  did they use --
18      A   They're --
19      Q   -- physical force?
20      A   Like for example, if the individual attacked
21  the detective, the detective would be permitted to use
22  force to defend themselves.
23      Q   Okay.  So -- go ahead.  Sorry.  Go ahead.
24      A   In the context of strictly for the purpose of
25  custodial interrogation, you are correct that all force

Page 76

1   is prohibited.
2       Q   Okay.  So absent a scenario when then
3   officer's safety is at issue and they need to protect
4   their safety, physical force is completely prohibited in
5   the context of a custodial interrogation; correct?
6       A   Again, and so I can -- I can come up with
7   theoretical examples all day, but in the context of a
8   custodial interrogation for interrogation purposes,
9   physical force is absolutely prohibited.
10      Q   Okay.  So for interrogation purposes, a
11  detective cannot hit, slap, punch a suspect that they're
12  questioning?
13      A   Absolutely correct.
14      Q   Okay.  And that is a bright line; correct?
15      A   It is --
16          MR. YAMIN:  Objection to form.
17      A   It is -- it is a written -- written policy, it
18  is in training as well, yes.
19      Q   Okay.  Also, is it also true that it is part
20  of the policy practices and procedures of the Chicago
21  Police Department, that detectives could not threaten
22  physical force as a questioning to interrogation tactic?
23      A   Correct.
24      Q   Okay.  You would agree with me that detectives
25  who are conducting a custodial interrogation were not

Page 77

1   permitted to deprive the individual of their questioning
2   of water, correct?
3       A   Correct.
4       Q   And they were not permitted to deprive the
5   individual their questioning of food?
6       A   Correct.  Correct.
7       Q   They had to ensure that the length of time
8   that the individual was prohibited from having contact
9   with the outside world to not become too lengthy,
10  correct?
11          MR. YAMIN:  Objection.  Form.
12      A   Correct.
13      Q   And I'm going to use the word incommunicado.
14  You know what that means, right?
15      A   Oh, I always thought I did, but maybe we
16  should make the definition.  Thanks.
17      Q   Sure.  I'm using that as the individual that's
18  being questioned is unable to make a contact with the
19  outside world by phone call or any other means.
20      A   We agree.
21      Q   Okay.  So the detectives interrogating a
22  suspect that they have in custody, have to make sure
23  that the duration of time that the suspect is held
24  incommunicado is not too lengthy to result in their
25  being coerced psychologically, correct?



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Page 78

1    MR. YAMIN:  Objection to form of the
2  question.
3    A    Correct.
4    Q    Okay.  And that length of time per
5  incommunicado -- sorry.  The length of time that's
6  considered too lengthy to be home incommunicado will
7  depend on the suspect's age, correct?
8    MR. YAMIN:  Objection.  Form.  Calls for
9  speculation.
10   A    The length of time would be based on all the
11 circumstances of the case.  Age would be a factor to
12 take into consideration.  I can say it could be a
13 factor.
14   Q    Yeah.  You would agree with me that a
15 detective may hold a -- well -- strike that.  Okay.
16 Should -- well, detectives really shouldn't be having
17 juveniles incommunicado for any length of time pursuant
18 to the policies, practices, and procedures of CPD,
19 correct?
20   MR. YAMIN:  Objection to form.  Foundation.
21   A    I wouldn't say that's necessarily true.
22   Q    Well, you'd agree with me that what we
23 discussed earlier today and you testified to, that the
24 policies, practices, and training of CPD, was that
25 juvenile suspects were to be questioned in the presence

Page 79

1  of an adult or a youth officer?
2    MR. YAMIN:  Is there a question?  Because I
3  want to object if there's a -- I didn't hear the
4  question part.
5    MS. DONNELL:  Sorry.
6    MR. YAMIN:  Well, would you restate the
7  question, please?
8  BY MS. DONNELL:
9    Q    Sure.  As you testified earlier today,
10 Commander Winstrom, isn't true that the policy practices
11 and procedures for the Chicago Police Department
12 contemplated that juveniles weren't to be interrogated
13 incommunicado --
14   MR. YAMIN:  Object --
15   Q    -- the --
16   MR. YAMIN:  Sorry.
17   MS. DONNELL:  Go ahead.  That's okay.
18   MR. YAMIN:  Objection.  Form.  Misstates
19 prior testimony.
20   A    So there's -- there's a lot to unpack, but the
21 -- but the previous question was not that -- previous
22 question was if it was our policy not to hold juveniles
23 incommunicado at all, and that's what I was responding
24 to, that is not necessarily the practice.  So as
25 far as lengthy incommunicado of a juvenile or any

Page 80

1  underage individual would go to the voluntariness of a -
2  - of a statement or any custodial interrogation.  There
3  are periods of time processing all arrests that an
4  individual would be unable to make phone calls or
5  contact with -- with outside individuals.
6  BY MS. DONNELL:
7    Q    Okay.  But let's say with respect to
8  questioning a juvenile, the policies, procedures,
9  practice, and training was that juvenile shouldn't be
10 questioned or interrogated incommunicado?
11   MR. YAMIN:  Objection.  Form.  Foundation.
12   A    I -- there's a lot to unpack there.  So that -
13 - can you repeat the question one more time.  So I can
14 get it right?
15   Q    Sure.  I thought I actually didn't think of
16 that earlier, but you earlier testified that the policy
17 and practice during this time period was that sworn
18 officers were trained and instructed to make all
19 reasonable attempts to have an adult present prior to a
20 Miranda warning waiver, and a custodial interrogation.
21 Remember that testimony?
22   A    I -- I --
23   MR. YAMIN:  Excuse me.  Pardon me.
24   Objection.  Mischaracterizes prior testimony.  You
25   can answer.

Page 81

1    A    Yes.  I testified that there is a policy
2  requirement to make reasonable attempts to contact an
3  adult in the situation for a custodial interrogation.
4    Q    And that includes a youth officer, correct?
5    A    And the -- there was not a written policy
6  during this time period up until the '92 memo for -- to
7  have a youth officer present.  However, the practice was
8  to request the youth officer and the training was as
9  well, if a parent could not be found.
10   Q    Okay.  Okay.  So I want to turn now to and
11 I'll look at Exhibit 3, which is General Order 80 -- oh,
12 I'm sorry.  I'm sorry.  Let me -- let me do one more
13 thing before we finish up with this.  Okay.  So 87-7
14 also prevented any, let's see, other forms of
15 psychological pressure that would invalidate the
16 acceptability of anything the person questions, states,
17 or writes, correct?
18   A    Yes.
19   Q    And so that psychological pressure could be
20 promises that are made like an individual could go home,
21 right?
22   MR. YAMIN:  Objection.  Form.  Calls for
23   speculation.
24   A    A promise for the individual to go home in
25 exchange for a confession or admission would be

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Page 82

1   prohibited.
2       Q    Okay.  And the suggestion of a benefit
3   similarly would be prohibited, like, that if you say
4   something inculpatory, you can go home, right?
5           MR. YAMIN:  Same objection.
6       A    Correct.
7       Q    Psychological pressure could also include
8   threats?
9       A    Threats are prohibited.
10      Q    Okay.  That would include threats to the
11  person's physical safety, right?
12          MR. YAMIN:  Sorry.  I haven't -- outside
13      noise.
14          MS. DONNELL:  Sorry.  Could you not hear me?
15      I'm sorry.
16          MR. YAMIN:  Pardon me.  There's outside noise
17      that interfered with.  Could you just say that
18      question?
19  BY MS. DONNELL:
20      Q    Sure.  That would include threats to
21  somebody's physical safety, correct?
22      A    That is correct.
23      Q    And it could include threats to the -- have
24  family members taken away from them or to be taken away
25  from their family?

Page 83

1       A    That is correct.
2       Q    Or it could include threats to be charged with
3   a certain crime?
4           MR. YAMIN:  Objection.  Form.
5       A    Well, it could, but if there is -- if it's a
6   factual statement that they will be charged with a
7   crime, it may not necessarily fit to the circumstances
8   of, you know, a threat that would be prohibited.  A
9   statement of fact that's true might not necessarily be
10  prohibited in such a case.
11      Q    Okay.  Now I would like you to turn with me to
12  that processing of juveniles 78-33, which I've marked as
13  Exhibit 3 to your deposition.
14      A    Got it.
15      Q    Okay.  So -- and this is -- I think you
16  testified earlier, this is a department special order;
17  is that right?
18      A    It is.
19      Q    And what does that mean if something is
20  considered a department special order?
21      A    The meaning has changed over the years.
22  During this time period, this was a -- all right.  So
23  I'll tell you, the authority is this is department-wide
24  order, so it's not just pure patrol or detectives, it's
25  everyone in the police department.  A special order

Page 84

1   during this time frame contained more specific
2   procedures, such as like forms and things like that,
3   that would be needed unless overall policy concepts.
4       Q    Thanks for that.  Okay.  And so this is
5   applying to when juveniles are being processed by the
6   department at various point in time, either out in the
7   field or at court, right?
8       A    It has -- yes, it does have both of those.
9       Q    Okay.  And so let's just focus on the field
10  procedures.  And this would be applicable to any patrol
11  or detectives as you previously stated, right?
12      A    While the order was applicable to all parties,
13  this is tailored to patrol, as you can see in here, so
14  it doesn't necessarily contemplate detectives.  But the
15  overall concepts are -- are the same.
16      Q    And detectives can be exempt from this -- this
17  department-wide special order?
18      A    Okay.  So, the -- so this department wide
19  special order has the authority of over the entire
20  department.  So a detective would not be exempt from
21  this.  However, as you guys -- well, the orders are
22  imperfect sometimes.  And this order is imperfect, where
23  it does not necessarily contemplate the processing of
24  detective making an arrest for an investigation.  I
25  could walk you through why that -- why that is if you

Page 85

1   wanted me to.
2       Q    Sure.  Why is that?  You want to tell me why.
3       A    Sure.  So if you look at Section 3, the field
4   procedures.
5       Q    Yeah.
6       A    I mean, just from the -- from the number 1
7   that the arresting officer will provide -- let's start
8   with 3B.  You see that it contemplates when you arrived
9   in this -- this was written more for an arrest in the
10  field by a police officer of juvenile for example, like,
11  retail theft or something where the disposition is
12  complete at the time of the arrest, and it contemplates
13  arriving at the station, and turning the juvenile right
14  over to the desk sergeant, and the desk sergeant then
15  making notification of the parents, notification to the
16  youth officer who would be responsible for processing,
17  et cetera.  So if a detective were to make an arrest in
18  a more complex crime, than something that could be, you
19  know, easily sorted out on scene if it required follow
20  up They would not follow these procedures.  It would --
21  they would not stop and turn the individual over to the
22  desk sergeant.  They would process the juvenile in the
23  area.
24      Q    All right.  Does that mean your testimony
25  today is that: If the detective has a juvenile in their



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Page 86

1    custody that they this provision about immediately
2    contacting a parent and notifying to use division
3    officer was inapplicable?
4              MR. YAMIN:  Objection to form.
5         Q    I'm just trying to understand your testimony.
6         A    Yeah.  So --
7              MR. YAMIN:  And misstates prior testimony.
8         A    So that theme would still be followed by the
9    detectives.
10        Q    What do you mean that theme?  That -- are you
11   saying that they both immediately contact a parent that
12   they have the juvenile in custody and also contact the
13   youth division?
14        A    So you're looking at 3C2, correct?
15        Q    That's right.  Uh-huh.
16        A    Okay.  So -- so this is -- maybe I can be
17   clear here.  This is what I'm saying, 3C2 does require
18   that of a detective.  However, if you look in the
19   wording in this document, it requires it of the desk
20   sergeant.  So like I said, that theme -- so these
21   requirements are still required by a detective.  It's
22   just as I said, this order is written imperfectly this -
23   - these responsibilities would be a responsibility of
24   the arresting detective and not the desk sergeant.
25        Q    Thank you for clarifying.  So just to be

Page 87

1    clear, when you're using the themes, you're saying even
2    though it says the desk sergeant, excuse me.  The
3    requirement that the arresting officer, whether it's
4    patrol or a detective, would still have to "immediately
5    notify -- attempt to notify a parent or guardian, and
6    also notify the youth division" even though it just the
7    desk sergeant here in 78--33.  Did I get it right?
8              MR. YAMIN:  Objection.  Misstates the
9         witness's testimony.
10        A    I would say almost, but you may have -- I
11   think you said immediately notify the youth division and
12   I'm not -- I'm not certain that that's what -- what this
13   --
14        Q    I see
15        A    -- says.
16        Q    I'm sorry.  Let me clarify.  So the
17   requirement -- so if a detective arrests a juvenile, it
18   was still a requirement that they, one, immediately
19   attempt to notify a juvenile's parent, guardian, or
20   custodian --
21        A    Yes
22        Q    -- relative, and two, comply with current
23   department procedures relating to the detention of
24   juveniles requesting youth division officer be assigned
25   to the case, et cetera?

Page 88

1         A    Yes.
2         Q    Okay.  Thank you.
3         A    You're welcome.
4         Q    And that Department Special Order 78-33 was
5    applicable during the relevant time frame that we're
6    having you testify here today?
7         A    Yes.
8         Q    Okay.  Thank you.  During this time period,
9    was there any requirement on detectives that they
10   document and record their reasonable attempt to locate
11   an adult to be present for the interrogation of a
12   juvenile suspect?
13             MR. YAMIN:  Objection.  Form.
14        A    During this time period, detectives were
15   required to document all relevant material to the case,
16   on a case-by-case basis that could be very relevant.
17        Q    How about during this time period, were
18   detectives required to document that they had made an
19   attempt to contact the youth division after they had
20   arrested a juvenile suspect?
21        A    During this time period, again, it's possible
22   that such a documentation could be relevant, but also
23   more than likely to that scenario, the youth officer
24   would be required to complete the processing.  So it
25   would be self-evident that a youth officer was there, or

Page 89

1    if that subject was relevant to the investigation, it
2    should have been documented.
3         Q    The -- were detectives required to document
4    that they had made an attempt to contact a youth officer
5    to be present prior to a custodial interrogation?
6              MR. YAMIN:  Objection.  Form.
7         A    On a case-by-case basis, that could be a
8    relevant point to document.  There's no specific policy
9    requiring that.
10        Q    Is there any requirement during this time
11   period that detectives who had juvenile suspects at the
12   area for the purpose of a custodian interrogation that
13   they needed to notify their supervisors?
14             MR. YAMIN:  Objection.  Form.
15        A    Yes.  During this time period, there would be
16   a log of juveniles taken into custody, kept.  That log
17   would have been the responsibility of the district
18   sergeant to maintain, so it wouldn't be a supervisor
19   overseeing those individuals, that would be a supervisor
20   in the building.  As well detective division supervisors
21   have overall responsibility to monitor -- monitor the
22   activities of the detectives, especially in major cases.
23        Q    And I'm sorry, could you tell me what that log
24   is referred to as, again?
25        A    I believe it's called the -- I think it's



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 26 of 78 PageID #:9080
The Deposition of COMMANDER CHRIS WITHROW, taken on September 26, 2018
90..93

Page 90

1  actually technically called the log of juveniles taken
2  into custody.
3      Q    And those were maintained by the sergeant or
4  the detective of each of the detective division?
5      A    Those would have been maintained by the
6  sergeant at the district desk.  So the uniform sergeant
7  that works in most cases, the first floor of the -- of
8  the building.
9      Q    I see.
10     A    Yeah.
11     Q    So for Area 3 --
12     A    All the -- I'm sorry, in old Area 3, that
13  would have been a detective sergeant.
14     Q    Okay.
15     A    Because old Area 3 didn't share a station with
16  -- that was at 39th and California and they did not
17  share a station with patrol.
18     Q    Area 1, that would have been the district, sir
19  -- on the second district?  Okay.
20     A    Yes.
21     Q    Got it.  Okay.  So if -- and was old Area 3
22  the only area where the detective sergeant would have
23  maintained the log of juveniles taken into custody
24  because all the other detective areas and at that time
25  had a district with it?

Page 91

1          MR. YAMIN:  Objection.  Foundation.
2      A    Yes.
3      Q    Okay.  Thanks.  So what were the requirements
4  back in this time period for detectives to report that
5  they had a juvenile in custody to be recorded on the logs?
6      A    During this time period when you entered a
7  station with the juvenile, you were to log that -- that
8  juvenile into the -- the record.  It was usually kept on
9  a clipboard.
10     Q    And this was true for patrol and detectives,
11  correct?
12     A    That is correct.
13     Q    And so this was something that officers --
14  sworn officers received training in the academy when
15  they were probationary officers as well as when they
16  were to their in-service training if they were promoted
17  to detective?
18         MR. YAMIN:  Objection.  Foundation.
19     A    They would have been trained in the policy.
20  And then they would have quickly learned on the job and
21  from their field training officer because it was
22  something that was done with juvenile arrest.
23     Q    And is that log requirement, is that part of
24  that special order 78-33?
25     A    That's a good question.  I do not see it in

Page 92

1  here.  I would -- if I was just trying to find out where
2  it was, I would see the processing persons under
3  department control and see if it was possibly --
4      Q    Got it.  Okay.  I think I can show that to you
5  -- sounds like that would refresh your recollection.  So
6  let me show that to you in a little bit.  But were there
7  any other requirements with notifying -- with respect to
8  notifying a supervisor when a detective had a juvenile
9  in their custody, other than what you've just described
10  about making sure that the juvenile is placed on, the
11  law either with the detective division sergeant for old
12  area three or the district sergeant if -- for, in
13  patrol?
14     A    As far as policy, not necessarily.
15     Q    Okay.  Can you give me just one second?  I'm
16  going to see if I can show it to you.  And then we can
17  move on.  Okay.  I'm going to mark this as  Exhibit 9,
18  to your depositions, so hopefully I can show you this.
19  Okay.  I'm marking as Exhibit 9 General Order -- let's
20  see, hold on for just a second.  I'm going to minimize
21  this.  Gen -- this is General Order 78-1, the processing
22  of persons under department control.  And this Exhibit
23  9, is Bates stamped City_Jakes927 consecutive through
24  959.  Is this the General Order that you were referring
25  to and also General Order, I guess, 92-5 that was

Page 93

1  replaced it on September 4, 1992?
2          (EXHIBIT 9 MARKED FOR IDENTIFICATION)
3      A    Yes.
4      Q    Okay.  In order to refresh your recollection
5  to look through this with respect to my question about
6  the juvenile log for juveniles in custody?
7      A    Yes.
8      Q    Okay.  Let me see if I can get to that part.
9  Okay.  I'm showing you -- I think this is Subsection D
10  on juvenile arrestees?
11     A    Yes.
12     Q    See that maybe doesn't have it them.  Do you
13  know what section has the log in it?
14     A    Hold on.  Okay.  Keep going.  Doesn't look
15  like it.  Now, both of this -- both this and processing
16  of juveniles both state that officer should comply with
17  department procedures relating to the attention of
18  juvenile.  So I'm wondering maybe if there's another
19  report out there but --
20     Q    But did you see another processing of
21  juveniles other than the ones I've shown you?
22     A    No.  No.
23     Q    So I'm just curious cause, maybe I can check
24  in a break, but the log that you're referring to, I
25  don't recall seeing it in these policies.  So I'm



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 27 of 78 PageID #:9081
The Deposition of COMMANDER ERIC WINSTROM, taken on September 8, 2021
94..97

Page 94

1  wondering where -- but you're testifying to it so I'm
2  just wondering where that might be from.  Do you have
3  any -- let me -- but maybe on a break we can check but I
4  didn't -- I don't recall seeing it 78-5 but it's your
5  testimony, however, that there was this juvenile in
6  custody log, right?
7      A   It is.
8      Q   And as you sit here today, at least at this
9  moment of your deposition, you're not really sure what
10 General Order or other directive?
11     A   No.  I'm not sure.  I have failed you.
12     Q   No.  That's okay.  But it -- nevertheless it's
13 your testimony that that was a requirement that was in
14 place for the CPD policy and procedures at the time?
15     A   It nevertheless is.
16     Q   Okay.  Maybe on a break we can figure out
17 where that came from.  Okay.
18         MS. JOHNSON:  Heather, take a look at your
19     Exhibit 8.
20     Q   Yeah.  Thank you.  Sorry.  Let me see if I can
21 find it.  All right.  Let's see.  Okay.  So Exhibit 8,
22 looking at procedures for taking into custody 93, it
23 says, "Ensure completion of a daily log of juveniles
24 taken into custody by the Chicago Police."
25     A   Do I have Exhibit 8?

Page 95

1      Q   I'd like to share with you, sorry, my fault.  I
2  don't think I had sent it for you to be printed.  Okay.
3  Well, Exhibit 8 has this document that you do ensure the
4  completion of a daily log, correct?
5      A   Yes.
6      Q   Okay.  Is it fair to say this might have been
7  -- probably was reiterating policy that was already in
8  place at the time?
9      A   Probably so.
10     Q   Yeah.  Okay.  Great.  Let's move on.  Okay.
11 And then questions regarding when juveniles were
12 transported by a sworn or like an office member, and
13 officer, either patrol or a detective.  If juveniles
14 were transported in the field, either as an arrest or to
15 be taken in for questioning, did sworn members have to
16 document that they had been transporting a juvenile?
17     A   It would depend on the circumstances of the --
18 the transport.
19     Q   Okay.  Can you describe or explain?
20     A   Sure.  If an arrest was made, there would be
21 documentation.  If say it's mi -- minor requiring
22 authoritative intervention, that would be a minor sheet
23 because the missing person that was found could be in
24 selects card.  If it was just giving a ride to a
25 juvenile to be a witness per se, that may not involve

Page 96

1  any documentation.  So it would depend on the
2  circumstances of the -- the trip of the juvenile,
3  whether or not a piece of paper was completed for it.
4      Q   Okay.  Thank you for that.  Okay.  I want to
5  switch gears and talk about youth officers, okay?
6      A   Yes.
7      Q   Okay.  Can you describe or define for the
8  record what a youth officer is for the Chicago Police
9  Department during this time frame?
10     A   During this time frame a youth officer was a
11 specially trained, sworn member of the police department
12 who was trained specifically into compliance for the
13 Juvenile Court Act, processing of juveniles, juvenile
14 arrests, investigation of missing person cases in crimes
15 against children, such as child abuse, and logistical
16 things such as communication with a juvenile probation,
17 which is tasked with maintaining entrance to what was
18 called the Audy Home at the time -- the juvenile
19 detention center.  So it was a specific designation.  It
20 was a higher pay grade than a police officer.  That's
21 pretty good.
22     Q   Okay.  And so -- and I want to focus on the
23 aspect of the youth officers in terms of their role in
24 assisting with the detective division right now, okay?
25     A   Yes.

Page 97

1      Q   And so that was one aspect of the work that
2  the youth officers did, correct?
3      A   Correct.
4      Q   Okay.  And when a youth officer was called
5  upon to assist the detective division in their own
6  investigations, what was the role that the youth officer
7  played?
8      A   And I --
9          MR. YAMIN:  Objection to the form.
10     A   I should clarify that the youth officers,
11 while they're title was youth officer and not detective,
12 they were still part of the detective division
13 themselves.  And they did --
14     Q   Okay.
15     A   And as well they did conduct some criminal
16 investigations such as child abuse and non-criminal
17 investigations such as missing persons.  So they were
18 during this time period an integral part of the
19 detective division, but your question is more about what
20 role they had in assisting the investigation of a crime
21 that they were not investigating themselves; correct?
22     Q   Yes.  I -- that's exactly right.  I just
23 wanted to clarify and so I think you did a good job of
24 clarifying it.  Basically, the youth officers were part
25 of the detective division, and there were certain

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Page 98

1 categories of crimes that they were charged with being
2 investigators, namely sexual abuse of children and
3 missing juveniles or children?
4     A    That's getting too deep in the we -- weeds.
5 But the youth officers did not take over sexual crimes
6 against the children until the -- the -- probably the
7 early '90s.  So that -- that transition took place
8 during the relevant time periods.  During the entire
9 relevant time period, they did child abuse
10 investigations but they switched over, we had a
11 standalone sex crimes unit and when that was disbanded,
12 the investigation of child sex crimes was sent over to -
13 - to the youth officers, but it was during this time
14 period, somewhere in between.
15     Q    Thank you for that clarification.  I
16 appreciate it.  And so -- then -- but I -- what I wanted
17 to focus our questioning on next was the capacities of
18 youth officers when they were called upon to assist
19 other detectives in their own criminal investigations.
20 The youth officers played a different role other than
21 investigator; is that right?
22         MR. YAMIN:  Objection.  Found -- form and
23     foundation.
24     A    When assisting in other investigations, they
25 could play several roles.  I touched upon earlier that

Page 99

1 they were task with processing all juveniles and you and
2 I discussed the role -- the practice of having them
3 involved in custodial interrogations where often times
4 there was crossover with cases or there was other roles
5 for them to play, such as they're the liaison with DCFS.
6 Sometimes, you know, for example, a murder victim who
7 had a child left behind, they would, uh, have the youth
8 officer assist with the outside detective in placing the
9 child.  So there -- there's a lot of ways that they were
10 involved in -- in various investigations, but I know you
11 probably focused on what we already talked about, which
12 was their role in custodial interrogation.  But I'll let
13 you tell me what it is that I can explain to you.
14     Q    That I just wanted to focus in on that part.
15 I think you know where I'm headed.  Sir, heading to
16 youth officers, their training, and practice with
17 respect to their participation.  And custodial
18 interrogation of juvenile suspect when they're called
19 upon by the detective division.  Okay.  So let's go
20 there.  So did you -- and in that capacity, did you
21 review both divisions manual as well as the training
22 materials of youth officers that were produced in this
23 case?
24     A    Yes.
25     Q    Okay.  And so -- and, you know, I don't know.

Page 100

1 Do you have what I designated as   Exhibit 5 in front of
2 you, which is that you've training -- it was one of the
3 training manuals that were produced of the clusters on
4 this one has -- it looks like this.  Yeah.  Okay.
5         (EXHIBIT 5 MARKED FOR IDENTIFICATION)
6     A    Yes.
7     Q    Okay.  Let's look at Exhibit 5 and for the
8 record, and Exhibit 5 says its Bates stamp of
9 City_Jakes23970 consecutive through 23995, unless just
10 open up to I think it's the first page, the unit
11 presentation for that first unit of training, okay?
12     A    Yes.
13     Q    And here, this is about number -- this was the
14 internet for the trainers introduce themselves, but then
15 the next section for this presentation was assistance
16 with detective personnel?
17     A    Yes.
18     Q    And so this was how the youth officers
19 retrained back in the relevant time period with respect
20 to how they were supposed to assist with detective
21 personnel; is that right?
22     A    Yes.
23     Q    Okay.  And so "With the arrest of a juvenile
24 offender, who may be charged as an adult the detective
25 will contact youth officers to be present during

Page 101

1 interrogation.  The youth officer will also be present
2 for any and all statements, especially written in-court
3 reported statements.  Youth Officer will then be part of
4 the case and we'll be subpoenaed to court for defense
5 motions and trial."  Do you see that?
6         MR. YAMIN:  Can you just specify where you're
7     reading from?
8         MS. DONNELL:  Sure.  I'm reading from
9     Subsection 2, right under introduction.
10 BY MS. DONNELL:
11     Q    Did I read that right?
12     A    Yes.
13     Q    Okay.  And so this training contemplates that
14 the detectives will contact youth officers to be present
15 for the interrogation of a juvenile offender, correct?
16         MR. YAMIN:  Objection.  Form.
17     A    It does.  This specifically states the
18 juvenile offender to be charged as an adult -- who could
19 be charged as an adult.
20     Q    Thank you.  Yes.  That's right.  And then the
21 youth officer will also be present for any and all
22 statements, especially written court reported statements
23 as a separate possibly requirement for assistance,
24 right?
25     A    Yes.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Page 102

1    Q    And then they youth officer is being trained
2  that they also will be part of the case and can become a
3  witness in the case.
4    A    Yes.
5         MR. YAMIN:  Well --
6    Q    Okay.
7         MR. YAMIN:  Objection.  That misstates --
8         that doesn't really -- that's not what it says --
9         that's paraphrasing.
10  BY MS. DONNELL:
11    Q    I'll credit.  "The youth officer will then be
12  part of the case and will be subpoenaed to court for
13  defense motions and trial."
14    A    Yes.
15    Q    Okay.  So then next three -- the next part of
16  the training of youth officers was for the processing of
17  juveniles, right?
18    A    Got it.
19    Q    And this is -- and the training includes that
20  juvenile should be printed and photographed.
21  Fingerprinted and photographed when they're processed,
22  right?
23    A    Yes.
24    Q    Okay.  Subsection 4 of this training involves
25  automatic transfers, right?

Page 103

1    A    Yes.
2    Q    And this is requiring -- related to juveniles
3  who will be -- I'm going to look at Subsection B, one
4  where -- it says youth officers -- "You will also be
5  involved in cases were 15 and 16-year-olds are charged
6  with armed robbery with a gun, aggravated criminal
7  sexual assault, and murder," right?
8    A    Yes.
9    Q    And so this training contemplates that the
10  youth officer is going to be involved in any such cases,
11  right?
12    A    Yes.
13    Q    And then the training goes on to state, "When
14  assigned to assist with these cases, assist the assigned
15  detective.  Your role is not that of investigator.  Your
16  presence as required by law, and your assistance will be
17  helpful on the prosecution of the case."
18    A    Yes.
19    Q    Okay.  So can you explain what that meant,
20  that these officer assigned to these cases, meaning 15
21  and 16 year old both charged with those serious offenses
22  both delineated that they're assisting, but they're not
23  the investigator?
24    A    Yes.
25    Q    What does that mean?

Page 104

1    A    They were to be requested for two reasons.
2  One, if applicable, custodial interrogation and number
3  2, for the processing of the arrest.
4    Q    Okay.  It also says here, "Your presence is
5  required by law," right?
6    A    I see that.
7    Q    And is that referring to the Juvenile Court
8  Act?
9    A    It is.
10    Q    Okay.
11         MR. YAMIN:  Sorry, was that referring to
12  what?
13         MS. DONNELL:  The Juvenile Court Act.
14    Q    Okay.  Okay.  I'm going to have you turn now
15  to -- it's hour one of investigative techniques for the
16  youth officer training, and it has a Bates stamp 23974
17  at the bottom.
18    A    Got it.
19    Q    And do you know what -- so this unit of
20  presentation has to do -- what does this have to do with
21  -- this have to do with -- oh, SIDS investigations?
22    A    Correct.
23    Q    Okay.  Got it.  That wasn't all
24  investigations; is that right?
25    A    Correct.

Page 105

1    Q    Okay.  Sorry.  Then I'm going to call your
2  attention to the presentation.  Let's see, I think this
3  presentation begins -- it's called investigative
4  techniques.  I think that's right.  And the -- it's on
5  the training related to 87-7, on Jakes 23978.
6    A    23978.  Got it.
7    Q    Okay.  So -- and you reviewed this section in
8  your preparation for today?
9    A    Yes.
10    Q    Okay.  Do you know if this is -- so this is
11  the training of youth officers on 87-7, right?
12    A    This training is tailored specifically to 87-7
13  and its topics, yes.
14    Q    Okay.  Okay.  And so this goes through those
15  requirements about having a -- about essentially
16  custodial interrogations and obtaining statements from
17  suspects, right?
18    A    Yes.
19    Q    Okay.  Okay.  Number 3 says, "The statement
20  must be voluntary and must be shown to be voluntary,"
21  right?
22    A    Yes.
23         MR. YAMIN:  So what is -- what sections did
24  you say?
25         MS. DONNELL:  I'm on middle of 3.  This is



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 30 of 78 PageID #:9084
The Deposition of COMMANDER GLENN WINSTROM, taken on September 9, 2020
106..109

Page 106

1  Jakes 23979 at the top of the --
2  MR. YAMIN: Okay. Thanks. Thank you.
3  BY MS. DONNELL:
4  Q   Okay. And this -- the trainer goes on to say,
5  "It'll be necessary to prove that the suspect was fed,
6  given water, given bathroom privileges, use the
7  telephone, was allowed to sleep, and made an intelligent
8  waiver of his Miranda rights prior to a statement,"
9  right?
10  A   Yes.
11  Q   "It may also be necessary that parent -- that
12  the parent present for any statement or the steps were
13  taken to have the parent or guardian present," right?
14  A   Yes.
15  Q   And then, "When detectives take statements
16  from juvenile offenders they would call upon youth
17  officers to be present and youth officer have to appear
18  in court for motions and trial."
19  A   Yes.
20  Q   Okay. And just to be clear, back when you're
21  talking about 87-7, the provisions about having an adult
22  there, is with respect to the warnings in any
23  questioning, correct?
24  MR. YAMIN: Objection. Mischaracterizes
25  testimony.

Page 107

1  A   The -- can you repeat the provisions about the
2  adult in -- in 87-7?
3  Q   Yeah. I mean, we went over that, we were
4  talking about -- I just was trying to refer that it
5  isn't just talking about -- the 87-79F, isn't just
6  talking about formal written statements, it's talking
7  about having -- making reasonable attempts to have a
8  parent present or an adult present, prior to the --
9  prior to Miranda warnings in any questioning, that's
10  all.
11  MR. YAMIN: Objection. Mischaracterizes
12  testimony.
13  Q   Can you answer it?
14  MR. YAMIN: Or mischaracterizes the evidence.
15  A   It applies to, not just formal written
16  statements, it applies to all custodial interrogations.
17  Q   Thank you. Okay. Okay. And then this
18  training goes on to talk about statements and how they
19  get a statement, an inculpatory statement from a
20  suspect, right?
21  A   It --
22  MR. YAMIN: Objection. Mischaracterizes the
23  --
24  A   I would -- I would say that this is a training
25  on conducting a custodial interrogation.

Page 108

1  MS. DONNELL: Okay. Okay. I'm going to show
2  you now -- I'm going to just share my screen with
3  you -- well, first of all, how is everybody doing?
4  Do we want to take a lunch break or do we want to
5  keep going?
6  MR. YAMIN: We were thinking this might be a
7  good time -- we thought 1:00 would get us three
8  hours in, but it's close to 1:00, so it's up to
9  you. It's up to others.
10  MS. DONNELL: Why don't we take a short break
11  now because this is a good stopping before I turn
12  to the youth officer division manual.
13  MR. YAMIN: Are you changing from a lunch
14  break to a short break or --
15  MS. DONNELL: Oh, no. I'm sorry. We can
16  take a lunch break. I'm saying let's take a break
17  now because we're almost at 1:00. I'm at a good
18  stopping point because I'm going to move to a
19  different document. So since we're close to 1:00,
20  why don't we pause now for a lunch break?
21  MR. YAMIN: Okay. That's what I thought you
22  meant. That's fine. Thanks.
23  COURT REPORTER: We'll go off.
24  (OFF THE RECORD)
25  COURT REPORTER: We're back on the record.

Page 109

1  BY MS. DONNELL:
2  Q   Okay. Commander Winstrom, let's get back at
3  it.
4  A   Okay. Sure.
5  Q   Okay. I'm going to ask you some questions now
6  about Subtopic 1, Subsection B, the duties of youth
7  officers during interrogations of juvenile suspects.
8  What were the duties of youth officers when they were
9  called upon to be present for the interrogation of
10  juvenile suspects -- interviews of juvenile witnesses
11  when they were present?
12  MR. YAMIN: Who -- will you remind me where
13  we are in the documents?
14  MS. DONNELL: I'm just asking him about the
15  topic at the notice so it's just Exhibit 1.
16  MR. YAMIN: Oh, it's a general question?
17  MS. DONNELL: Yeah.
18  MR. YAMIN: I thought you were directing him
19  to a document. Object to the form. You may
20  answer.
21  A   Youth officers, well, when responding to a
22  custodial interrogation of a juvenile would be to ensure
23  their rights are protected and to complete processing
24  once your arrest is complete. So by their rights are
25  protected, I mean, their Miranda rights and their rights



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 31 of 78 PageID #:9085
The Deposition of COMMANDER ERIC WINSTROM, taken on September 9, 2021
110..113

Page 110

1  under the Juvenile Court Act, as well as the
2  requirements of the Juvenile Court Act for example the
3  six-hour rule at the time.
4       BY MS. DONNELL:
5       Q    Okay.  Yes.  I was just going to have you
6  expand upon -- so the two things you identified were:
7  ensure that the rights of the juvenile were protected
8  and then to complete any processing if the juvenile was
9  arrested, right?
10      A    Yes.
11      Q    Did the -- during -- and during the relevant
12 time period, did youth officers have a requirement to
13 document their participation in a custodial
14 interrogation of the juvenile in any respect?
15           MR. YAMIN:  Objection.  Form.
16      A    There is a requirement for documentation, but
17 it's not one placed upon the youth officer.  It would be
18 the investigating detectives' responsibility to -- to
19 document that information.
20      Q    So there were no reports that a youth officer
21 had to prepare when they were called out to an area,
22 where they were present at the area and were present for
23 a juvenile custodial interrogation, there was nothing
24 that youth officer themselves had to do to document
25 their participation?

Page 111

1       A    Well --
2            MR. YAMIN:  Objection to form.  You can
3       answer.
4       A    Okay.  If their entire contribution, say to
5  this is being present for the custodial interrogation,
6  there would be a scenario in which there would not be
7  required documentation on their part, would not be
8  required.  However, following to the logical conclusion
9  that an arrest was made, they're -- they would be
10 responsible for a tremendous amount of paperwork to be
11 completed as far as the processing paperwork to -- to go
12 to court, that -- that would be their role.  So they
13 would not -- they -- they would complete a whole bunch
14 of paperwork.  But as far as the custodial interrogation
15 goes, potentially, nothing to do with the custodial
16 interrogation.
17      Q    So is it accurate to say that the youth
18 officer is required to ensure that the juvenile suspects
19 right to protect I think reading their Miranda rights
20 and their rights into the Juvenile Court Act in the
21 context of the custodial interrogation, that there was
22 no requirement that your officer document that they had
23 done so themselves?
24           MR. YAMIN:  I didn't catch the last words,
25      you said -- docu what?

Page 112

1            MS. DONNELL:  Document it themselves.  That
2       they had done so themselves.
3  BY MS. DONNELL:
4       Q    Do you understand my question?
5       A    I -- I do understand it.
6            MR. YAMIN:  I object.  Asked and answered.
7       You can answer.
8       A    The responsibility to document that would fall
9  not upon the youth officer but on the detective assigned
10 to the case.
11      Q    So the youth officer present for the Miranda
12 warnings doesn't have to document that they observed
13 that the Miranda warnings were provided to the juvenile
14 suspect prior to questioning; is that correct?
15      A    They are not required to do so.  That is
16 correct.
17      Q    And they're not required to document that the
18 suspect had been given food, water, sleep, access to a
19 phone, things like that?
20      A    Correct.
21      Q    And it was the detectives' responsibility to
22 document any reasonable attempts that they had made to
23 contact the parent, relative, or friend to be present.
24 Is that also the detectives' responsibility?
25      A    Correct.

Page 113

1       Q    Okay.  And same question, the detectives were
2  supposed to document then that the juvenile had made a
3  knowing, intelligent, and voluntary waiver of their
4  Miranda rights; is that right?
5       A    It was the detectives' job to document
6  information relative to that topic.  Yes.
7       Q    Thank you.  And the same is true with respect
8  to any of the conditions around that custodial
9  interrogation, such as how long the individual held
10 incommunicado -- the juvenile held incommunicado,
11 whether they had been handcuffed or not, whether they'd
12 been fed, given water, bathroom breaks, and access to a
13 phone.  That all was on the detective to document -- the
14 conditions around the custodial interrogation?
15           MR. YAMIN:  Objection.  Form.  Compound among
16      other things.
17      A    As as much as those things are relevant to the
18 investigation and custodial interrogation, it would be
19 incumbent upon the detective to document that
20 information.
21      Q    Okay.  So one of the things you said in
22 addition to Miranda is that the youth officers were
23 supposed to ensure that the juvenile's rights pursuant
24 to the Juvenile Court Act were are also being protected;
25 is that true?


Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 32 of 78 PageID #:9086
The Deposition of COMMANDER CHRIS PFINGSTON, taken on September 23, 2021
114..117

Page 114

1    A    Yes.
2    Q    Did the youth officer have any requirements to
3    document that the rights of the juvenile as provided in
4    a Juvenile Court Act at the time were being protected in
5    any sort of report?
6         MR. YAMIN:  Objection.  Asked and answered.
7    A    The youth officer did not have that
8    responsibility.
9    Q    Did anybody else have that responsibility?
10   A    If it was necessary and important to document
11   that, it would have been incumbent upon the detective
12   assigned to the investigation.
13   Q    Okay.  So -- and at this time, under the
14   Juvenile Court Act, juveniles were supposed to be not
15   kept in a locked room, if possible, right?  Unless it
16   was necessary.
17   A    During this time period, even for a crime of
18   violence, there was a six-hour limit on how long a
19   juvenile could be kept in, we called a municipal lock-
20   up, we would include in that -- in a police facility, a
21   locked room.  So it would be not that they could not be
22   placed in a locked room, in fact, sometimes it was
23   necessary to be placed in a locked room, but there was a
24   time limit of six hours.
25   Q    And the same would be true for being in

Page 115

1    handcuffs, right?
2         MR. YAMIN:  Objection.  Form.
3    A    I would say being handcuffed to a stationary
4    object would trigger that.  I would suggest that most
5    likely handcuffs, if you're describing individual being
6    handcuffed together, would probably fit that as well,
7    although, you know, we describe -- we would describe it
8    as being handcuffed to a stationary object, I could
9    see how the argument could be made that if individual
10   simply handcuffed to themselves, that -- that also would
11   be considered secured custody for the Juvenile Court
12   Act.
13   Q    And pursuant to the Juvenile Court Act, it was
14   also supposed to be that juveniles were not -- were kept
15   separate from adult detainees as well?
16   A    Juveniles were supposed to be out of sight and
17   sound of adult arrestees or detainees, as you call them,
18   yes.
19   Q    Okay.  What were the additional provisions of
20   the Juvenile Court Act that the youth officers were
21   supposed to ensure other than the ones we've just talked
22   about?
23        MR. YAMIN:  Heather, are you reading from a
24   document?
25        MS. DONNELL:  No.  I'm not.

Page 116

1         MR. YAMIN:  Because if you aren't, I have an
2    objection, which is foundation and form.
3    A    Among the other portions of the Juvenile Court
4    Act which were relevant are simply the processing
5    provisions.  So for example, on -- on a murder charge,
6    it wouldn't be -- really be applicable, but, lower level
7    charge, retail theft or something.  There would be the
8    option for the youth officer by looking at the Juvenile
9    Court Act to see that they're empowered to use a
10   informal or formal station adjust -- adjustment instead
11   of a court referral.  As well as depending on a level of
12   -- of crime and their communication with the point
13   system as they would call it, with juvenile probation,
14   which ran the audio home at the time.  Determine with
15   the rules of the Juvenile Court Act if the arrestee
16   should be placed in secure custody of the Audy Home.  So
17   it's communicating with the Audy Home, it's making the
18   determination of whether the persons can be released to
19   family or a release to the family referred to court,
20   released to the family within admission or without an
21   admission, so the -- all -- those all things are things
22   that are topics that the youth officer wouldn't be
23   knowledgeable about that a non-youth officer wouldn't
24   really quite understand.  And that's the sort of things
25   that -- that they would look to in the Juvenile Court

Page 117

1    Act to guide them.
2    BY MS. DONNELL:
3    Q    If a youth officer who have been called out or
4    call to participate in the custodial interrogation of
5    the juvenile.  During this time frame, were there any
6    requirements and them if they observed or were notified
7    for any of the juveniles' rights being violated that
8    they were tasked with ensuring were protected?
9         MR. YAMIN:  Objection to the form.  Excuse
10   me.  Objection to the form of that question.
11   Q    Did you understand the question, or do you
12   want me to rephrase it?
13   A    Yeah.  That's a great question and one that I
14   had -- I haven't contemplated.  Today, it would be an
15   easy answer because we have a duty to report misconduct
16   written clearly language.  I believe there was a duty to
17   report misconduct even when -- before we had the policy
18   which said so.  There's certainly policy prohibiting
19   maltreatment of individuals which is related to rules
20   and regulations of the police department, which were in
21   place at the time.  As far as a duty to report
22   misconduct, there is -- I'm sure I can get there.
23   That's -- this is a question I didn't anticipate.  I'm
24   connecting the dots here.  Officers have always had a
25   duty to report criminal misconduct.  However, like

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 33 of 78 PageID #:9987
The Deposition of COMMANDER CHRIS WINCKOWSKI, taken on September 1, 2021
118..121

Page 118

1 administrative misconduct, failing to follow department
2 rules, it's -- that's difficult for me to wrap my head
3 around.  I feel that if given a half-hour with the
4 policies in place at the time, I could probably come up
5 with something, but that's a question I did not
6 contemplate and I don't know.
7     Q    Okay.  So it's fair to say at this point, my
8 question was:  If a youth officer observed or was
9 notified that juvenile suspect's rights had been
10 violated in some capacity, you're not aware of anything
11 that required them to document that violation?
12         MR. YAMIN:  Objection.  Form.
13     A    I -- I would have to look at during this time
14 period.  I -- I mean, I'm confident that there is.  I
15 just don't know.  This is such, you know, from 1991, I
16 would have to look into the, uh, orders regarding
17 administrative investigation like conduct with the
18 investigation or other, you know, BIA orders.  So I'm
19 confident that I would find policies in there, but --
20 but these aren't policies that I sought out for the --
21 the prep to this.
22     Q    Oh, sorry.  I didn't mean to interrupt you.
23 Go ahead.
24     A    Had -- just apologizing for myself.  Had I
25 known its -- it was going to take a turn for, you know,

Page 119

1 internal affairs type questioning, I would've become
2 more learned in this -- it's just this is so long ago, I
3 usually know off the top of my head these things and I
4 would have to do some research.
5     Q    I guess, is it fair to say that of policies,
6 procedures, SOPs, and directives you reviewed for
7 preparation to today, you didn't see anything in there
8 directing or training or advising youth officers that
9 they were to document any time they observed another
10 member of the department not complying with the Juvenile
11 Court Act or the policies and procedures related to the
12 interrogations of juveniles?
13     A    No.  But I would be --
14         MR. YAMIN:  Objection.  Form.
15         THE WITNESS:  I'm sorry, sir.
16         MR. YAMIN:  Form.
17     A    Okay.  No.  But I would be -- I would be
18 surprised because that, you know, we don't -- in those
19 types of policies, we don't get that specific to just
20 say this specific conduct is something that needs to be
21 reported.  It would be an overall arching policy like we
22 have today, duty to report, you know, excessive force or
23 duty to report misconduct in general, which -- which we
24 have.  So I wouldn't expect to find it in the places
25 that I looked.  If -- I would expect to find it in the

Page 120

1 grouping of internal affairs and related policies, not
2 here.
3 BY MS. DONNELL:
4     Q    Okay.  But it's fair to say you didn't see
5 anything that the youth officers were directed to say,
6 oh, I am documenting that this juvenile's rights with
7 respect to Miranda or the Juvenile Court Right Act --
8 Juvenile Court Act were compliant with because there was
9 no affirmative reporting requirement?
10         MR. YAMIN:  Objection.  Asked and answered.
11     A    For the youth officer, is that the question?
12     Q    Yeah.
13     A    Okay.  Yeah.  The reporting requirement in
14 those situations are things that it would be incumbent
15 upon the detective investigating in case document.  So
16 the youth officers would not be documenting it.
17     Q    And then similarly, the corollary that I was
18 asking you about, you didn't see anything in what you
19 reviewed and prepared for your testimony today to say
20 that youth officers were trained and required to
21 document where they observed or were notified that one
22 of the juvenile's rights had been violated or not
23 compiled with?
24         MR. YAMIN:  Objection.  Asked and answered.
25     I think it's been a few times now.

Page 121

1     Q    You can answer.
2     A    No.  As I said, I would not expect such a
3 policy to be located where -- in the places that I
4 looked to prepare for this deposition.
5     Q    Okay.  Okay.  I'm going to ask a little bit
6 more specific question.  Now, turning to the youth
7 officers present for a handwritten or court reported
8 statement by a juvenile.  What are the -- you thought,
9 so speaking of that, when -- a youth officer has to be
10 present for a written statement or court reported
11 statement of a juvenile; is that correct?
12     A    There was no policy in place if -- at this
13 time for the requirement of the youth officer until 92-8
14 whatever, I think it's attachment or Exhibit 8 came into
15 play, so the policy was silent on the youth officer.
16 The practice and the training was for such a thing to
17 have a youth officer present.  Yes.
18     Q    And when we looked at -- back at Exhibit 5,
19 and we looked at Exhibit 5 and the training on page
20 23979, it said that the -- that "When detectives take
21 statements from juvenile offenders, we will call upon
22 youth officers to be present, and the youth officer will
23 have to appear in court for motions and trial."
24 Remember that?
25     A    I do remember that.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 34 of 78 PageID #:9088
The Deposition of COMMANDER GLENN EVANS, taken on September 20, 2021
122..125

Page 122

1    Q    And it also says that -- remember in the first
2  part of Exhibit 5, the training on page 23972, it said
3  this is when -- under automatic transfer cases
4  Subsection B, it says "When you're assigned to assist in
5  these cases, you assist the assigned detective, your
6  role's not that of investigator, your presence is
7  required by law.  Your assistance will be helpful on the
8  prosecution of the case," right?
9    A    That is the training that was received.
10   Q    Okay.  And then I think you referred to, was
11 it Exhibit 8, Detective Division.  Then now here you're
12 saying that it then became the special detective
13 division memorandum.  It says that -- let's see.  That
14 they ensure their -- ensure the presence of a youth
15 officer to fulfill the requirements of the Juvenile
16 Court Act, which states that a juvenile taken to custody
17 will be taken to the nearest youth officer without
18 delay, right?
19   A    That's correct.  That's the first appearance
20 in policy of such a requirement.
21   Q    Okay.  Okay.  I'm going to -- I don't think
22 that you have this printed for you in front of you.  Do
23 you -- let's see, have the youth division manual in
24 front of you?
25   A    Yes.  I do.

Page 123

1    Q    You have -- is it as  Exhibit 4?
2              (EXHIBIT 4 MARKED FOR IDENTIFICATION)
3    A    Exhibit 4.
4    Q    Yeah.  Marked as Exhibit 4?
5    A    Yes
6    Q    Okay.  Great.  So it's probably easier for you
7  to just look at it, I think; right?
8    A    Yes.
9    Q    Okay.  Let's do that and then I'll look at it
10 on my screen instead.  Okay.  Okay.  So if you look at -
11 - and so Exhibit 4 for the record, is City_Jakes1009
12 executed through 1247 and is a Chicago Police
13 Department's manual of procedure for the youth division.
14 Is that -- and it was revised in 1991, correct?
15   A    Yes.
16   Q    Okay.  And I'm going to have you turn your
17 attention.  Let's talk first about -- maybe turn to the
18 processing of juvenile offenders or victims.  And in
19 Section 3 1 and it's page 112 of the manual.
20        MR. YAMIN:  What's the Bates stamp number?
21        MS. DONNELL:  Sure.  The Bates stamp is
22 City_Jakes1119.
23   A    Okay.
24 BY MS. DONNELL:
25   Q    You with me?

Page 124

1    A    Yes.
2    Q    Okay.  And here, this is in -- you would agree
3  that this manual is the SOP that was operative during
4  the time period or part as of May 1?
5    A    Yes.
6    Q    And it looks like it was operative as of
7  January 1991, correct?  But if you look at the top of
8  page -- that we're looking at, if you look at the top of
9  the section 1119, you see a manual of procedure youth
10 division then it says 1-91?
11   A    I agree.
12   Q    And that's how CPD refers to an effective date
13 or month, correct?
14   A    In this case, I believe -- I believe that is,
15 but that's not always how it is if this is a smaller
16 unit level directive.  So the author of this that --
17 that was a good way to do it, which is fine.
18   Q    Okay.  So you'll agree with me for purposes of
19 this SOP, January 1991 could be the effective date?
20   A    I agree.
21   Q    All right.  Cool.  All right.  So this section
22 around is the processing of the juvenile offenders or
23 victims, right?
24   A    Yes.
25   Q    And this particular section deals with

Page 125

1  juvenile confinement, fingerprints, photographs, and
2  arrest information?
3    A    Yes.
4    Q    And the authority is the chapter 37 8017805-7?
5    A    I see that.  I don't know what it's chapter 37
6  of though.
7    Q    It's the General Order or the General
8  Assembly.
9    A    Okay.
10   Q    Okay.  So it says under Subsection 1 with
11 respect to confinement, "No minor under 16 years of age
12 may be confined in a jail or place ordinarily used for
13 the confinement of prisoners in a police station,"
14 right?
15   A    Yes.
16   Q    And that "Minors under 17 years of age must be
17 kept separate from the confined adults and may not at
18 any time be kept in the same cell room or yard with
19 adults," right?
20   A    Yes.
21   Q    Okay.
22        MR. YAMIN:  Well, you didn't read the whole
23 section.
24   Q    "confined pursuant to the criminal law."
25 Okay.  And then Subsection B says that, "No law



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 35 of 78 PageID #:9089
The Deposition of COMMANDER ERIC WINEGARD, taken on September 8, 2021

126..129

Page 126

1  enforcement officer, other person or agency may
2  knowingly transmit to the Department of Corrections, the
3  adult division or department of law enforcement for
4  Federal Bureau of Investigation, any fingerprint
5  photograph relating to a minor," right?  It's taken in
6  custody before their 17th birthday, right?
7       A    With exceptions.
8       Q    With exceptions.  Right.  Okay.  And then it
9  says then Subsection 3, "Records of law enforcement
10 officers concerning minors under 17 years of age must
11 maintained separate from the records of arrests and may
12 not be open to the public inspection," right?
13      A    Again, with exceptions, yes.
14           MR. YAMIN:  You're not -- just noting that
15 all of the texts is being read.
16      Q    Yes.  I'm sorry.  Kind of going a little fast.
17 Okay.  So then let's go down to confinement and the
18 authority here is chapter 37, 8057-2.
19      A    Yes.
20      Q    Okay.  And it defines "Confinement in a county
21 jail or municipal lock-up.  No minor shall be detained
22 in a county jail or municipal lock-up for more than six
23 hours," right?
24      A    That is correct.
25      Q    And that included a police station or

Page 127

1  detective area, right?
2       A    Well, that would be up to interpretation,
3  municipal lockup would refer to the actual lock-up in
4  the police station however we interpreted the six hours
5  to be a -- to start running when they're in a locked
6  room to even if it's not part of the municipal lock-up.
7  So it -- certainly an argument can be made that if
8  you're in a lock room in a detective station, detective
9  office.  That's not a municipal lock-up per this,
10 however, we always interpreted that it is.  So, we -- my
11 policy would include this.  Six -- six hours would be
12 included, six hours in a detective room, you know,
13 locked inside would count.
14      Q    Yeah.  And, you know, earlier it said that
15 those that are under 16, may not be confined at the jail
16 or a place ordinarily used for the confinement of
17 prisoners in a police station at all, right?
18      A    I see that.
19      Q    And how was that interpreted at this time with
20 respect to minors that were 16 years and younger?
21      A    No minor under 16 years of age may be confined
22 in jail or places ordinarily used for confinement
23 prisoners and the police station.  Again, that would be
24 the lock -- so the actual lock-up of the police station.
25      Q    So during this time period, minors never went

Page 128

1  into the lock-up; is that right?  Between 16 and under -
2  - ages 16 and under.
3       A    Okay.  So it's not that they did not go, but
4  they would not be confined here.  They would be escorted
5  there once adult prisoners were separated for the
6  purposes of fingerprinting.
7       Q    But were they held there during this time
8  period, like could they've been held in the lock-up -- I
9  mean, confined in the lock-up other than fingerprinting?
10      A    No.  We're just stay would be escorted by a
11 youth officer or a detective or a police officer.  Just
12 solely for the purpose of fingerprinting and
13 photographing, and then escorted out.  And they had to
14 be separated by sight and sound with adult arrestees.
15      Q    Okay.  And then up at the next page, Section
16 3-2 there is -- it continues on defining that the period
17 of detention become once the minors then placed in a
18 locked room or sell or handcuffed to a stationary object
19 and a building housing in county jail and municipal.
20 lock up, right?
21      A    I answered that, yes.
22      Q    And you earlier said that, you know, at this
23 time, even a juvenile being handcuffed to themselves
24 would be -- was interpreted as meaning to be -- as being
25 locked up.

Page 129

1       A    I think a strong argument could be made for
2  that.  I would probably argue it that it wouldn't, but
3  it doesn't -- any letter of this it doesn't fit.  But
4  yeah, I would have -- would have a hard time saying --
5  saying otherwise.
6       Q    Okay.  Then it says in Subsection 2, again,
7  this is pursuant to the act that "The minor that -- if
8  so confined shall be under periodic supervision and
9  shall not be permitted to come into or remain in contact
10 with adults in custody in the building," right?
11      A    That is correct.
12      Q    And then there is also the -- this appears at
13 the time when the Juvenile Court Act said that "Upon
14 placement and secure custody in a jail or lock-up, a
15 minor should be informed of the purpose of the detention
16 and the time that is expected to last, and the fact that
17 it cannot exceed six hours," right?
18      A    Yes.
19      Q    So was that interpreted in this time to mean
20 that a juvenile couldn't be held -- couldn't be confined
21 in a police station or detective for six hours -- for
22 more than six hours?
23      A    I -- it's probably my computer, I glitched out
24 for a second.
25      Q    That's fine.  I'll rephrase that.  Thanks for



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 36 of 78 PageID #:9090
The Deposition of COMMANDER ERIK WINSTROM, taken on September 27, 2017
130..133

Page 130

1  letting me know.  How is that -- this requirement
2  interpreted during this time frame with respect to
3  juveniles who were present in a police district or a
4  detective division?
5       MR. YAMIN:  Objection --
6    A   No.
7       MR. YAMIN:  -- excuse me.  Calls for
8  speculation.
9    A   Well, during this time -- time frame, even if
10  the juvenile is going to be held in secure custody, they
11  would be left with a -- oh, wait -- keep this to it.
12  That's in a book.  During this time frame, juveniles
13  would not be placed in a lock-up or jail however you
14  want to call it, even if they were going to be entered
15  into Audy Home, secured detention, our policy was to,
16  you know, in the case of patrol to leave them in the
17  custody of the desk sergeant or in the detectives
18  eventually in the custody of youth officer, and that
19  individual would stay with them, not in the lock-up, but
20  in some other area of the building waiting for their
21  transportation to secure custody.
22    Q   How about -- how was it interpreted with
23  regard to juveniles who were being interrogated at the
24  detective area could -- was it -- how was that -- this
25  provision interpreted?

Page 131

1    A   Well, I don't think number 3 is on point with
2  that.  I think that talks about something else.  But if
3  you're just asking about the -- the detective area, like
4  somebody in a locked room, that was --
5    Q   Yeah.
6    A   -- that would still be a six-hour limit.
7    Q   I guess that was my question.  Was the
8  six-hour limit also applicable to detectives who had
9  juveniles at the area in a locked interrogation room?
10    A   Yes.
11    Q   So the detectives were -- the policy of the
12  Chicago Police Department was that detectives couldn't
13  hold the juvenile suspect for more than six hours; is
14  that right?
15    A   Well, not in secure custody for more than six
16  hours.  They -- you could, you know, hold them by the
17  precedents or hold them by, we would say babysitting,
18  it's silly, but when you would leave them with the desk
19  sergeant, it's literally, you know, "Sit there and don't
20  move," so -- but six hours is for secured custody.  Yes.
21    Q   But how about -- with that -- I mean, that
22  would be applicable for -- the six hours will be
23  applicable for custodial interrogation, you know,
24  somebody that's being held incommunicado on
25  interrogation room too, correct?  A juvenile.

Page 132

1    A   So if it's a six-hour custodial interrogation,
2  just nature of it being custodial interrogation, they
3  would not feel free to leave.  And it would likely fit
4  the bill of secured custody.  I would say it would
5  depend on that, you know, again, at case-by-case
6  situation, I'd have to hear all the facts, but the way
7  you're describing it sounds like secured custody.
8    Q   So if you had a 15 or 16-year-old that's in an
9  interrogation room who doesn't have contact with the
10  outside world and the interrogators -- detectives are
11  coming in and out and there's no other adult present,
12  that would comply -- that would fit with this concept of
13  a -- being in custody because they're not free to leave,
14  right?
15       MR. YAMIN:  Object to the form of the
16  question.
17    A   It could be --
18       MR. YAMIN:  And incomplete hypothetical.
19  Sorry.
20    A   It could be.  There's -- there's a lot going
21  on there, you know, not necessarily.  There's a whole
22  bunch of factors to weigh and I would have to look at
23  the specific case itself.
24    Q   I guess the point is: Is that the -- it was
25  the law at this time that juveniles couldn't be kept in

Page 133

1  custody for more than six hours, correct?
2    A   No.  It is in secured custody.
3    Q   In secured custody.  Okay.
4    A   Go ahead.
5    Q   I'm sorry.  Go ahead.  I interrupted you.
6    A   I don't know what I was going to say.  Sorry.
7  Lost my train of thought.
8    Q   You were saying that the definition was
9  secured custody.  Basically juveniles couldn't be kept
10  in secure custody for more than six hours.
11    A   Right.
12    Q   Okay.  And then Subsection 3 of the law is:
13  "Upon placement in secure custody in a jail or lock-up,
14  the minor should be informed of the purpose of the
15  detention and the time it's expected to last and the
16  fact that it cannot exceed six hours," right?
17    A   I see that.
18    Q   Okay.  And then it's required a log be kept
19  "which shows the offense which is the basis for the
20  detention, the reasons and circumstances for the
21  detention to detain, and the length of time the minor
22  was in detention.  The daily log of juveniles taken into
23  custody, Chicago Police CPD 24.518 will be used for this
24  purpose, and the Youth Officer is responsible for
25  entering the disposition on this log upon concluding the

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 37 of 78 PageID #:9091
The Deposition of COMMANDER GREGG WINDFROM, taken on September 1, 2021
134..137

Page 134

1  case," right?
2      A   I see that.
3      Q   So that was the log requirement that you were
4  speaking of earlier.
5      A   Yes.  So the youth officer would have the
6  final either walk the kid to his mom out the door or he
7  could offer transportation home or whatever.  The youth
8  officer would be responsible to -- to the last person to
9  see the juvenile out of the building and therefore would
10  -- would mark the -- the end of the log at the desk, yes
11  -- the final disposition.
12      Q   Okay.  And it says the violation of the six-
13  hour time limit may not in and of itself -- in of itself
14  render the inadmissible evidence obtained as result of
15  the violation of the six-hour time limit, right?
16      A   I see that.
17      Q   And then "no minor of 16 -- no minor under 16
18  years of age maybe confined in a jail or place
19  ordinarily used for the confinement of prisoners in a
20  police station."
21      A   I see that.
22      Q   Okay.
23          MR. YAMIN:  So there's more to that
24  subsection that was not read.
25          MS. DONNELL:  Yeah.  "Minors 17 years of age

Page 135

1  shall be kept separate from those confined adults
2  and may not at any time be kept in the same cell
3  room yard with adults confined pursuant to the
4  law."  Okay.
5          MR. YAMIN:  Are you -- are you just reading
6  it for my benefit or --
7          MS. DONNELL:  Yeah.  I was just reading it
8  for your benefit because you objected.
9          MR. YAMIN:  So if the witness would confirm?
10          THE WITNESS:  Confirmed.
11  BY MS. DONNELL:
12      Q   What is a juvenile minute sheet?
13      A   Are you reading it somewhere?  I can --
14      Q   No.  I'm just asking about it.
15      A   Juvenile minute sheet is like a -- an adult
16  101 sheet, so it's a document that youth officers would
17  complete a one-page document summarizing just very basic
18  facts about the crime and giving basic information about
19  the crime.  And it's used at court by the state
20  attorney's office as just a way to glance down and see
21  what the case is about.  So it's just a piece of paper
22  that's used as part of the processing that if -- if the
23  juvenile goes to court.
24          MR. YAMIN:  I need to interrupt for a second.
25  I'm having the same issues with audio.  I think I

Page 136

1  understand why here, Commander because I think
2  you're trying to read something that's to the side
3  and --
4          THE WITNESS:  I will be right in front of it
5  from now on.  I just thought of it -- I've noticed
6  sometimes when Heather goes off to the side, I have
7  the same problem with her.  So I think --
8          MR. YAMIN:  Yeah.
9          MS. DONNELL:  All right.
10          THE WITNESS:  I'll hold this.
11  BY MS. DONNELL:
12      Q   Okay.  We'll both do better.  Thanks, George.
13  And were there any requirements for a youth officer to
14  fill out a minute sheet -- a juvenile minute sheet with
15  respect to custodial interrogations that they
16  participated in?
17          MR. YAMIN:  Objection to form.
18      A   Well, the juvenile minute sheet would likely
19  be completed by the youth officer if the individual is
20  going to court and it could contain some -- some
21  information on there like if the -- the youth, you know,
22  admitted to XYZ or something, but that's part of the
23  processing paperwork.  So yeah, it also, you know, if
24  the juvenile is not going to court or if the juvenile
25  was going to get a station adjustment or not getting

Page 137

1  charged at all, then there would be no juvenile minute
2  sheet.
3      Q   Got it.  Okay.  I'm going to have you turn to,
4  I think it's -- hold on.  Let me see.  I'm going to go,
5  same Exhibit 4, the youth division operating manual.  If
6  you go to -- I think it -- let me see.  It's got a
7  section 436.  It has Bates City_Jakes1236.  And it's
8  special processing for processing juveniles as adults,
9  referring to chapter 37 section 805-4(6)(a) and (7)(a).
10  Do you see that?
11      A   Yes.
12      Q   Okay.  Let's see.  So you said this pertains -
13  - let's see.  Okay.  So this pertains to youths that are
14  being processed as adults, right?
15      A   Yes.
16      Q   Okay.  And some of that is what we just --
17  we've gone over with some of the general orders, but
18  this was the SOP training manual with respect to it,
19  right?
20      A   This is not a training manual.  This is
21  actually the --
22      Q   I'm sorry.  Thank you.  This is the manual
23  procedure -- the standard operating procedure?
24      A   For youth officers, yes.
25      Q   Okay.  Okay.  So let's go to the next page

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 38 of 78 PageID #:9092
The Deposition of COMMANDER ERICK WINSTROM, taken on September 8, 2022
138..141

Page 138

1  under responsibilities of the arresting officers.  I
2  think this is page 4-37 City_Jakes1237.  Okay.  So here
3  it says, when -- so we're talking about youth that are
4  being charged with certain offenses and being processed
5  as adults, right?
6         MR. YAMIN:  Which Bates stamp, page is that,
7  Heather?
8         MS. DONNELL:  Sure.  It's City_Jakes1237.
9         MR. YAMIN:  Okay.  Thanks.
10  BY MS. DONNELL:
11     Q     Are you there with me, Commander?
12     A     Yes.
13     Q     Okay.  So we're talking about youth being
14  charged with certain -- processed as adults for certain
15  serious felonies including murder, right?
16     A     Yes.
17     Q     Okay.  And I want to go into the
18  responsibilities of the arresting officers, right?
19     A     Yes.
20     Q     So the arresting officers, they "complete a
21  juvenile field arrest report, and other pertinent
22  reports for each arrestee they take into custody,"
23  right?
24     A     Yes.
25     Q     And they're supposed to "immediately notify

Page 139

1  the appropriate youth division area and request the
2  assignment of a youth officer complete the initial
3  processing of the arrestee."
4     A     Yes.
5     Q     And they "immediately notify the appropriate
6  detective division area and violent crime unit
7  responsible for follow-up investigation."
8         MR. YAMIN:  Well, there's a little bit more
9     to that but --
10     A     "Of the offenses enumerated in item 1-A-1 of
11  this directive," yes.
12     Q     Okay.  And then that's just to obtain an RD
13  number, right?
14     A     Yes.  And that's only for adult narcotics
15  offenses.
16     Q     I see.  Sorry.  Okay.  Okay.  So then there's
17  some responsibilities for the youth division personnel,
18  right?
19     A     Yes.
20     Q     Okay.  And they have to request a name checkup
21  of the arrestee.  And if there's a previous juvenile
22  record, they provide that to assistant state's attorney
23  assigned to the felony review unit; is that right?
24     A     That is correct.
25     Q     And they request that a copy of the juvenile

Page 140

1  record summary be forwarded to the identification
2  section, right?
3     A     Yes.
4     Q     And that there's other -- and if the arrestee
5  has no juvenile record, then a blank juvenile record
6  summary containing only the arrestee's name will be
7  forwarded to the identification section, right?
8     A     Yes.
9     Q     Let's see.  I'm going to go to Subsection B.
10  They're going to "ascertain if fingerprints are
11  available in the juvenile record file," right?
12     A     Yes.
13     Q     Okay.  Then they "transfer the information
14  contained on the juvenile filled arrest report in all
15  cases in which arrestee is to be processed as an adult,"
16  right?
17     A     Yes.
18     Q     And then they're supposed to "maintain custody
19  of the arrestee pending approval of the felony charges
20  by the assistant state's attorney assigned to the felony
21  review unit," right?
22     A     Yes.
23     Q     So they youth officer is supposed to be --
24  maintain the custody of the juvenile arrestee, correct?
25     A     Yes.

Page 141

1         MR. YAMIN:  With some qualifications.
2     A     With qualifications, that is true.
3     Q     Pending approval of the felony charges.  So
4  this is before the charges are approved, right?
5     A     Well, they wouldn't necessarily release a
6  juvenile after the approval of felony charges.  Their
7  job wouldn't be done -- completed yet.
8     Q     Got it.  But at least before charges are
9  pending, they're supposed to have custody of the
10  arrestee.
11     A     Yes.  That's correct.  While they're doing the
12  processing.  Absolutely.
13     Q     Okay.  Then there's detective division
14  personnel requirements, right?
15     A     Yes.
16     Q     And they "take custody of the arrestee from
17  the youth officer after charges have been improved by
18  the assistant state's attorney assigned to the felony
19  review unit," right?
20     A     Correct.
21     Q     And then detective division personnel are
22  supposed to "complete the necessary processing of the
23  arrestee in conjunction with the follow-up investigation
24  including criminal complaints, felony minute sheets,
25  supplemental reports, and any other report as required,"



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 39 of 78 PageID #:9093
The Deposition of COMMANDER ERIC WINSTROM, taken on September 9, 2021
142..145

Page 142

1  right?

2      A    Correct.

3      Q    And then the detective division is supposed to
4  "contact communication operations section and request a
5  squadrol to transfer the arrestee to the appropriate
6  designated lock-up listed below," right?

7      A    Correct.

8      Q    And then there are certain areas provided,
9  right?

10     A    Correct.

11     Q    Okay. I'm going to have you take a look --
12  thank you. That's it for now. I'm going to have you
13  take a look at  Exhibit 6. Do you have Exhibit 6
14  printed out for you? It's the examination study cards
15  for the youth division. Sorry. No. I'm not -- sorry.
16  Through the -- I'm sorry. Yeah. Pre-service youth
17  officer. Do you have that? If not, I'll show it to
18  you.

19            (EXHIBIT 6 MARKED FOR IDENTIFICATION)

20            MR. YAMIN: We have it.

21     Q    You do. Okay, great. Okay. So I'm going to
22  have you look at Exhibit 6. And for the record, Exhibit
23  6 is Bates stamped City_Jakes23996 consecutive through
24  24024. And I was going to have you look at the study
25  card that's on the top of Bates 24014. Just let me know

Page 143

1  when you're there, Commander.

2      A    Here.

3      Q    Okay. And that study card says -- the
4  question is, "How long can a juvenile be placed in a
5  secured (locked) place?" And the answer is six hours,
6  right?

7      A    Correct.

8      Q    So at this time, thinking about the time code
9  that a secured lock -- the six-hour time limit for
10  holding juveniles in a secured custody was six hours
11  generally, right?

12     A    Correct.

13     Q    Okay. And so that would include a detective
14  area, right?

15     A    It would.

16     Q    Okay. Oh, you know -- okay. So, I'm going to
17  -- okay, I'm not sure that -- and -- I -- forgive me if
18  you did say this, but when a youth officer is present
19  for a juvenile's court reported or written statement, do
20  they have any requirements with respect to their
21  presence at those court reported or written statements
22  of a juvenile?

23            MR. YAMIN: Objection. Form.

24     A    Their requirement was to simply ensure that
25  the rights of the juvenile are protected.

Page 144

1      Q    Okay. Just -- I'm sorry. You said no
2  reporting requirements for the actual statement being
3  taken; is that right?

4            MR. YAMIN: Objection. Form.

5      A    Correct.

6      Q    Okay. Thank you. And did they have to --
7  were there any logs or any activity sheets where they
8  were supposed to document that they were present for a
9  juvenile's court reported statement or written
10  statement?

11     A    That documentation -- the documentation of the
12  incident would be the responsibility of the detective,
13  as far as -- as far as a -- like a job log. During this
14  period of time when investigators were assigned to
15  certain -- to a field job, there would have likely been
16  a -- a log in the sergeant's office, just this, you
17  know, Eric Winstrom is headed to Area 5, or whatever.
18  But that would be, yeah, just to keep track of who's
19  next up for -- for an assignment.

20     Q    Okay. Thank you.

21     A    Welcome.

22     Q    Okay. Commander Winstrom, are you -- did you
23  review any of the general assembly's juvenile court acts
24  that were -- well strike that. Did you for your
25  deposition today, raised you the juvenile Illinois

Page 145

1  Juvenile Court Act that was affective in this relevant
2  time period?

3      A    I believe I looked at a -- a portion of it
4  which was.

5      Q    Okay. What portion did you look at?

6      A    The portion relevant to like the wording of --
7  bringing a juvenile without unnecessary delay to, I
8  think we call it a juvenile police officer in the Act.
9  I didn't read the whole Act, but I just wondered what
10  the -- what the language looked like at the time.

11     Q    And in the juvenile -- with respect to that
12  part of Juvenile Court Act, what was the language that
13  the statute required with respect to the juvenile being
14  brought to a juvenile police officer without --

15     A    Without unnecessary delay, it was --

16     Q    Yes.

17     A    It was just as -- because I saw that memo from
18  Chief Stibich and the last point in the memo was to
19  comply with the Juvenile Court Act, so I just wanted to
20  see if that's in fact what it said and that's what it
21  said. It said without unnecessary delay to -- I think
22  they call it a juvenile police officer.

23     Q    Okay. And so you would agree with me that
24  part of -- is it Captain Stibich?

25     A    He was chief when he wrote that memo.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 40 of 78 PageID #:9094
The Deposition of COMMANDER KRISS WINGROW, taken on September 8, 2022
146..149

Page 146

```
 1      Q    Chief when he wrote the memo.  That provision
 2   of the Juvenile Court Act was in effect during the
 3   relevant time period here, correct?
 4      A    Yes.
 5      Q    Okay.  So it wasn't a new development as of
 6   the date of who's directed and actually had been part of
 7   the Juvenile Court Act prior to that.  And part of CPD's
 8   policies, practices, and training as a result, correct?
 9           MR. YAMIN:  Objection.  Form.
10      A    I'll agree to everything except for the policy
11   part.  It was in the practices and training, yes.
12      Q    It was certainly required under Illinois law?
13      A    Correct.
14      Q    Okay.  And so with respect to Exhibit 8, that
15   detectives who interrogate juveniles at Subsection C,
16   ensure that the presence of a youth officer to fulfill
17   the requirements the Juvenile Court act which states
18   that a juvenile taken into custody will be taken to the
19   nearest youth officer without delay.  You'd agree with
20   me that that part of Illinois law was in place during
21   the entire relevant time period of which you're
22   testifying today, correct?
23      A    Correct.
24      Q    Okay.  And the same is true, with respect to
25   the provision that, parents needed to be immediately
```

Page 147

```
 1   notified if a juvenile was taken into custody that have
 2   been part of a Juvenile Court Act since 1967 or
 3   something to that effect, right?
 4           MR. YAMIN:  Objection.  Foundation.  Form.
 5      A    I don't know the history of it.  I don't think
 6   it's exactly worded the way that you worded it.  I would
 7   go with the wording that's in our policy
 8      Q    And we didn't have a policy meeting of 78-33,
 9   which was Section 3 to your deposition.
10      A    Oh, I was thinking about the that was seeing
11   the wording in 87-7.
12      Q    87-7.  Okay.
13      A    Juvenile -- it will still be an interrogation.
14   So it's a little more limited than what you're asking
15   me.
16      Q    Okay.  Okay.  I'm going to turn now to section
17   -- topic 1C.
18      A    Where is it?
19      Q    It's from the amended notice the training
20   provided to the -- these detectives.
21      A    On 87-7?
22      Q    Yes.
23      A    Sure.
24      Q    Well, first of all, were detectives trained on
25   the General Order 87-7?
```

Page 148

```
 1           MR. YAMIN:  Objection.  That's asked and
 2   answered.
 3      A    Yes.
 4      Q    Okay.  And they were trained in their -- in
 5   service before they became -- when they first were
 6   promoted to detectives; is that right?
 7           MR. YAMIN:  Objection.  Somewhat misstates
 8   the testimony.
 9      Q    All right.  Well, you can clarify when -- how
10   were detectives trained on General Order 87-7?
11      A    Detectives were hired to the police department
12   after the --
13           MR. YAMIN:  Excuse me.  Maybe it's just me.
14   I'm having trouble picking up the audio.  And my
15   concern is, well not -- not just that I hear, but
16   that it will be transcribed.  Is that going to be
17   an issue, Bethany, do you know or --
18           COURT REPORTER:  No.  Everything has been
19   fine, but you beat me to it.  This one he did kind
20   of sound muffled to me.
21           MR. YAMIN:  Okay.  Generally, though, you
22   think it's -- we have an accurate -- that has not
23   been an issue for us?
24           COURT REPORTER:  It's not been an issue for
25   me, no.
```

Page 149

```
 1           MR. YAMIN:  Well, you're the one that would
 2   know.  So thanks, I appreciate that.
 3           COURT REPORTER:  No problem
 4           MR. YAMIN:  Okay.
 5           THE WITNESS:  Okay.
 6           MR. YAMIN:  Sorry to be a --
 7           THE WITNESS:  I will answer towards the mic.
 8           MR. YAMIN:  Thanks.
 9      A    Okay.  Detectives who were hired by the police
10   department after the General Order came into play would
11   have been -- I mean, came into play -- after the General
12   Order would have come into effect, would have been
13   provided a copy of the general order and they would have
14   received short training on the issues in the General
15   Order in their police academy training.  If they were
16   police officers after prior -- prior to it coming into
17   effects when the order was issued, they would have
18   received it.  At this point in time, everything was on
19   paper, so it would have been either mailed or faxed to
20   the -- all the units in 1987 for distribution to the
21   officers and for the review during roll call training.
22   If they made detective prior to it coming into effect,
23   they would've also similarly been handed it at detective
24   roll call training and reviewed by the supervisors.  If
25   they made detective after it came into effect, it was a
```

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

**502.589.2273 Phone**
**502.584.0119 Fax**
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 41 of 78 PageID #:9095
The Deposition of COMMANDER ERIK WINSTROM, taken on September 1, 2021
150..153

Page 150

1  subject of specific training on the order 87-7.  And
2  then as well as through their experience in the area,
3  just by doing their job, they would have been trained on
4  it, interacting with their supervisors and the senior
5  detectives and other colleagues.
6  BY MS. DONNELL:
7       Q    Okay.  And you would agree with me to the
8  extent that 87-7 is the same as the prior order it
9  receded, which was General Order 82-3, then those
10  detectives who had been promoted prior to the effective
11  date of 87-7, would've been trained on the previous
12  order, right?
13      A    They would've been trained on the previous
14  order, and then they would have been supplied 87-7 in
15  their workplace when it would have come into effect as
16  well.
17      Q    Okay.  Great.  Okay.  Did you review the
18  revisions to 87-7 that was number 87-7A, that was
19  Interrogations: Field and Custodial -- it's the last
20  page of Exhibit 2 that I provided to you.
21      A    I read it once.
22      Q    Okay.  And so this is an amendment to 87-7
23  effective December 22, 1998; is that right?
24           MR. YAMIN:  Objection to the form.
25      A    Yes.

Page 151

1       Q    Okay.  And this was a revision that "informs
2  department members of the requirement to make all
3  reasonable efforts to have a parent or legal guardian
4  present during the interview of a juvenile who is 12
5  years of age or younger;" is that right?
6           MR. YAMIN:  Well, again, the problem when not
7      all the language is read --
8           MS. DONNELL:  Sure.
9           MR. YAMIN:  -- is read -- it's --
10           MS. DONNELL:  Sure.  That's fine.
11           MR. YAMIN:  -- happening a way that's a
12      problem.
13  BY MS. DONNELL:
14       Q    Sure.  That's fine.  Well, maybe you can just
15  say, Commander, what was the purpose of this revision?
16           MR. YAMIN:  Objection.  Form.
17      A    This was -- the purpose of this res --
18  revision was to have enhanced requirements for sworn
19  personnel to contact a parent or legal guardian of
20  offenders 12 or younger for felony arrests.
21           MR. YAMIN:  Before the next question, I just
22      want to note that the document -- excuse me, more
23      specific, Exhibit 2, the final page of the Bates
24      stamped City_Jakes00926 is outside the time period
25      agreed on for this deposition.

Page 152

1           MS. DONNELL:  Okay.  Thanks, George.  Okay.
2  I am going to mark another exhibit.  Am I on
3  Exhibit 10?
4           (EXHIBIT 10 MARKED FOR IDENTIFICATION)
5           COURT REPORTER:  Yes.  Exhibit 9 was our last
6  exhibit.
7           MS. DONNELL:  Okay.  Thank you.  And
8  actually, George, you don't have this one.  If you
9  want me to take a pause, we could take a five-
10  minute break and I can e-mail this one to you or I
11  can just show it on my screen.
12           MR. YAMIN:  What is it?
13           MS. DONNELL:  I'm going to show the Juvenile
14  Court Act of 1998 or '87.  Sorry.  Do you want me
15  to take a pause and e-mail it to you?
16           MR. YAMIN:  You can e-mail me a link.  How do
17  you have it?
18           MS. DONNELL:  I have it just as a PDF.
19           MR. YAMIN:  How long is it?  I mean, roughly.
20           MS. DONNELL:  Let me see.  It looks like the
21  printer is showing like two pages.
22           MR. YAMIN:  I'm sorry.  How many?
23           MS. DONNELL:  Two.  I'm just doing -- I'm
24  just showing 87.  I mean, sorry.  It's 805-6, the
25  duty of an officer.  It's just two pages.  So maybe

Page 153

1      I can proceed and then you can -- I can send to
2      you.
3           MR. YAMIN:  Yeah.  Let's do that.
4  BY MS. DONNELL:
5       Q    Okay.  Let's do that.  Okay.  Just one second.
6  I'm going to mark as Exhibit 10.  And this is -- Exhibit
7  10 is the Illinois statutes annotated 1988, section 805-
8  6 and -- from the Juvenile Court Act of 1987, chapter 37
9  relating to the delinquent minors.  Okay.  So and I'm
10  just going to see if this refreshes your recollection of
11  what year you referred to, Commander, in preparation for
12  your deposition today with respect to that -- the
13  requirement that a juvenile be turned over to a juvenile
14  -- the nearest juvenile police officer without
15  unnecessary delay.  So I'm going to --
16           MR. YAMIN:  Could you -- excuse me.  Could
17      you zoom in a little -- so I can't see the whole --
18           MS. DONNELL:  Yeah.  I certainly can.  You
19      tell me if you can -- this is better, George, and
20      also for you, Commander Winstrom.
21           MR. YAMIN:  Okay.  If there's still some
22      block -- some of the text is blocked.
23           MS. DONNELL:  So you did see --
24           MR. YAMIN:  I don't how to do with that.
25      That's just -- that's fine for me.  How about you,

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 42 of 78 PageID #:9096
The Deposition of COMMANDER ERIC WIKSTROM, taken on September 9, 2019
154..157

Page 154

1    Commander?
2         THE WITNESS:  Good.
3         MR. YAMIN:  And others?  Okay.  Thanks.
4    BY MS. DONNELL:
5    Q    Okay.  So was just refreshing -- using this to
6    refresh your recollection of the question of that
7    Juvenile Court Act that was in place, you know, as of
8    the time of -- the time period relevant for this
9    deposition.  And the requirement that the law required
10   that when law enforcement officer takes a minor into
11   custody without a warrant shall, if the minor is not
12   released, immediately take a reasonable attempt to
13   notify the parent or the person who would be responsible
14   for the minor's care or the person with whom the in
15   minor resides when the minor has been taken into
16   custody, where the minors being held, and the law
17   enforcement officer shall, without unnecessary delay,
18   take the minor to the nearest juvenile police officer
19   designated for such purposes in the county of venue for
20   shall surrender than minor to a juvenile police officer
21   in the city or village where the officer -- offense is
22   alleged to have been committed.  Do you see that?
23   A    I am refreshed.
24   Q    Okay.  And so is that what you were referring
25   to when you said you wanted to confirm that what you

Page 155

1    read in Chief Stibich, his memo was actually part of law
2    at the time.  You know, sorry -- at the time relevant to
3    your testimony in this case?
4    A    Yes.
5    Q    Okay.  And that -- what we've just read here,
6    that was incorporated in some of the youth division
7    training manuals we read where it said the youth officer
8    was required to be present pursuant to the law, right?
9         MR. YAMIN:  Objection.  Form.
10   A    That is correct.
11   Q    Okay.  I think this was one of you are reading
12   in the youth detective training manual Exhibit 5 on that
13   page 2.  It said here when it was per the transfer
14   cases, it says "your presence is required by law, and
15   your systems will be helpful in the prosecution of this
16   case," right?
17   A    I didn't -- can you say that again?  This is
18   Exhibit 5, you said?
19   Q    Yeah.  Exhibit 5 number where we were reading
20   in that training?
21   A    All right.  Yes.  Right.  Yeah.  Yeah.
22   Q    And the training manual for the youth officer
23   says your automatic transfer cases when 15 and 16-year-
24   olds who were being charged with armed robbery with a
25   gun, aggravated criminal sexual assault, and murder that

Page 156

1    when they're assigned to assist in those cases, that
2    their presence is re -- you know, assist the assigned
3    detective, their role is not that of investigator your
4    presence required by law, and your assistance will be
5    helpful and it goes on.  Okay.  So this is the law it's
6    referring to, right?
7    A    This is the law it's referring to.
8         MS. DONNELL:  Okay.  All right.  Let me see.
9    Okay.  You know, I might be finished.  I'd like to
10   take a five-minute break or maybe a ten-minute
11   break to look over my notes.  I would love to say
12   five, but sometimes that means more like ten.  So
13   if possible, can I take a ten-minute break and
14   we'll come back and I may have a few more questions
15   or I may not.
16        MR. YAMIN:  Of course.
17        MS. DONNELL:  Okay.  Thank you.  I'll be
18   back.  So let's come back -- let's see.  I don't
19   know.  Let's say 2:50.
20        MR. YAMIN:  Yup.
21             (OFF THE RECORD)
22        COURT REPORTER:  We're back on record.
23   BY MS. DONNELL:
24   Q    Okay.  Commander, in some -- I have some
25   questions left for you.  So and the first question:  Is

Page 157

1    it fair to say that with respect to the youth officers,
2    that they were not supposed to supervise detectives when
3    they were called out to be involved in interrogations of
4    suspects or juvenile suspects.  Is that an accurate
5    portr -- I'm sorry.  Is that an accurate portrayal of
6    the youth officers role?
7         MR. YAMIN:  Objection.  Form.
8    A    They -- they were not supervisors, correct.
9    Q    Okay.  And so the youth officers were not at
10   least during this time period, were not tasked with
11   overseeing whether the detectives complied with general
12   orders with respect to juveniles; is that true?
13        MR. YAMIN:  Objection.  Form.
14   A    Well, general or -- orders unrelated to the
15   treatment of -- of youth I assume, but it was the
16   juveniles, I mean, the youth officers role to monitor
17   the conduct of the investigation as -- as to the
18   treatment of the -- the youth.  Okay.
19   Q    Okay.  So if the youth officer observed any
20   violations of CPD orders or policies and directives as
21   with respect to the treatment of youth, what were the
22   youth officers supposed to do?
23   A    The youth officer was supposed to either --
24   you do one of two things, confront the individual if
25   appropriate.  Perhaps, it's a misunderstanding or have



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 43 of 78 PageID #:9097
The Deposition of COMMANDER ERIC WINSTROM, taken on September 3, 2021
158..161

Page 158

1  it addressed through a supervisor.
2      Q    Okay and so when I asked that question earlier
3  in the deposition, whether they observed or were
4  notified of any violations of the juveniles' rights, you
5  didn't have an answer at that time, but now it sounds
6  like you do.  What did you do to refresh your
7  recollection to have able to answer that question
8  differently now?
9          MR. YAMIN:  Objection.  Form.  Excuse me.
10     Form.  Argumentative.
11     A    No, I think it's consistent with the
12  testimony.  I know that if given the time and I did not
13  do research on the subject, but given the time, I can.
14  Like I said, I wasn't anticipating questions about the
15  disciplinary process.  And this is 1991 we're talking
16  about, so I'm confident that I would be able to find
17  policy.  So I will tell you what the practices which is
18  what it is today as it was then.  The question was what
19  a youth officer should do, correct?
20     Q    Yeah.  I just -- well, you would agree that
21  earlier in your testimony that wasn't your answer,
22  correct?
23         MR. YAMIN:  Objection.  Form and misstates
24     prior testimony.
25     A    I -- no, I don't think.  I -- I believe it was

Page 159

1  my answer.
2      Q    You earlier you testified that if they
3  observed any violations of the juveniles' rights that
4  they would have confront the officer and report to a
5  supervisor.  I don't remember hearing that earlier
6  today.  Did I miss it?
7      A    That was not the question.
8          MR. YAMIN:  Objection.  Form.
9      A    The question was whether there were specific
10  policies related to if a youth officer didn't do certain
11  things.  And I indicated that there's -- there's not
12  specific policies to that.  The policy would be much
13  broader and encompassing when, you know, when a sergeant
14  does something wrong with a youth officer or whatever.
15  I know there were disciplinary policies in place at the
16  time.  I just did not do the research for 1991 on
17  disciplinary issues, so I don't have that -- I don't
18  have a number to provide me.
19     Q    Okay.  So your testimony here that if the
20  youth officer were to observe or be notified of a
21  juvenile's rights being violated, that the two things
22  they were tasked with doing was to confront the
23  individual, meaning the other sworn member, and to
24  report it to a supervisor.  Was that anything, those two
25  things, in any of the training materials or directives

Page 160

1  or policies that you reviewed in preparation for your
2  deposition today?
3      A    My testimony is that those are two options.
4  Sometimes it would not be appropriate to confront an
5  individual for say, a flagrant or some sort of illegal
6  conduct.  That may be appropriate to -- to directly go
7  to a supervisor.  I'm saying that those -- from the time
8  that I've been employed in the police department and
9  long before, those are two options that you have.  Um,
10  as far as what the se -- the second part of -- of
11  the question?
12     Q    I'm not sure, sorry.  I was listening to your
13  answer.
14     A    Okay.  Well, I appreciate that.
15     Q    Well, so -- okay.  So youth officers, I guess
16  what you're saying is just in general, with respect to
17  the department's orders, youth officers could do one of
18  two options, which is what any officer could do, which
19  is confront the officer and report to supervisor.  But
20  there was nothing specific with respect to youth
21  officers that you're referring to here in terms of this
22  general orders or policies or practices or training; is
23  that fair?
24     A    It is -- it's important to note that the youth
25  officer's role was to monitor the treatment of the

Page 161

1  individual.  Just as, for example, an evidence
2  technician role is to -- to, you know, collect shell
3  casings from -- from a shooting.  If the evidence
4  technician had a police officer walk through the crime
5  scene and kick a shell casing, just as if someone else
6  interferes with a primary duty that you have for the
7  time I've been on the police department and much longer,
8  there are steps in place.  So their role was to ensure
9  the rights of -- of the youth because there's not a
10  specific policy saying that what to do if someone
11  violates the policy.  I don't think it's very meaningful
12  when I haven't had the opportunity to research
13  disciplinary policies in place in 1991.
14     Q    And you would -- but you'd agree with me that
15  there was no requirement on the youth officer to
16  document that the rights of the juvenile had been
17  complied with, um, in any kind of fashion, correct?
18         MR. YAMIN:  Asked and answered.
19     A    On that -- on that we can agree.
20     Q    Okay.  We can also agree that there was
21  nothing that you reviewed in the policies or directives
22  that gave the youth officer like a checklist, like make
23  sure they haven't been in custody for more than six
24  hours, make sure they've been given food, water,
25  bathroom breaks, a phone call that all reasonable



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 44 of 78 PageID #:9098
The Deposition of COMMANDER BRIAN WINSTROM, taken on September 8, 2022

162..165

Page 162

1  attempts were made to contact a parent or guardian.
2  There wasn't sort of -- any sort of checklist they were
3  supposed to go through to make sure those rights had
4  been followed and then were documented, right?
5      MR. YAMIN:  Objection.  Form.
6    A   I did not see a checklist.
7    Q   And there's nothing you read in the orders and
8  directives and training material for youth officers that
9  indicated what they were supposed to do if they observed
10  or were notified that any one of those rights of the
11  juvenile suspect had not been complied with, correct?
12    A   That is correct.
13    Q   Okay.  Now, earlier in this deposition, we
14  talked about chapter 8 of the detective division SOP
15  manual, the one that was applicable -- with an effective
16  1988.  And there was another one in 1992, right?
17    A   Yes.
18    Q   And chapter 8 of the 1998 and the 1992
19  Detective SOP deals with custodial interrogations
20  applicable to the detective division, correct?
21    A   I would not have --
22      MR. YAMIN:  Objection.  Form.
23    A   Without having it in front of me, I know that
24  there's a section on interrogations, it could contain
25  more things.

Page 163

1      MS. DONNELL:  Okay.  So, George, I don't
2  know, did you have an opportunity to think about
3  what -- if I can use that in this deposition?
4  What's your city's position going to be on that?
5      MR. YAMIN:  What do you mean use it?
6      MS. DONNELL:  Well, I think, well, first of
7  all, I think earlier -- Command -- the commander
8  testified that he did review it in preparation for
9  his deposition today.  So regardless of whether it
10  was produced earlier in the litigation, it was --
11  it should've been produced pursuant to our notice
12  in this case for this deposition.
13      MR. YAMIN:  I'm not sure that's what
14  Commander Winstrom testified to, but just tell me
15  what you want to use it for and I can answer your
16  question.
17      MS. DONNELL:  Well, I just want to refer to
18  it as the trained -- the SOP for custodial
19  interrogations that was applicable at this time for
20  the detective division.  Because it's one of the --
21  it's like the SOP that's relevant for custodial
22  interrogations from this time period.
23      MR. YAMIN:  So you want to use it as an
24  exhibit?  You want to ask him questions about it?
25      MS. DONNELL:  Yeah.

Page 164

1      MR. YAMIN:  That's fine.
2      MS. DONNELL:  Okay.  So -- and can I do the
3  whole SOP or do you -- can I just make the two SOPs
4  exhibits?
5      MR. YAMIN:  What?
6      MS. DONNELL:  Can I just make the two
7  detective division manuals exhibits?  And I would
8  use the ones the city produced in Hood.
9      MR. YAMIN:  You were asking what specific
10  documents you want --
11      MS. DONNELL:  Yeah.  I'm just going to tell
12  you.  I have -- you guys produced them as the full
13  SOPs in Hood and I would just use them here as
14  exhibits.
15      MR. YAMIN:  I don't recall what we produced,
16  Hood/Washington, you're saying we produced -- the
17  city produced the entire SOPs or just selected --
18      MS. DONNELL:  No.  The entire SOPs.  The
19  chief -- one from Chief Townsend and one from Chief
20  Stibich.  So I can give you the Bates stamp --
21  actually why don't I give you the Bates stamp and
22  I'll go on and then we can take a little break and
23  come back to it.  So the Bates stamp in Hood is for
24  the 1988, but -- Chief Townsend's SOP is City22234
25  to 22440 and the '92 Detective Division SOP under

Page 165

1  Chief Stibich was produced as 22441 to 22650.  But
2  I think --
3      MR. YAMIN:  Can I take --
4      MS. DONNELL:  I can go on and that we can
5  take a break -- another break.
6      MR. YAMIN:  Just a second.  It's okay if you
7  -- the City will agree to -- be to the plaintiff
8  making those as exhibits.  We don't agree that the
9  entirety of the -- either of the SOPs, although,
10  such the identical is relevant to Commander
11  Winstrom's deposition.  So for the sake of
12  efficiency, marking either or both of those as
13  exhibits is fine.  For purposes of questioning, it
14  would have to be limited to the relevant section
15  that you're referring to, which I don't have in
16  front of me, but I know which one you're talking
17  about.
18      MS. DONNELL:  Okay.  Thanks, George.
19      MR. YAMIN:  Do you agree with what I've just
20  said?
21      MS. DONNELL:  There's a little bit of an echo
22  and my end, I don't know who's echoing, but -- oh,
23  I think it's fixed.  Okay.  So I think if I
24  understand you correctly, you are agreeing that I
25  can make the detective division SOPs, the '88 and

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 45 of 78 PageID #:9099
The Deposition of COMMANDER CHRIS WINSTROM, taken on September 8, 2022
166..169

Page 166

1    the '92 exhibits to this deposition, and I can
2    question him about chapter 8 with respect to the
3    custodial interrogation portion of it but for
4    purposes of efficiency in this deposition, that
5    you're not agreeing that the entire SOP is relevant
6    for this deposition?
7         MR. YAMIN:  Correct.  If we had more time,
8    and this was the right time to do it, the City
9    would produce chapter 8 alone.  We only produced
10   18, but we would -- whatever the other chapter is.
11   But yes.  What you said is -- restates what I said
12   accurately.
13        MS. DONNELL:  Okay.  Thanks, George.  I
14   appreciate that.  Okay.
15   BY MS. DONNELL:
16        Q    So I'm going to then -- you don't have this in
17   front of you, Commander Winstrom, so I'm going to just
18   share my screen, okay?
19        A    Yes.
20        Q    Right now I'm marking as  Exhibit 11 to this
21   deposition, the detective division standard operating
22   procedure.  Oh, I guess that was -- that was by Chief of
23   Detectives, John Townsend, under the superintendent
24   Leroy Martin.  And do you recognize this document?
25             (EXHIBIT 11 MARKED FOR IDENTIFICATION)

Page 167

1        A    Yes.
2        Q    And I'm showing you what the city produced in
3    another case called Hood v. City of Chicago, and it
4    bears the Bates stamps, 2 -- City22234 to 22440 in that
5    matter, and I'm just going to refer to and ask you
6    questions about chapter 8 of this document, okay?
7        A    Yes.
8        Q    Okay.  And you're familiar or do -- and you
9    familiarized yourself with chap -- well, first I'll just
10   show you the -- from the table of contents, I'm just
11   scrolling through it, but Chapter 8 is the procedures
12   required of all detectives?
13        A    Yes.
14        Q    Okay.  And then I'm just going to refer to 8.3
15   which is conducting -- sorry.  Admissions, concessions,
16   and written statements, I think, is the section.  Okay.
17   So give me just a second.  I have to get there.  Okay.
18   Thanks for your patience.
19        A    You're welcome.
20        Q    Okay.  We're at section -- do you see section
21   811?
22        A    Yes.
23        Q    Okay.  And this is for admissions,
24   confessions, and written statements, right?
25        A    Yes.

Page 168

1        Q    Okay.  And this is because the courts and
2    juries reviewed the details of an interrogation process
3    to establish the credibility of the confession,
4    detectives must document the circumstances of every
5    confession or admission, right?
6        A    Yes.
7        Q    And then the SOP goes on to delineate what the
8    detective wrote in their supplementary report; is that
9    right?
10        A    Yes.
11        Q    And that includes the name of the person who
12   they obtained the confession from, right?
13        A    Yes.
14        Q    The identification of all persons present
15   during the statement?
16        A    Yes.
17        Q    The date and time of the statement?
18        A    Yes.
19        Q    The location of the statement?
20        A    Yes.
21        Q    Section E says the person in custody was
22   treated humanely and provided with proper food, shelter,
23   and if required, medical treatment, right?
24        A    Yes.
25        Q    And then a description of any exercise their

Page 169

1    arrests right to communicate with an attorney, family
2    member by making a reasonable number of phone calls,
3    right?
4        A    Yes.
5        Q    And then the detectives will provide ample
6    details on their reports to furnish the assistant
7    state's attorney with sufficient information to
8    counteract any motion to suppress the confession or
9    admission, right?
10        A    Yes.
11        Q    And then it says detectives on that take a
12   written statement in any investigation and must be
13   advised to do so by an assistant state attorney or
14   unless directed to do so by a department supervisor,
15   right?
16        A    Yes.
17        Q    In exceptionally cleared homicide cases,
18   however, detectives will take written statements from
19   witnesses.  This information is essential in determining
20   the correct status of the case, right?
21        A    Yes.
22        Q    Okay.  And is it fair to say that the
23   detective division manuals, that two of them that '92 is
24   in substance the same as the 1988 version with respect
25   to custodial interrogation?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 46 of 78 PageID #:9100
The Deposition of COMMANDER GLENN WILKERSON, taken on September 6, 2019
170..173

Page 170

1    A    Yes.
2    Q    Okay.  Okay.  The detective division SOP also
3  dealt with interrogation of juveniles with respect to
4  General Order 87-7 and special order 78-33, correct?
5    A    Not in that section.  I don't think -- did it,
6  did it?
7    Q    Not in that section but the SOP itself does.
8         MR. YAMIN:  Objection.  Form.  Foundation.
9    A    So my understanding was that the -- if --
10 maybe if I could see what section you're referring to,
11 it would -- it would remind me.
12   Q    Okay.  Hold on one second, I'll find that.
13   A    Okay.
14   Q    Here, let's see if I can show you.  So here in
15 the index -- I guess this is the index in the SOP list,
16 the various general orders and SOPs that are relevant
17 from the detective division; is that right?
18   A    I got you.  It -- yes.  This is like a helpful
19 reference material that if you have, you know, arson
20 where the department wide orders to look for where the
21 SOP s look for.  So it's kind of a cheat sheet.
22   Q    And here for the arrestees -- for the
23 interrogation of juveniles, the detective division SOP
24 list General Order 87-7, and the special order 78-33
25 that we've been talking about today, correct?

Page 171

1    A    That's right.  It does.
2    Q    Okay.  And so detectives were referred to both
3  of those General Order 87-7 and special order 78-33 that
4  we've been talking about, with respect to the juveniles.
5  Right?
6    A    They were.
7    Q    Okay.  Thank you.  And for purposes of TFI
8  record, I'm also going to mark that 92 Manual -- SOP as
9  well.  So just one second.  Let's see if I can do that.
10 And so I'm marking as  Exhibit 12 to your deposition,
11 can you see Exhibit 12, is the detective division
12 standard operating procedure.  And then this is under
13 the chief of detectives, John Stibich, right?
14         (EXHIBIT 12 MARKED FOR IDENTIFICATION)
15   A    Yes.
16   Q    Okay.  And so -- and for the record, I'm
17 marking Exhibit 12, as the detective division SOP that
18 was produced in the Hood litigation under City Bates
19 stamp 22441 to 22650.  And did you review this in prep -
20 - or portions of this in preparation for your deposition
21 today?
22   A    I looked at 8.11 in either the '92 or '88, I
23 can't remember which, but I think they are very similar,
24 so --
25   Q    Okay.  And that was for the part that we just

Page 172

1  looked at for admissions, concessions, and written
2  statements?
3    A    That is correct.
4    Q    Okay.  And that was the part we just looked at
5  in Exhibit 11?
6    A    Yes.
7    Q    Okay.  And they are materially the same; is
8  that right?  Or they're identical?
9    A    Yes.
10   Q    Okay.  Thank you.
11   A    Thank you.
12   Q    Okay.  I'm going to ask a few more questions
13 about those juvenile logs that were at either the patrol
14 division, or with old Area 3 with the sergeant --
15 detective sergeant, right?
16   A    Yes.
17   Q    Okay.  And so what was contained on those
18 logs?
19   A    It would have been a name --
20         MR. YAMIN:  Object to the form.
21   A    It would've been a time of arrival, name, the
22 anticipated charge, and then disposition, and time of
23 departure.
24   Q    And the name would be the juvenile; is that
25 right?

Page 173

1    A    Correct.
2    Q    And the time of arrival would be the time
3  arriving at either the area or the patrol division --
4  the district?
5    A    That's correct.
6    Q    And the anticipated charge would be the
7  criminal charge for which they were brought to either
8  the district or the Area?
9    A    Correct.
10   Q    And then what was -- you said disposition was
11 next?
12   A    Anticipated charge, disposition.  Disposition.
13   Q    What was recorded on the log in the
14 disposition column?
15   A    Such as like released to parent or Audy Home,
16 RWOC, released without charging.
17   Q    Okay.  And then the time of discharge; is that
18 right?
19   A    Time of departure, sure.
20   Q    Time of departure, and that would be the time
21 departing from the Area or the district?
22   A    Correct.
23   Q    Would the youth officer have to record their
24 name as well?
25   A    I don't -- oh, boy, man.  This is a memory

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 47 of 78 PageID #:9101
The Deposition of COMMANDER ERIK WINSTROM, taken on September 9

174..177

Page 174

1  test and I think I'm going to fail it.  I'm trying to
2  picture the log.  I don't -- I don't know.  I'll just
3  say I don't know.
4      Q    Does the department still keep these logs?
5          MR. YAMIN:  Objection.  Foundation.  Calls
6      for speculation.
7      A    I -- now, by keep these logs, do you mean
8  utilize them to this day or do you mean retain the logs
9  that were in place in 1991?
10     Q    Oh, thank you so much for clarifying.  I
11 actually want to know about answers to both of those
12 questions.  So let's start with, does the department
13 still have these logs in effect today, either in a
14 written form or an electronic form to document juveniles
15 who are brought to the district or the Areas?
16     A    I -- but it's been -- it's been pretty
17 recently, so I believe that we still utilize them at the
18 front desks of the Areas.
19     Q    Are they still being utilized in hard copy or
20 are they electronical?
21     A    Hard copy.
22     Q    Okay.  And have you -- do you know whether
23 this city's retention scheduled for these legs -- how
24 long they're maintained?
25     A    My -- well, for the logs today, we're in a

Page 175

1  period today where we're not -- we're not utilizing --
2  utilizing the disposal certificate process where, since
3  we became under investigation by the Department of
4  Justice, we've kind of had a freeze on destroying
5  things.  In 1991, that would not have been the case.
6  And I believe this would have been probably --
7      Q    (sneezes)
8      A    Bless you.
9      Q    Thank you.
10     A    -- six months.  Six months retention.  Could
11 have been three months as well, but it -- it would
12 likely -- not likely, it would be listed on forms
13 retention schedule.
14     Q    Okay.  Thank you.
15     A    Yes.
16     Q    And back then, if things were destroyed per
17 form retention schedule, a certificate was presented
18 documenting the destruction?
19     A    Generally, they were, yes.
20     Q    Okay.  Okay.  Cool.  Thank you.
21     A    You're welcome.
22     Q    Okay.  More questions about the logs.  If the
23 juvenile is brought into the district -- to the area for
24 an anticipated charge, and that charge is disposed of
25 but the youth -- the juvenile remains at the district or

Page 176

1  at the Area pursuant to some other additional
2  anticipated charge, does the juvenile have to be --
3      A    Does the Juvenile have to be what?
4      Q    Logged like as a separate instance, if the --
5  so for example, let's say the youth never leaves the
6  district or the Area.  They get arrested for one charge,
7  but then they're -- and it's been processed and disposed
8  and they're going to be released.  If somebody wants to
9  hold the juvenile pending another anticipated charge,
10 does that have to be another entry on the log.
11     A    I see what you're saying.  And it -- there
12 could be, but the whole mechanics of it is that when you
13 walk the juvenile into the station who's under arrest,
14 that's when you log the individual.  So if they were re-
15 arrested while they were still there, there wouldn't be
16 that, you know, arrival again.  So it wouldn't surprise
17 me if it didn't happen, it would be, I won't say a
18 unique situation, but not that common a situation.
19     Q    And let's say you have youth at the Area or
20 the district who's arrested on let's say -- I don't
21 know, like shoplifting charge or some sort of charge
22 where they're going to be released.  And the youth
23 officer is releasing them and so is releasing them on
24 their own, they're going to put down that's the
25 disposition.  So they would -- the youth officer would

Page 177

1  complete that entire log entry, right?
2      A    Right.  But like I said, the mechanics is
3  that's when you're walking out the door, you know with
4  the individual so if -- it would be not unique, but it
5  would be very uncommon situation if the youth officer
6  was leaving, and the juvenile was staying.  So I don't
7  know what that -- what that would look like, it could go
8  either way, depending on the circumstances that are
9  there.  So it's kind of, you know, something that
10 there's not a rule for because it's not common enough.
11     Q    Meaning it's not common that if a youth
12 officer is leaving the juvenile is also not leaving with
13 them either to, like, the Audy Home or to a parent or
14 whatever?
15     A    Right.  The volume -- so the volume is such
16 that traditionally these are small cases, couple of bags
17 of weed or retail theft, something like that and they
18 come in, they sign in, they get processed, and then
19 they're done.  It's, you know, it's not like a revolving
20 door, but it's an official process.  So when you throw
21 in that curveball of, there's -- there's something else
22 going on with it.  It would -- it would depend on -- on
23 what's going on in the station at the time.  I could --
24 I wouldn't be surprised either way if there was some
25 notation or if there wasn't.  Yeah.



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 48 of 78 PageID #:9102
The Deposition of COMMANDER ERIC WINSTROM, taken on September 8, 2021
178..181

Page 178

1    Q    And just to be clear, I think you answered
2  this already, so bear with me because I'm probably
3  repeating myself, but if a detective is bringing in a
4  juvenile for questioning on a more serious offense, an
5  armed robbery, homicide, a sexual assault, the detective
6  also had to log the juvenile as coming into the Area,
7  correct?
8    A    Right.  The whole -- the whole idea of the
9  log, maybe I should have said, is that, if there's a
10  phone call at the desk or if a parent comes in or
11  something which is very common in these, that you have
12  an instantaneous way of saying, "Oh, Eric Winstrom,
13  easier because he's got a bag of weed in his pocket" and
14  he was, you know, with the time he was here so that you
15  don't have to say like, "Well, I don't know where your
16  son is.  Let me call around."  So -- so that's -- that's
17  why this kind of throws a curve ball in the whole thing.
18  If you didn't walk out the door, you might not want to
19  know on the log that he left because he's still there.
20  So if somebody is calling to look for him, you would
21  want that -- that name still to be on the log.  Does
22  that make sense?
23    Q    It does make sense.  And also, this was a
24  requirement that was in place pursuant to the Illinois
25  general assembly's enactment of the Juvenile Court Act,

Page 179

1  correct?  This log is like also a state requirement?
2    A    I believe you but that is a surprise.  I did
3  not know that.
4    Q    When we were going through do you remember
5  going through the youth division and that was talking
6  about the General Assembly Act 37 and it was listing
7  requirements.  Okay.  So -- but sort of -- putting that
8  to the side.  Following your thought or your testimony
9  regarding the purposes of the log is like if a police
10  officer takes a juvenile in custody the parent comes
11  looking and is like, "Hey, you took my kid, where's my
12  kid?"  The police department wants to be able to say,
13  "Hey, we released him.  This is, you know, he's no
14  longer in our custody."  Something to that effect.  Is
15  that what you're testifying to?
16    A    Well, I don't -- if the parent was looking for
17  him, it would be "Oh, he's still here," because that
18  would get awkward but -- so I like my version better.
19  It's the positive.
20    Q    Yes.  I see.  Does it put -- that child is --
21  that the juvenile is still there but so if, for example,
22  a parent or relative comes to the district or the Area
23  and is under the impression that the child is -- the
24  juvenile is still at the area, the district log
25  helps indicate "Oh, yeah, we still have this person

Page 180

1  here."
2    A    Yes.
3    Q    Okay.  If a juvenile has been -- like the
4  charge that they are there on has been processed, and an
5  arrest has been, and the juvenile free to go, would that
6  be documented on the log, that they've been released?
7    A    If they -- they physically left, I would say
8  yes.  If they didn't leave like in the scenario that --
9  that we talked about, I -- I could see either way if
10  they're, you know, are they hanging out in the front
11  desk, or what -- I would say it's a case-by-case basis
12  of -- what's going on.  I could -- I wouldn't be
13  surprised either way, depending on the circumstances.
14    Q    Got it.  Okay.  Do you know if those logs were
15  every used to audit or determine whether juveniles were
16  being held in custody longer than six hours?
17        MR. YAMIN:  Objection.  Foundation and form.
18    A    I do not.
19    Q    Okay.  So when juveniles -- we read some
20  provisions of this earlier.  I just want to clarify, for
21  juveniles that are being arrested and they're going to
22  be printed and photographed, is that the youth division
23  -- the youth officers' responsibility?
24    A    It would be the -- it -- it could be.  It's
25  usually the youth -- youth officers' responsibility at

Page 181

1  least to make sure that it happens.  However, sometimes
2  -- especially if it's a very large arrestee, you know,
3  regardless, I have a brother-in-law who is 16 and he's
4  300 pounds, so it's -- it's possible that other
5  individuals would take their fingerprint and photograph.
6  The youth officer would probably still monitor and make
7  sure we're still compliant with out of sight and sound.
8  But it -- there would be occasion for a patrol officer,
9  detective to -- to do the fingerprinting and
10  photographing themselves, yeah.
11    Q    Okay.  Thank you.
12    A    I should -- I should clarify too, just -- and
13  I don't know enough about this case, but there is also -
14  - now when you're talking about the individual is
15  charged as an adult, that would be incumbent on the
16  detective because as soon as the state's attorney
17  approves the charges.  During this time, there were
18  automatic transfers that we no longer have automatic
19  transfers in the state of Illinois for -- for that age
20  group or for any age for really subject it to transfer,
21  but it's -- you still have to go to juvenile court.  So
22  during this time, if you've got an automatic transfer
23  for say, a 50-year old with a murder charge approved,
24  you are now leaving the Juvenile Court Act rules and
25  going to the adult rules, you still did the sight and

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

**Page 182**

1  sound and you would go to a designated juvenile holding
2  cell in a specific place with one, however, that's now
3  the detective's role because you've taken at the youth
4  detective isn't filling out all the youth forms that
5  they usually do because now you're going to criminal
6  court. So there's a curve ball. I should've clarified
7  that.

8     Q  Thank you. I really appreciate that. So just
9  to be clear, once the felony review, approved, serious
10  felony charges, including murder of a 15 or 16-year-old.
11  In this time period that automatically transferred that
12  individual into the adult criminal court and certain
13  provisions of the Juvenile Court Act no longer had to be
14  followed, although some still do in terms of where they
15  can be held and other things?

16     A  And that then takes the responsibility away
17  from the youth officer to process and puts it on the
18  detective to process. So if a 15 year-old is charged
19  with murder, it's very likely that the detective
20  investigating would walk the 15 year-old into lock-up
21  instead.

22     Q  Got it. But if a youth officer was arresting
23  a juvenile suspect of 15 or 16-year-old for, you know,
24  minor drug possession, shoplifting, things of that
25  nature, then it's on the youth officer to do the

**Page 183**

1  printing and the photographing with the special
2  provisions to the identi -- Bureau of Identification.

3     A  That's right. So there -- it's their
4  responsibility. But in practice, in this -- we had some
5  similar rules, when I was a young officer and a young
6  youth detective, myself, there would be occasions where
7  the police officers would do the fingerprinting and
8  photographing, but it's -- your insuring it and you're
9  still completing all the youth paperwork.

10     Q  That reminds me. And I think I've done this
11  before, but I don't think I did it earlier. When did --
12  what's your date of becoming a sworn officer?

13     A  August 14th of the year 2000.

14     Q  And what years were you in the youth division
15  as a youth officer or supervisor of the youth division?

16     A  Let's see. I became a detective at the end of
17  2005. I was a youth detective from I would say October
18  of 2007 to July of 2008, and then I was a special
19  victims unit sergeant from -- let's see, it would've
20  been maybe October of 2010 to probably October of 2011.
21  And then the entire year of 2013, I was in charge of the
22  Special Investigations section, which is also on youth
23  division -- investigates child sex crimes.

24     Q  And in your capacity -- in any of your
25  capacities, maybe as a youth officer detective, were you

**Page 184**

1  ever called to be present for one of the detective
2  divisions interrogation -- custodial interrogations of a
3  juvenile?

4     A  Yes.

5     Q  Okay. Well, was there any in -- during this
6  time frame, was there any requirement on youth officers
7  if they reported to a detective area and there had
8  already been a custodial interrogation of a juvenile
9  where they weren't present for that -- that they've been
10  called out, let's say for the statement. Were there any
11  requirements that the juvenile office -- that the youth
12  officer find out from the detective, the conditions of
13  the custodial interrogation prior to their presence?

14     MR. YAMIN: Objection. Form of the question.
15  Foundation.

16     A  There was not a policy in place related to
17  this at the time.

18     Q  Were there any practices or training with
19  respect to the same question at this time -- the
20  relevant time period, I mean.

21     A  I am not aware of any training on point just
22  because it's a very specific sort of situation, and I
23  would be hesitant to say that there were specific
24  practices, again, because it is a very specific set of
25  facts.

**Page 185**

1     Q  So -- and I guess I'll just take one aspect of
2  it. So for example, the requirement that a juvenile not
3  be held more than six hours in secure custody that was
4  in place during this time. Was there any requirement
5  that for me youth officer reported to a detective area
6  they determine how long that juvenile suspect had been
7  in -- if they had been in, how long they had been in a
8  secure custody?

9     A  That was part of the role of -- of the youth
10  officer. So making that determination would be
11  something that they would inquire about. If the person
12  was handcuffed to the bench there and they were aware
13  that a previous custodial interrogation had taken place,
14  that would be something that they would ask. When I was
15  a youth officer, you know, and I would arrive, it's the
16  basic "Hey, are you hungry or thirsty? You need to use
17  the bathroom?" Just getting the basics from the
18  detective. So that is one of the basic thing -- basic
19  thing that Youth Officer should -- should do is, you
20  know, assess the situation. Someone more unusual
21  situation where you're -- you're coming to as the second
22  custodial interrogation after one had already been taken
23  place, but the same -- the same practices would apply.

24     Q  And I'm curious. In your role as a youth
25  officer or a detective in the youth officer division,

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 50 of 78 PageID #:9104
The Deposition of COMMANDER ERIKA WINSTROM, taken on September 2, 2021

186..189

Page 186

```
 1  did that scenario ever happened to you or you recalled
 2  out to a detective area to be present per a written
 3  statement or court reported statement.  But the juvenile
 4  had already been present at the area for some unknown
 5  length of time and you had to determine whether or not
 6  the six hours had been exceeded?
 7          MR. YAMIN:  Objection.
 8      A   When --
 9          MR. YAMIN:  Form -- form of the question.
10      A   By the time I came to be a detective in 2005,
11  the detective division was reorganized to the point that
12  all special victims unit detectives were located in
13  areas.  So there was always SVU detectives, as we call
14  them, youth officers on duty at the time.  Then we
15  transitioned the entire department into training all
16  detectives to be youth officers.  So by the time that
17  took place, it was no longer an issue.
18      Q   Okay.  So it's just a different -- there was
19  different operating -- there's different policies and
20  operating procedures?
21      A   There were -- there were more of us by the
22  time I became a detective, yes.
23      Q   Okay.  So in other words, if the juvenile was
24  going to be interrogated, a youth detective would be
25  present?
```

Page 187

```
 1      A   Right.  There would --
 2          MR. YAMIN:  Objection.
 3      A   -- there would -- unless there was a crisis
 4  going on, there most likely be numerous detectives on
 5  the floor that were qualified.
 6          MS. DONNELL:  Got it.  Okay.  Make sense.
 7  Okay.  Okay.  I think that I am all finished with
 8  my questions.  I really thank you for your time,
 9  Commander Winstrom.  It's a pleasure to see you
10  again.
11          THE WITNESS:  Pleasure to see you again.
12          MR. YAMIN:  I have a few questions for the
13  witness.
14          MS. DONNELL:  George, if you have a few
15  questions, can we take just like a brief pause?
16  Just take a quick -- I just need like three
17  minutes.
18          MR. YAMIN:  Yes.  Sure
19          MS. DONNELL:  Okay.  Let's go off the record.
20          COURT REPORTER:  Okay.  We're off the record.
21              (OFF THE RECORD)
22          COURT REPORTER:  We're back on the record.
23              CROSS EXAMINATION
24  BY MR. YAMIN:
25      Q   Thank you.  Commander Winstrom, I just have a
```

Page 188

```
 1  couple of questions.  A few following up on your
 2  testimony in response to questions by Plaintiff's
 3  counsel.  You recall -- do you recall that when
 4  Ms. Donnell was questioning you, you were asking
 5  questions about the phrase, "secure custody"?
 6      A   Yes.
 7      Q   And is secure custody defined in any of the
 8  documents that you reviewed?
 9      A   It is defined -- defined in the memorandum by
10  Chief Stibich 92-something.
11      Q   Would it be 92-8-6?
12      A   Yes.  Correct.
13      Q   And that's -- that was marked as Exhibit 8,
14  correct?  Have it?
15      A   That is -- that is correct.
16      Q   I can't remember.  Did you have a hard copy of
17  that there?
18      A   No.
19      Q   Because I don't have it either.
20      A   I -- well, I -- I have it -- I had it in my
21  e-mail.
22      Q   Oh, okay, that's -- do you have access to it
23  through the exhibits that were sent via e-mail?
24          MS. DONNELL:  Why don't I just share my
25  screen, George?  Would that help everybody?
```

Page 189

```
 1          MR. YAMIN:  That'd be a whole lot easier.
 2  Sure.
 3          MS. DONNELL:  Sure.  Okay.  Just give me a
 4  second.  Does that work?
 5          MR. YAMIN:  Yup.  Sure does.
 6  BY MR. YAMIN:
 7      Q   Commander, that's --
 8      A   Yes.
 9      Q   -- you can see on the screen, Exhibit 8
10  detective division memorandum number 92-8-6, correct?
11      A   Yes.
12      Q   And can you see a definition of secure custody
13  on that document?
14      A   Yes.  It's once an individual's placed in a
15  locked room or cell or handcuffed through a stationary
16  object not including transportation time.
17      Q   Okay.  Thank you.  Now, when Ms. Donnell was
18  asking you questions earlier, do you recall she also
19  asked you some questions about custodial interrogation?
20      A   Yes.
21      Q   Do you recall being asked to define what
22  custodial interrogation is?
23      A   It was a long -- there was many hours ago, I
24  think, but --
25      Q   Okay.  Let me try to refresh you.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 51 of 78 PageID #:9105
The Deposition of COMMANDER ERIC WINSTROM, taken on September 9, 2021
190..193

Page 190

1    A    Okay.
2    Q    Did you recall both of these -- sorry, I'll
3    start that question again.  Where was -- you're familiar
4    with the concept and the phrase "custodial
5    interrogation," correct?
6    A    Yes.
7    Q    In what document that you're aware of is
8    custodial interrogation defined?
9         MS. DONNELL:  Objection.  Asked and answered.
10   Go ahead.
11   A    Well custodial interrogation is defined in, I
12   believe it's in 87-7.
13   Q    Okay.  So --
14   A    Right.  I read it.  From 87-7.
15   Q    Okay.  Correct.
16   A    The Supreme Court holds it -- wow, I'm getting
17   tired.  Sorry.
18   Q    No.  That's okay.  It's been a long, long day.
19   A    Yes.
20   Q    So in fact, you actually read the definition
21   from 87-7 in your prior testimony, correct?
22   A    Correct.
23   Q    Did a custodial interrogation necessarily take
24   place in secure custody as secure custody is defined in
25   Exhibit 8?

Page 191

1         MS. DONNELL:  Objection.  Form.
2    A    No.
3         MR. YAMIN:  No more questions.  Let's see.
4         MS. JOHNSON:  None from officers.
5              REDIRECT EXAMINATION
6    BY MS. DONNELL:
7    Q    I do have one follow-up question, maybe one or
8    two, but I believe you just testified that custodial
9    interrogations do not necessarily occur in secured
10   custody; is that right?
11        MR. YAMIN:  Asked and answered.  Objection.
12   A    Correct.
13   Q    Okay.  But you agreed with me earlier that if
14   an individual as being in a custodial interrogation and
15   they did not feel free to leave, that could be
16   considered secure custody, or did I get that wrong
17   earlier?
18   A    I -- well I -- I may have said that, but the
19   question was the definition secure custody for the --
20   for the memo.  I don't know where else it -- it's
21   defined, but in this memo it's clear that it is
22   handcuffed to a stationary object or a latch room.
23        MS. DONNELL:  Okay.  But going back to --
24   okay.  Okay.  I think no further questions.
25        MR. YAMIN:  I think we're done.

Page 192

1         MS. DONNELL:  Thank you, Defendant -- thank
2    you, Commander Winstrom.  George, as the witness,
3    are you waiving signature?
4         MR. YAMIN:  We never do that, Heather.
5         MS. DONNELL:  Oh, you never do?  I didn't
6    know that.
7         MR. YAMIN:  Well, let me say that -- I'll say
8    it in the first person singular.  I never do that.
9         MS. DONNELL:  Okay.  Got you.  Okay.  Thank
10   you so much for your time, Commander Winstrom.
11        COURT REPORTER:  Okay.  We will go off the
12   record.
13        (EXHIBIT 7 MARKED FOR IDENTIFICATION)
14        (DEPOSITION CONCLUDED AT 3:45 P.M.)
15
16
17
18
19
20
21
22
23
24
25

Page 193

1              CERTIFICATE OF REPORTER
2
3    I do hereby certify that the witness in the foregoing
4    transcript was taken on the date, and at the time and
5    place set out on the Stipulation page hereof by me after
6    first being duly sworn to testify the truth, the whole
7    truth, and nothing but the truth; and that the said
8    matter was recorded by me and then reduced to
9    typewritten form under my direction, and constitutes a
10   true record of the transcript as taken, all to the best
11   of my skills and ability.  I certify that I am not a
12   relative or employee of either counsel, and that I am in
13   no way interested financially, directly or indirectly,
14   in this action.
15
16
17
18
19   
20
21
22   BETHANY BELLOFATTO,
23   COURT REPORTER / NOTARY
24   COMMISSION EXPIRES ON: 09/11/2025
25   SUBMITTED ON:  10/06/2021

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

**Exhibits**

**Exhibit 1_**
**WINSTROM**
11:13,16,22
25:6,7 109:15

**Exhibit 2_**
**WINSTROM**
23:21,22,23,25
63:9 69:25 71:8
150:20 151:23

**Exhibit 3_**
**WINSTROM**
59:1,3 81:11
83:13

**Exhibit 4_**
**WINSTROM**
123:1,2,3,4,11
137:5

**Exhibit 5_**
**WINSTROM**
100:1,5,7,8
121:18,19
122:2 155:12,
18,19

**Exhibit 6_**
**WINSTROM**
142:13,19,22,
23

**Exhibit 7_**
**WINSTROM**
192:13

**Exhibit 8_**
**WINSTROM**
52:6,13,23 53:1
55:5 94:19,21,
25 95:3 121:14
122:11 146:14
188:13 189:9
190:25

**Exhibit 9_**
**WINSTROM**
92:17,19,22,23
93:2 152:5

**(**

**(7)(a)** 137:9

**(b)(6)** 11:20

**0**

**00926** 24:1
**02204** 7:13

**1**

**1** 11:13,16,22
12:3 25:7 44:24
54:2 55:22 61:1
71:4 85:6 90:18
109:6,15
123:19 124:4
125:10

**1-91** 124:10
**1-A-1** 139:10
**10** 73:12 152:3,
4 153:6,7
**1008** 52:24
**101** 135:16
**10:02** 7:6
**10A** 73:22
**11** 166:20,25
172:5
**1119** 124:9
**112** 123:19
**11:45** 69:14
**11C** 67:23
**12** 151:4,20
171:10,11,14,
17
**1247** 123:12
**13** 30:11
**14th** 19:9
183:13
**15** 103:5,20
132:8 155:23
182:10,18,20,
23
**16** 103:21
125:11 127:15,
20,21 128:1,2

**134:17** 181:3
**16-year-**
155:23
**16-year-old**
132:8 182:10,
23
**16-year-olds**
103:5
**16th** 19:9
**17** 125:16
126:10 134:25
**17th** 19:9 126:6
**18** 166:10
**18th** 19:13
20:20
**19** 7:12
**1967** 147:2
**1987** 24:3
149:20 153:8
**1988** 12:3
15:23 16:22
17:6,16 44:24
45:10 59:24,25
153:7 162:16
164:24 169:24
**1989** 53:21
54:2,8
**1991** 24:24
25:4 42:14 57:9
118:15 123:14
124:7,19
158:15 159:16
161:13 174:9
175:5
**1992** 16:3,9
17:7 53:2 63:25
93:1 162:16,18
**1993** 12:4
44:24 45:10
**1997** 23:3
**1998** 24:5
150:23 152:14
162:18
**1:00** 108:7,8,
17,19

**1A** 12:12,15
**1B** 12:17
**1C** 12:24
147:17

**2**

**2** 23:22,23,25
25:6 54:22
61:11 63:9
69:25 71:8
101:9 104:3
129:6 150:20
151:23 155:13
167:4
**2000** 23:6
183:13
**2005** 183:17
186:10
**2007** 183:18
**2008** 183:18
**2010** 183:20
**2011** 23:11
183:20
**2012** 19:2
**2013** 183:21
**2017** 20:19
**2019** 21:4
**2020** 18:21
19:5,17
**2021** 7:6 11:18
21:7
**21** 67:14
**21st** 7:6
**22** 24:4 150:23
**22440** 164:25
167:4
**22441** 165:1
171:19
**22650** 165:1
171:19
**23972** 122:2
**23974** 104:16

**23978** 105:5,6
**23979** 106:1
121:20
**23995** 100:9
**24.518** 133:23
**24014** 142:25
**24024** 142:24
**25th** 19:10
**29th** 19:5
**2:50** 156:19

**3**

**3** 59:1,3 61:15
65:11 81:11
83:13 85:3
90:11,12,15,21
105:19,25
123:19 126:9
131:1 133:12
147:9 172:14
**3-2** 128:16
**30** 11:20
**30(b)(6)** 11:14,
17 13:5 14:6,9,
20 17:8
**300** 181:4
**31** 12:4 24:2
44:24 53:2
**37** 54:1 125:4,5
126:18 137:9
153:8 179:6
**39th** 90:16
**3:45** 192:14
**3B** 85:8
**3C2** 86:14,17

**4**

**4** 63:11 93:1
102:24 123:1,2,
3,4,11 137:5
**4-37** 138:2



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 53 of 78 PageID #:9107
The Deposition of COMMANDER Eric WOODROW, taken on September 21, 2021
195

**436** 137:7

---

**5**

**5** 19:1,4,7 68:3
100:1,5,7,8
121:18,19
122:2 144:17
155:12,18,19

**50-year** 181:23

**57** 67:15

---

**6**

**6** 68:6,23
142:13,19,22,
23 153:8

---

**7**

**7** 62:15 65:6
192:13

**78--33** 87:7

**78-1** 92:21

**78-33** 58:20
59:14 60:8
83:12 88:4
91:24 147:8
170:4,24 171:3

**78-5** 94:4

---

**8**

**8** 16:18,19 17:5,
16 18:1 52:6,
13,23 53:1 55:5
71:4 94:19,21,
25 95:3 121:14
122:11 146:14
162:14,18
166:2,9 167:6,
11 188:13
189:9 190:25

**8.11** 171:22

**8.3** 167:14

**80** 65:16 81:11

**8017805-7**

125:4

**805-** 153:7

**805-4(6)(a)**
137:9

**805-6** 152:24

**8057-2** 126:18

**811** 167:21

**82** 64:6

**82-3** 150:9

**87** 44:6 62:16
152:14,24

**87-** 62:14 65:5

**87-7** 13:1 15:9,
14 23:18 24:2,
4,8,23 25:2,10
26:2,5 27:1,11,
22 28:11,18
29:17 30:4,17
33:24 36:17
41:16 43:23
44:1 48:6,12,
14,23 49:15
50:17,23 60:18,
20 61:7,13,21
62:1,8 63:10,
14,17,21 64:6,
8,10,13,16 65:3
66:13,18,23
67:24 68:12
69:25 71:8 73:5
81:13 105:5,11,
12 106:21
107:2 147:11,
12,21,25
148:10 150:1,8,
11,14,18,22
170:4,24 171:3
190:12,14,21

**87-79F** 107:5

**87-7A** 24:4
150:18

**87-7F** 44:7,10
58:13

**88** 16:25 165:25
171:22

---

**9**

**9** 11:18 25:10,
13 26:5 27:17
30:23 71:9
92:17,19,23
93:2 152:5

**90s** 98:7

**92** 16:24 17:1
81:6 164:25
166:1 169:23
171:8,22

**92-5** 92:25

**92-8** 16:7
121:13

**92-8-6** 53:2
64:6 66:9 68:23
188:11 189:10

**92-something**
188:10

**928-6** 63:22
67:13 68:19
69:3

**93** 94:22

**93-** 65:10

**93-3** 65:4,25
69:21

**959** 92:24

**9A** 29:3,7

**9B** 27:16

**9F** 28:10,18
29:8,17 30:4
33:24 49:15
50:23 63:9

**9G** 70:2

**9th** 21:5

---

**A**

**a.m.** 7:6

**Absence** 40:2

**absent** 75:12,
15 76:2

**absolutely**
63:4 76:9,13
141:12

**abuse** 96:15
97:16 98:2,9

**academy**
91:14 149:15

**acceptability**
70:12 73:7
81:16

**accepting**
27:25 30:23
61:18

**access** 9:23
112:18 113:12
188:22

**accurate**
111:17 148:22
157:4,5

**accurately**
166:12

**act** 29:22,24
30:1,6,9 53:20
54:2,8,14 68:8,
15,21 96:13
104:8,13 110:1,
2 111:20
113:24 114:4,
14 115:12,13,
20 116:4,9,15
117:1 119:11
120:7,8 122:16
129:7,13 145:1,
8,9,12,19
146:2,7,17
147:2 152:14
153:8 154:7
178:25 179:6
181:24 182:13

**action** 24:14
26:9

**activated** 10:5

**active** 23:12

**activities**
89:22

**activity** 144:7

**acts** 144:23

**actual** 40:22
127:3,24 144:2

**add** 37:19

**added** 28:15
33:25 34:4

**addendum**
24:3

**adding** 58:15

**addition** 27:24
29:2 30:21
113:22

**additional**
14:19 23:2
28:17 29:1,7
30:5 115:19
176:1

**address** 32:6
39:16

**addressed**
32:4 51:20
158:1

**adjust** 32:1
52:25 116:10

**adjusting**
31:21

**adjustment**
116:10 136:25

**Administratio
n** 23:4

**administrative**
118:1,17

**admission**
23:10 27:25
30:23 61:18
81:25 116:20,
21 168:5 169:9

**admissions**
23:12 71:18
72:21 167:15,
23 172:1

**admitted** 23:8
136:22

**admonished**
26:23

**adult** 28:3,6,7,
21,24 29:12,13,



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

14 34:19 35:4,
16,20 36:2,10,
19,25 37:3,9
38:11 41:8,19,
20,22 42:8
43:19,22 44:3,
4,9,11,16 45:4
47:18 48:13,25
49:5,8,9,25
50:15,25 51:3,
14,22 52:3 56:9
61:13,18,24,25
64:15 66:12
79:1 80:19 81:3
88:11 100:24
101:18,19
106:21 107:2,8
115:15,17
126:3 128:5,14
132:11 135:15
139:14 140:15
181:15,25
182:12

**adults** 13:6
72:12 125:17,
19 129:10
135:1,3 137:8,
14 138:5,14

**advance** 10:18
17:22

**advice** 28:4
34:22

**advise** 61:2,11

**advised** 28:1
169:13

**advisement**
34:17

**advising** 25:7,
20 119:8

**affairs** 119:1
120:1

**affective** 145:1

**affirm** 8:15

**affirmative**
120:9

**affirmatively**
35:2

**afford** 25:25

**afternoon**
42:21

**age** 73:19 74:6,
12 78:7,11
125:11,16
126:10 127:21
134:18,25
151:5 181:19,
20

**agency** 126:1

**ages** 128:2

**aggravated**
103:6 155:25

**agree** 8:8 17:5
18:4,7 24:22
25:1 31:15
33:23 38:23
39:7 41:15 42:1
76:24 77:20
78:14,22 124:2,
11,18,20
145:23 146:10,
19 150:7
158:20 161:14,
19,20 165:7,8,
19

**agreed** 8:12
17:18 151:25
191:13

**agreeing**
165:24 166:5

**agreement**
11:18

**ahead** 36:13
37:22 38:5
62:12 64:3
75:23 79:17
118:23 133:4,5
190:10

**Ainsworth**
13:22

**alleged** 154:22

**allowed** 106:7

**altogether**
44:9

**amended**
11:13,20 17:8
53:20 54:2

147:19

**amendment**
150:22

**amount** 111:10

**ample** 169:5

**annotated**
153:7

**answers** 11:9
31:6,20 51:9
174:11

**Anthony** 7:9,
17

**anticipate**
117:23

**anticipated**
172:22 173:6,
12 175:24
176:2,9

**anticipating**
158:14

**apologies**
10:22 69:23

**apologize**
40:12 42:6
69:20

**apologizing**
118:24

**appearance**
7:13 122:19

**appearing**
7:18,21,23

**appears** 58:1
67:18 129:12

**applicable**
24:23 25:2
44:23 65:20
84:10,12 88:5
104:2 116:6
131:8,22,23
162:15,20
163:19

**application**
9:24

**applies**
107:15,16

**apply** 37:23
41:2 185:23

**applying** 84:5

**appreciated**
53:8

**approval**
140:19 141:3,6

**approved**
141:4 181:23
182:9

**approves**
181:17

**approximately**
14:8 19:12

**April** 19:5

**arching** 119:21

**area** 18:25
19:3,7 20:21
39:23 40:7,18
43:14 46:7
56:22 85:23
89:12 90:11,12,
15,18,21,22
92:12 110:21,
22 127:1
130:20,24
131:3,9 139:1,6
143:14 144:17
150:2 172:14
173:3,8,21
175:23 176:1,6,
19 178:6
179:22,24
184:7 185:5
186:2,4

**areas** 42:16
43:2 90:24
142:8 174:15,
18 186:13

**argue** 129:2

**argument**
115:9 127:7
129:1

**Argumentativ
e** 158:10

**Arizona** 25:19

**armed** 103:6
155:24 178:5

**arrest** 84:24
85:9,12,17
91:22 95:14,20
100:23 104:3
109:24 111:9
125:2 138:21
140:14 176:13
180:5

**arrested** 46:8
88:20 110:9
176:6,15,20
180:21

**arrestee**
116:15 138:22
139:3,21 140:4,
15,19,24
141:10,16,23
142:5 181:2

**arrestee's**
140:6

**arrestees**
93:10 115:17
128:14 170:22

**arresting**
59:19 85:7
86:24 87:3
138:1,18,20
182:22

**arrests** 80:3
87:17 96:14
126:11 151:20
169:1

**arrival** 172:21
173:2 176:16

**arrive** 185:15

**arrived** 85:8

**arriving** 85:13
173:3

**arson** 170:19

**ascertain**
140:10

**aspect** 96:23
97:1 185:1

**assault** 103:7
155:25 178:5

**Assembly**
125:8 179:6



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

**assembly's** 144:23 178:25

**assess** 185:20

**assigned** 18:23 42:15 56:5 87:24 103:14,20 112:9 114:12 122:4,5 139:23 140:20 141:18 144:14 156:1,2

**assignment** 139:2 144:19

**assist** 97:5 98:18 99:8 100:20 103:14 122:4,5 156:1,2

**assistance** 48:15 100:15 101:23 103:16 122:7 156:4

**assistant** 139:22 140:20 141:18 169:6, 13

**assisting** 96:24 97:20 98:24 103:22

**assume** 35:3 157:15

**attachment** 30:12 121:14

**attacked** 75:20

**attempt** 39:10 55:13 57:3 58:12 87:5,19 88:10,19 89:4 154:12

**attempted** 70:25

**attempts** 41:8 45:13 80:19 81:2 107:7 112:22 162:1

**attend** 12:21

**attending** 7:14,15

**attention** 48:17 93:17 105:2 123:17

**attorney** 20:7, 15,24 25:23 139:22 140:20 141:18 169:1,7, 13 181:16

**attorney's** 135:20

**audio** 116:14 135:25 148:14

**audit** 180:15

**Audy** 96:18 116:16,17 130:15 173:15 177:13

**August** 11:18 53:2 183:13

**author** 66:21 124:16

**authoritative** 95:22

**authorities** 24:15

**authority** 21:22,23 66:22 83:23 84:19 125:4 126:18

**automatic** 71:21 102:25 122:3 155:23 181:18,22

**automatically** 182:11

**avoid** 56:17 58:7

**aware** 29:24 47:8 48:2 49:24 65:17 118:10 184:21 185:12 190:7

**awkward** 179:18

———————————

**B**

**babysitting** 131:17

**Bachelor** 23:4

**back** 15:24 18:11 33:14 53:10 54:8 64:17 69:14,18, 25 70:16 71:1 91:4 100:19 106:20 108:25 109:2 121:18 156:14,18,22 164:23 175:16 187:22 191:23

**bad** 54:15

**bag** 178:13

**bags** 177:16

**ball** 178:17 182:6

**bare** 37:17 38:10,20

**based** 67:5,11 78:10

**basic** 135:17, 18 185:16,18

**Basically** 97:24 133:9

**basics** 185:17

**basing** 64:18 66:24,25 67:3

**basis** 38:19 40:24 44:15 88:16 89:7 133:19 180:11

**Bates** 23:25 52:24 92:23 100:8 104:16 123:20,21 137:7 138:6 142:23,25 151:23 164:20, 21,23 167:4 171:18

**bathroom** 106:6 113:12

161:25 185:17

**bear** 27:17 178:2

**bears** 167:4

**beat** 148:19

**beginning** 56:4

**begins** 105:3

**behalf** 7:17 11:25 19:23 66:9

**Bellofatto** 7:4

**bench** 185:12

**benefit** 72:25 82:2 135:6,8

**benefits** 70:10 73:1

**Bethany** 7:4 11:9 71:1 148:17

**BIA** 118:18

**bill** 132:4

**birthday** 126:6

**bit** 12:12 44:21 52:16 92:6 121:5 139:8 165:21

**blank** 140:5

**Bless** 175:8

**block** 153:22

**blocked** 153:22

**bolded** 63:20

**bonafide** 10:6

**book** 130:12

**bottom** 59:9 104:17

**Boudreau** 7:10

**bounced** 70:16 71:1

**boundaries** 19:7

**boy** 16:24 173:25

**brain** 69:21

**brand** 60:5

**break** 10:9 18:13 52:11,12, 14,19 69:7,14 70:17 93:24 94:3,16 108:4, 10,14,16,20 152:10 156:10, 11,13 164:22 165:5

**breaks** 113:12 161:25

**Bridgeport** 21:6

**briefly** 19:7 20:14 21:6 22:25

**bright** 76:14

**bring** 18:10

**bringing** 145:7 178:3

**Brittany** 7:22 38:1

**broader** 14:7 159:13

**broken** 38:16

**Brooklyn** 23:5

**brother-in-law** 181:3

**brought** 48:17 145:14 173:7 174:15 175:23

**building** 89:20 90:8 128:19 129:10 130:20 134:9

**bunch** 111:13 132:22

**bureau** 22:8,9 64:9,14 66:21 126:4 183:2

**Bureau's** 22:10



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

**C**

**California** 90:16

**call** 10:7,8 40:6,7,16,23 42:19 77:19 105:1 106:16 115:17 116:13 117:4 121:21 130:14 145:8, 22 149:21,24 161:25 178:10, 16 186:13

**called** 19:23 20:4 43:14 66:20 89:25 90:1 96:18 97:4 98:18 99:18 105:3 109:9 110:21 114:19 117:3 157:3 167:3 184:1,10

**calling** 178:20

**calls** 17:9 37:12 38:15 40:19 42:11 43:24 47:3,23 50:19 53:23 54:9 57:11 78:8 80:4 81:22 130:7 169:2 174:5

**capacities** 98:17 183:25

**capacity** 19:25 21:14 99:20 118:10 183:24

**caps** 35:16 57:3

**captain** 21:5 145:24

**card** 95:24 142:25 143:3

**cards** 142:14

**care** 154:14

**carried** 19:22

**case** 7:12 9:12 10:5 11:19 13:9,19 15:11 28:1,21 29:13 31:15 34:17 37:5,6,15 38:17 39:13,21 40:22, 24 47:11 48:3, 19 50:10 61:12 78:11 83:10 87:25 88:15 99:23 101:4 102:2,3,12 103:17 112:10 120:15 122:8 124:14 130:16 132:23 134:1 135:21 155:3, 16 163:12 167:3 169:20 175:5 181:13

**case-by-case** 38:19 88:16 89:7 132:5 180:11

**cases** 13:8,10 14:13,19 48:1 50:9 89:22 90:7 96:14 99:4 103:5,10,14,20 122:3,5 140:15 155:14,23 156:1 169:17 177:16

**casing** 161:5

**casings** 161:3

**catch** 33:6 111:24

**categories** 98:1

**cell** 125:18 135:2 182:2 189:15

**center** 96:19

**centered** 59:11

**central** 43:9,14

**certificate** 175:2,17

**cetera** 59:18 85:17 87:25

**chance** 11:19 58:25 60:8,9

**change** 21:23 22:11 53:20 54:7,16 59:22, 23 63:24 64:6

**changed** 22:8 64:8 83:21

**changing** 22:8 108:13

**chap** 167:9

**chapter** 16:18, 19 17:5,16 18:1 30:11 54:1 125:4,5 126:18 137:9 153:8 162:14,18 166:2,9,10 167:6,11

**characterizing** 50:20

**charge** 116:5,7 172:22 173:6,7, 12 175:24 176:2,6,9,21 180:4 181:23 183:21

**charged** 28:21 29:12 83:2,6 98:1 100:24 101:18,19 103:5,21 137:1 138:4,14 155:24 181:15 182:18

**charges** 140:19 141:3,4, 6,8,17 181:17 182:10

**charging** 173:16

**cheat** 170:21

**check** 93:23 94:3

**checklist** 161:22 162:2,6

**checkup** 139:20

**Chicago** 7:18, 21 12:14 14:10 19:11,12 26:6 56:12 57:8 66:9 68:19 69:2 74:11,21 75:5 76:20 79:11 94:24 96:8 123:12 131:12 133:23 167:3

**chief** 16:3 65:1 66:22 145:18, 25 146:1 155:1 164:19,24 165:1 166:22 171:13 188:10

**child** 96:15 97:16 98:9,12 99:7,9 179:20, 23 183:23

**children** 96:15 98:2,3,6

**circumstance** 75:12

**circumstances** 40:2 42:12 48:1,18 50:10 56:21 70:8 75:16 78:11 83:7 95:17 96:2 133:20 168:4 177:8 180:13

**city** 7:21,23 11:18,19,25 12:14 14:10 19:10,24 66:9 154:21 164:8, 17 165:7 166:8 167:2,3 171:18

**city's** 12:1 13:4 14:19 67:1 163:4 174:23

**City22234** 164:24 167:4

**City_ jakes00922** 24:1

**checkup** 139:20

**City_ jakes00926** 151:24

**City_ jakes01007** 52:24

**City_ jakes1009** 123:11

**City_ jakes1119** 123:22

**City_ jakes1236** 137:7

**City_ jakes1237** 138:2,8

**City_ jakes23970** 100:9

**City_ jakes23996** 142:23

**City_jakes927** 92:23

**clar** 47:12

**clarification** 47:15 54:13 98:15

**clarified** 48:21 182:6

**clarify** 42:18 52:7 87:16 97:10,23 148:9 180:20 181:12

**clarifying** 26:21 42:22 86:25 97:24 174:10

**clear** 9:7 11:7 22:1 26:10,16 28:20 29:11 33:8,21 34:9 45:9 48:4,23 49:6,20 59:11 86:17 87:1 106:20 178:1



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 57 of 78 PageID #:9111
The Deposition of SAM COMMANDER, on September 21, 2021
199

182:9 191:21

cleared 169:17

clipboard 91:9

close 31:23
62:9,10,13 67:9
108:8,19

closed 19:2

closer 32:14

clusters 100:3

coaching
62:21,25 63:5

code 143:8

coerced 77:25

colleagues
150:5

collect 161:2

college 23:1,3

column 173:14

combating
70:8

combined
64:23

combo 32:13

Command
163:7

commander
7:8 8:1,7,14,22
11:21 13:3 15:3
18:11,16,18,22,
24,25 19:17
20:10 24:7
31:19,23 32:11,
23 33:22 38:9
42:6 43:17
56:22 63:8 64:5
65:24 66:3
79:10 109:2
136:1 138:11
143:1 144:22
151:15 153:11,
20 154:1
156:24 163:7,
14 165:10
166:17 187:9,
25 189:7 192:2,
10

commanding
21:3,13

committed
154:22

committees
19:21

common
44:18,22 45:10,
18,25 46:6,20,
22 47:17 48:5
51:14 176:18
177:10,11
178:11

communicate
10:13 169:1

communicatin
g 116:17

communicatio
n 96:16 116:12
142:4

compiled
120:23

complaint 9:5,
12

complaints
141:24

complete
85:12 88:24
109:23,24
110:8 111:13
135:17 138:20
139:2 141:22
177:1

completed
11:8 96:3
111:11 136:19
141:7

completely
76:4

completing
183:9

completion
56:11 94:23
95:4

complex 85:18

compliance
96:12

compliant
120:8 181:7

complied
157:11 161:17
162:11

comply 87:22
93:16 132:12
145:19

complying
119:10

compound
51:25 113:15

computer
9:22,23,25
31:24 129:23

concept
132:12 190:4

concepts 84:3,
15

concern
148:15

concerned
33:19

concession
34:11

concessions
167:15 172:1

CONCLUDED
192:14

concluding
133:25

conclusion
111:8

conditions
71:20 113:8,14
184:12

conduct 71:17
97:15 118:17
119:20 157:17
160:6

conducted
24:24

conducting
36:1,9 48:25
76:25 107:25
167:15

conference
7:7

confession
81:25 168:3,5,
12 169:8

confessions
167:24

confident
118:14,19
158:16

confined 56:8
125:12,17,24
127:15,21
128:4,9 129:8,
20 134:18
135:1,3

confinement
125:1,11,13
126:17,20
127:16,22
134:19

confirm 23:22
135:9 154:25

Confirmed
135:10

confront
157:24 159:4,
22 160:4,19

congratulation
s 18:19

conjunction
141:23

connecting
117:24

consecutive
24:1 92:23
100:9 142:23

consent 20:25

consideration
78:12

considered
37:7 39:8,18
40:14 78:6
83:20 115:11
191:16

consist 16:2

consistent
158:11

constitute
37:18 38:10

constitutes
37:2

constitution
61:17

constitutional
22:9 26:10 61:2

contact 37:9
39:2,10,15 40:8
41:24 42:8
46:25 72:3
77:8,18 80:5
81:2 86:11,12
88:19 89:4
100:25 101:14
112:23 129:9
132:9 142:4
151:19 162:1

contacting
86:2

contained
12:25 84:1
140:14 172:17

contemplate
41:4 44:1,4
84:14,23 118:6

contemplated
48:14 79:12
117:14

contemplates
50:24 85:8,12
101:13 103:9

contents 16:17
167:10

context 74:25
75:24 76:5,7
111:21

continuation
55:17

continue 69:24

continues
128:16

contribution
111:4



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 58 of 78 PageID #:9112
The Deposition of COMMANDER ERIC KONTROWSKE, taken on September 21, 2021

200

control 15:8,15
92:3,22

convened 7:7

converses
73:1

Cool 124:21
175:20

copy 9:8,11,14
10:18 139:25
149:13 174:19,
21 188:16

corollary
120:17

corporate
11:25 12:14
13:4 67:1

correct 9:13
20:10 25:4
26:3,11,14,23
27:5,6,8,9,14,
15 29:3,8,9,14,
15 30:18,19
31:11 34:2,7,8,
11,14,22 35:17,
21 41:5,12,17
44:14 45:15,20
46:13,18 48:9
49:18,19 50:17
51:3 53:14,21
54:18,24 55:1,
3,24 56:6,10
57:9 60:21
61:3,6 62:1,6
63:23 66:14
67:24 71:21
72:14,22 73:10,
16,20 75:25
76:5,13,14,23
77:2,3,6,10,12,
25 78:3,7,19
81:4,17 82:6,
21,22 83:1
86:14 91:11,12
95:4 97:2,3,21
101:15 104:22,
25 106:23
112:14,16,20,
25 121:11
122:19 123:14
124:7,13
126:24 129:11
131:25 133:1

139:24 140:24
141:11,20
142:2,7,10
143:7,12 144:5
146:3,8,13,22,
23 155:10
157:8 158:19,
22 161:17
162:11,12,20
166:7 169:20
170:4,25 172:3
173:1,5,9,22
178:7 179:1
188:12,14,15
189:10 190:5,
15,21,22
191:12

Corrections
126:2

corrective
50:16

correctly
165:24

could've 54:19

counsel 7:13,
15 8:8 9:8
10:13 19:20
20:8,16,18
188:3

count 127:13

counteract
169:8

county 54:3
126:20,22
128:19 154:19

couple 177:16
188:1

court 7:3,5,11,
25 8:5,13,19
11:5 24:11
25:18,22 28:2,
22 29:13,14,22,
24 30:1,6,9
32:5,8,22,25
33:3,6,11,12,17
34:18 53:20
54:2,8,14 61:12
68:8,15,21
69:16,18 70:20
84:7 96:13

101:4,22
102:12 104:7,
13 106:18
108:23,25
110:1,2 111:12,
20 113:24
114:4,14
115:11,13,20
116:3,9,11,15,
19,25 119:11
120:7,8 121:7,
10,23 122:16
129:13 135:19,
23 136:20,24
143:19,21
144:9,23 145:1,
12,19 146:2,7,
17 147:2
148:18,24
149:3 152:5,14
153:8 154:7
156:22 178:25
181:21,24
182:6,12,13
186:3 187:20,
22 190:16
192:11

courts 168:1

CPD 16:10
19:19 20:3,8
24:24 50:4
54:23 74:10
78:18,24 94:14
124:12 133:23
157:20

CPD's 71:12
146:7

create 20:22

created 22:8

credibility
168:3

credit 102:11

crime 83:3,7
85:18 97:20
114:17 116:12
135:18,19
139:6 161:4

crimes 96:14
98:1,5,11,12
183:23

criminal 28:2,
22 29:14 34:18
61:12 97:15
98:19 103:6
117:25 125:24
141:24 155:25
173:7 182:5,12

crisis 187:3

CROSS 187:23

crossover
99:4

curious 66:7
93:23 185:24

current 19:25
20:2,17 87:22

curve 178:17
182:6

curveball
177:21

Cus 26:20

custodial
15:10 24:9,10,
23 25:7,14
26:20,22 30:18
31:7,14 34:1
36:1,5,20 43:20
45:6,14 46:17
47:19 49:1
51:15 52:3 65:5
69:23 71:13
74:25 75:13,25
76:5,8,25 80:2,
20 81:3 89:5
99:3,12,17
104:2 105:16
107:16,25
109:22 110:13,
23 111:5,14,15,
21 113:8,14,18
117:4 131:23
132:1,2 136:15
150:19 162:19
163:18,21
166:3 169:25
184:2,8,13
185:13,22
189:19,22
190:4,8,11,23
191:8,14

custodian

38:12 59:18
87:20 89:12

custody 24:13
26:7 29:6 41:11
49:25 55:11,24
56:3,5,12,18,23
57:2,20 58:8,16
68:9 70:9
71:21,23 72:13
75:10 77:22
86:1,12 89:16
90:2,23 91:5
92:9 93:6 94:6,
22,24 115:11
116:16 122:16
126:6 129:10,
14 130:10,17,
18,21 131:15,
20 132:4,7,13
133:1,2,3,9,10,
13,23 138:22
140:18,24
141:9,16
143:10 146:18
147:1 154:11,
16 161:23
168:21 179:10,
14 180:16
185:3,8 188:5,7
189:12 190:24
191:10,16,19

customs 12:2

CV 7:12

_____

D

daily 56:11
58:3 94:23 95:4
133:22

date 23:10
53:15 124:12,
19 146:6
150:11 168:17
183:12

day 7:6 42:20
46:7 76:7 174:8
190:18

DCFS 99:5

DD 53:5

dealing 13:21



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 59 of 78 PageID #:9113
The Deposition of COMMANDER Eric GLOSNIKOW, taken on September 21, 2021

201

deals 124:25
162:19

dealt 170:3

December
12:3 24:4 44:24
150:23

deception
70:9 72:16,19

decide 18:12

decides 70:7

decision 25:19

decree 20:25

deep 98:4

defend 75:22

defendant
7:21 192:1

defendants
37:24

defending
7:23

defense 101:4
102:13

define 31:17
96:7 189:21

defined 36:10
188:7,9 190:8,
11,24 191:21

defines 24:8,
10 126:20

defining
128:16

definition
24:16 77:16
133:8 189:12
190:20 191:19

delay 68:10
122:18 145:7,
15,21 146:19
153:15 154:17

delineate
168:7

delineated
103:22

delinquent

153:9

demands 67:6

dep 10:14
17:20,23 18:9

depart 46:24

departing
173:21

department
15:8,15,20 26:6
27:11 40:15
45:20 57:9
58:21 67:14
68:19,22 69:2
73:18 74:11,21
75:6 76:21
79:11 83:16,20,
25 84:6,18,20
87:23 88:4
92:3,22 93:17
96:9,11 117:20
118:1 119:10
126:2,3 131:12
148:11 149:10
151:2 160:8
161:7 169:14
170:20 174:4,
12 175:3
179:12 186:15

department's
123:13 160:17

department-
21:20

department-
wide 64:12
83:23 84:17

departure
172:23 173:19,
20

depend 37:5,
15 38:17 40:21
48:3 78:7 95:17
96:1 132:5
177:22

depending
39:21 42:12
47:10 48:1,18
50:9 116:11
177:8 180:13

deponent

38:13

deponent's
66:16

depose 8:25

deposed 9:1
13:19,22 18:17

deposition 7:8
11:14,17 13:11
15:16 16:15
17:8 18:21
52:23 53:6
73:11 83:13
94:9 121:4
144:25 147:9
151:25 153:12
154:9 158:3
160:2 162:13
163:3,9,12
165:11 166:1,4,
6,21 171:10,20
192:14

depositions
92:18

deprive 77:1,4

deprived
24:14 26:8

describe 45:22
46:3 95:19 96:7
115:7

describing
115:5 132:7

description
168:25

designated
23:21 52:6,23
53:1 100:1
142:6 154:19
182:1

designating
11:16

designation
96:19

designed
24:19

desires 67:21

desk 58:5
59:10,17 85:14,

22 86:19,24
87:2,7 90:6
130:17 131:18
134:10 178:10
180:11

desks 174:18

destroyed
175:16

destroying
175:4

destruction
175:18

detachable
32:13

detailed 20:21

details 168:2
169:6

detain 133:21

detained 54:3
126:21

detainees
115:15,17

detective
15:19,23 16:5,
7,20,23 17:6
18:2 19:1,3,4
39:23 40:7,18,
22 42:16 43:2,5
46:24 48:5
50:7,12,13
53:1,16,17
55:11,22 56:5
57:1 59:20,25
60:17,19 63:22
64:5 66:14,20
67:13 72:19,25
75:21 76:11
78:15 84:20,24
85:17,25 86:18,
21,24 87:4,17
89:20 90:4,13,
22,24 91:17
92:8,11 95:13
96:24 97:5,11,
12,19,25 99:8,
19 100:16,20,
24 103:15
112:9 113:13,
19 114:11
120:15 122:5,

11,12 127:1,8,
12 128:11
129:21 130:4,
24 131:3 139:6
141:13,21
142:3 143:13
144:12 149:22,
23,25 155:12
156:3 162:14,
19,20 163:20
164:7,25
165:25 166:21
168:8 169:23
170:2,17,23
171:11,17
172:15 178:3,5
181:9,16 182:4,
18,19 183:6,16,
17,25 184:1,7,
12 185:5,18,25
186:2,10,11,22,
24 189:10

detective's
60:15 182:3

detectives
12:24 16:4
41:16 45:19,23
46:4 47:17 51:2
55:8 59:12,15
60:24 61:1
64:9,14 74:24
75:9 76:21,24
77:21 78:16
83:24 84:11,14,
16 86:9 88:9,
14,18 89:3,11,
22 91:4,10
98:19 101:14
106:15 113:1
121:20 130:17
131:8,11,12
132:10 146:15
147:20,24
148:6,10,11
149:9 150:5,10
157:2,11
166:23 167:12
168:4 169:5,11,
18 171:2,13
186:12,13,16
187:4

detectives'
110:18 112:21,
24 113:5

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 60 of 78 PageID #:9114
The Deposition of COMMANDER ERIC KONZROWE, taken on September 21, 2021
202

detention
87:23 96:19
128:17 129:15
130:15 133:15,
20,21,22

determination
116:18 185:10

determine
56:22 74:14
116:14 180:15
185:6 186:5

determining
169:19

development
21:2,11 66:19
146:5

deviate 46:22
48:5

deviating
48:13

deviation
47:17,21 48:8

difference
63:12

differences
63:10

differently
58:2,4 62:5
158:8

difficult 118:2

direct 8:20
63:10

directed 120:5
146:6 169:14

directing
109:18 119:8

directive 16:2
53:9,19,25
54:2,6 59:19
60:25 66:14
94:10 124:16
139:11

directives
15:20,21 53:4,5
119:6 157:20
159:25 161:21
162:8

directly 160:6

directors 20:2

disbanded
98:11

discharge
173:17

disciplinary
69:22 158:15
159:15,17
161:13

discovery
20:7,16

discussed
58:13 78:23
99:2

discussing
58:14

disposal 175:2

disposed
175:24 176:7

disposition
85:11 133:25
134:11 172:22
173:10,12,14
176:25

distance 32:17

distribution
149:20

district 7:11
19:10,13 20:20
21:5 89:17
90:6,18,19,25
92:12 130:3
173:4,8,21
174:15 175:23,
25 176:6,20
179:22,24

division 7:12
16:6,7,11,20,23
17:6 18:2 19:1,
4,11 22:14 42:8
43:10 50:7,13
53:1,9,16,18
55:22 59:25
60:17,19,25
63:11,22 64:6
66:14 67:13
86:2,13 87:6,

11,24 88:19
89:20 90:4
92:11 96:24
97:5,12,19,25
99:19 108:12
122:11,13,23
123:13 124:10
126:3 130:4
137:5 139:1,6,
17 141:13,21
142:3,15 155:6
162:14,20
163:20 164:7,
25 165:25
166:21 169:23
170:2,17,23
171:11,17
172:14 173:3
179:5 180:22
183:14,15,23
185:25 186:11
189:10

divisions
99:21 184:2

docu 111:25

document
25:20 55:14
57:5,17 63:4
86:19 88:10,15,
18 89:3,8 95:3,
16 108:19
109:19 110:13,
19,24 111:22
112:1,8,12,17,
22 113:2,5,13,
19 114:3,10
115:24 118:11
119:9 120:15,
21 135:16,17
144:8 151:22
161:16 166:24
167:6 168:4
174:14 189:13
190:7

documentatio
n 88:22 95:21
96:1 110:16
111:7 144:11

documented
89:2 162:4
180:6

documenting

120:6,16
175:18

documents
9:15 109:13
164:10 188:8

dogs 9:5,6

Donnell 7:16,
17 8:10,21
17:13,15 18:6,
14 31:9,25 32:9
33:8,18,20
37:16,25 38:3,
8,22 40:11,13
42:1,4 51:11
52:18,20 55:19,
21 62:17,21
63:2,6 65:14,
18,23 69:8,11,
19 70:24 71:5,6
79:5,8,17 80:6
82:14,19 101:8,
10 102:10
104:13 105:25
106:3 108:1,10,
15 109:1,14,17
110:4 112:1,3
115:25 117:2
120:3 123:21,
24 134:25
135:7,11 136:9,
11 138:8,10
150:6 151:8,10,
13 152:1,7,13,
18,20,23 153:4,
18,23 154:4
156:8,17,23
163:1,6,17,25
164:2,6,11,18
165:4,18,21
166:13,15
187:6,14,19
188:4,24 189:3,
17 190:9 191:1,
6,23 192:1,5,9

door 134:6
177:3,20
178:18

dots 117:24

downtown
20:21

drug 182:24

DSO 15:23

duration 77:23

durations 72:6

duties 12:18
21:20 109:6,8

duty 42:25
117:15,16,21,
25 119:22,23
152:25 161:6
186:14

DVSO 15:25

---

E

---

e-mail 70:16,17
152:10,15,16
188:21,23

earlier 49:7
53:8 69:24
78:23 79:9
80:16 83:16
98:25 127:14
128:22 134:4
158:2,21 159:2,
5 162:13 163:7,
10 180:20
183:11 189:18
191:13,17

early 98:7

easier 123:6
178:13 189:1

easily 85:19

Eastern 7:12

easy 117:15

echo 165:21

echoing
165:22

edits 16:25

education
23:1,2 74:6,13

effect 12:3
24:23 30:10
64:10 146:2
147:3 149:12,
22,25 150:15
174:13 179:14

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

**effective** 24:2, 4 53:15 124:12, 19 150:10,23 162:15

**effects** 149:17

**efficiency** 165:12 166:4

**effort** 36:25 37:2,7,18 38:10

**efforts** 151:3

**electronic** 174:14

**electronical** 174:20

**elicit** 24:19

**emergency** 10:6 47:9

**emphasize** 64:25

**emphasizes** 64:14

**employed** 160:8

**employment** 74:6,13

**empowered** 116:9

**enactment** 69:3 178:25

**encompasses** 24:17

**encompassing** 159:13

**end** 134:10 165:22 183:16

**enforcement** 24:12 126:1,3,9 154:10,17

**English** 74:7, 14

**enhanced** 66:23 151:18

**enrolled** 23:6

**ensure** 56:5,8,

11,14 57:24 61:23 62:9 63:16 64:19,20 65:1,6 67:6,12 68:6 77:7 94:23 95:3 109:22 110:7 111:18 113:23 115:21 122:14 143:24 146:16 161:8

**ensuring** 117:8

**entered** 91:6 130:14

**entering** 133:25

**entire** 84:19 98:8 111:4 146:21 164:17, 18 166:5 177:1 183:21 186:15

**entirety** 165:9

**entrance** 96:17

**entry** 176:10 177:1

**enumerated** 139:10

**Eric** 7:8 8:3 144:17 178:12

**escape** 56:20

**escorted** 128:4,10,13

**essential** 169:19

**essentially** 105:15

**establish** 168:3

**established** 74:5

**et al** 7:10

**Evanston** 7:24

**eventually** 130:18

**evidence** 60:23 62:3 107:14 134:14 161:1,3

**exact** 62:14

**examination** 8:20 142:14 187:23 191:5

**examples** 76:7

**exceed** 129:17 133:16

**exceeded** 186:6

**exception** 51:1

**exceptionally** 169:17

**exceptions** 126:7,8,13

**excessive** 119:22

**exchange** 81:25

**excuse** 36:22 53:23 55:2 66:3 80:23 87:2 117:9 130:7 148:13 151:22 153:16 158:9

**executed** 123:12

**exempt** 84:16, 20

**exercise** 168:25

**exhausting** 13:11

**exhibit** 11:13, 16,22 12:25 23:21,22,23,25 25:6 52:6,13, 22,23 53:1 55:5 58:24 59:1,3 63:9 65:13 69:25 70:23,24 71:8 81:11 83:13 92:17,19, 22 93:2 94:19,

21,25 95:3 100:1,5,7,8 109:15 121:14, 18,19 122:2,11 123:1,2,3,4,11 137:5 142:13, 19,22 146:14 150:20 151:23 152:2,3,4,5,6 153:6 155:12, 18,19 163:24 166:20,25 171:10,11,14, 17 172:5 188:13 189:9 190:25 192:13

**exhibits** 9:4,7, 8 10:18 65:17 70:16,18,25 71:4 164:4,7,14 165:8,13 166:1 188:23

**exigent** 56:21

**existed** 54:23

**existence** 19:1

**expand** 110:6

**expect** 119:24, 25 121:2

**expected** 14:21 129:16 133:15

**experience** 63:17 67:3,5,11 150:2

**explain** 35:23 95:19 99:13 103:19

**express** 27:12 28:3 34:20 61:16

**expressed** 35:8

**expressly** 26:9

**extend** 56:24

**extent** 150:8

**extra** 33:24

**eyes** 27:18

**eyewitnesses** 12:9

**F**

**face** 54:6

**facility** 114:20

**fact** 67:16 74:7 83:9 114:22 129:16 133:16 145:20 190:20

**factor** 78:11,13

**factors** 132:22

**facts** 37:15 48:3 132:6 135:18 184:25

**factual** 41:2 83:6

**fail** 174:1

**failed** 94:11

**failing** 118:1

**fair** 9:20 41:2 72:11 95:6 118:7 119:5 120:4 157:1 160:23 169:22

**fall** 112:8

**familiar** 58:24 65:10,24 167:8 190:3

**familiarized** 167:9

**family** 37:8 82:24,25 116:19,20 169:1

**fashion** 161:17

**fast** 126:16

**fault** 95:1

**faxed** 149:19

**February** 18:21 19:17 20:19 21:7

**fed** 106:5



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

113:12

**Federal** 126:4

**feel** 118:3
132:3 191:15

**felonies**
138:15

**felony** 139:23
140:19,20
141:3,6,18,24
151:20 182:9,
10

**field** 15:10
84:7,9 85:3,10
91:21 95:14
138:21 144:15
150:19

**figure** 94:16

**file** 140:11

**files** 9:23

**fill** 20:13
136:14

**filled** 140:14

**filling** 182:4

**final** 134:6,11
151:23

**finally** 57:1

**find** 49:16 92:1
94:21 118:19
119:24,25
158:16 170:12
184:12

**fine** 18:15
23:21 37:25
38:1 52:18
69:13 108:22
124:17 129:25
148:19 151:10,
14 153:25
164:1 165:13

**fingerprint**
126:4 181:5

**Fingerprinted**
102:21

**fingerprinting**
128:6,9,12
181:9 183:7

**fingerprints**
125:1 140:10

**finish** 15:2
64:4 81:13

**finished** 156:9
187:7

**fit** 83:7 115:6
129:3 132:3,12

**five-** 152:9

**five-minute**
156:10

**fixed** 165:23

**flagrant** 160:5

**flexibility** 44:2,
6 51:7,18
63:14,15,19,21
64:24

**floor** 90:7
187:5

**focus** 56:2
84:9 96:22
98:17 99:14

**focused** 71:7
99:11

**follow** 85:19,20
118:1

**follow-up**
139:7 141:23
191:7

**food** 77:5
112:18 161:24
168:22

**force** 74:25
75:4,19,22,25
76:4,9,22
119:22

**forgive** 143:17

**forgot** 52:10

**form** 17:10
21:17 22:4,17
25:12 26:19,24
28:13 29:18
31:3,13 34:12,
25 36:13,22,23
37:11,19 38:14
40:19 41:13,25

42:10,17 43:8,
24 46:1 47:2,22
48:10 50:5,18
51:4,24 55:2
57:11 60:3,22
62:2,7 64:7
66:1,3,15 67:2,
7,15,25 68:14,
16 71:14 72:8
74:16 75:2,7,11
76:16 77:11
78:1,8,20 79:18
80:11 81:22
83:4 86:4 88:13
89:6,14 97:9
98:22 101:16
109:19 110:15
111:2 113:15
115:2 116:2
117:9,10
118:12 119:14,
16 132:15
136:17 143:23
144:4 146:9
147:4 150:24
151:16 155:9
157:7,13 158:9,
10,23 159:8
162:5,22 170:8
172:20 174:14
175:17 180:17
184:14 186:9
191:1

**formal** 107:6,
15 116:10

**format** 14:25

**forms** 70:10
73:6 81:14 84:2
175:12 182:4

**forwarded**
140:1,7

**found** 44:19
81:9 95:23
98:22

**foundation**
29:18 42:17
43:8 47:2,22
54:10 57:11
62:2 66:4 71:14
78:20 80:11
91:1,18 98:23
116:2 147:4
170:8 174:5

180:17 184:15

**frame** 25:4
44:23 45:24
72:4 84:1 88:5
96:9,10 117:5
130:2,9,12
184:6

**free** 132:3,13
180:5 191:15

**freedom** 24:14
26:8

**freeze** 175:4

**friend** 28:7
35:20 36:11,12
38:12 39:2,22
40:8 41:9 44:8
45:12 46:13
49:5,17 61:25
66:12 112:23

**friends** 40:17

**front** 9:3 11:13
23:20 59:2
100:1 122:22,
24 136:4
162:23 165:16
166:17 174:18
180:10

**fulfill** 68:7
122:15 146:16

**full** 164:12

**furnish** 169:6

—— **G** ——

**games** 16:1

**gave** 161:22

**gears** 96:5

**Gen** 92:21

**general** 12:2
13:1 14:8 15:4,
6,13,21 19:19
20:2,8,16,18,24
23:18 24:2,3,8,
22 25:2,10 26:2
27:1,22 28:11
30:16,22 41:1,
7,16 51:19
54:23 65:10,25

68:4 69:21,25
71:8 73:5 81:11
92:19,21,24,25
94:10 109:16
119:23 125:7
137:17 144:23
147:25 148:10
149:10,11,13,
14 150:9
157:11,14
160:16,22
170:4,16,24
171:3 178:25
179:6

**generally**
42:24 143:11
148:21 175:19

**geographic**
19:7

**George** 7:20
17:15 31:25
33:8,18 42:1
55:19,20 56:1
62:17 63:2 64:4
136:12 152:1,8
153:19 163:1
165:18 166:13
187:14 188:25
192:2

**giant** 32:19

**give** 8:16 33:12
35:7 52:8 60:8
92:15 164:20,
21 167:17
189:3

**giving** 37:25
95:24 135:18

**glance** 135:20

**glitch** 11:2

**glitched**
129:23

**good** 7:3,16
8:22,24 18:20
26:1 69:6,15
91:25 96:21
97:23 108:7,11,
17 124:17
154:2

**governing**
53:13

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

**grade** 96:20

**graduated** 23:1,3,5

**great** 24:7 26:2 49:20 95:10 117:13 123:6 142:21 150:17

**group** 181:20

**grouping** 120:1

**guardian** 39:9, 11,17,22 45:4 46:12 59:18 87:5,19 106:13 151:3,19 162:1

**guess** 18:6 29:21 47:15 50:22 51:12 59:23 92:25 119:5 131:7 132:24 160:15 166:22 170:15 185:1

**guide** 117:1

**gun** 103:6 155:25

**guys** 17:19 84:21 164:12

### H

**half-hour** 118:3

**hand** 8:15 37:15

**handcuffed** 113:11 115:3,6, 8,10 128:18,23 185:12 189:15 191:22

**handcuffs** 115:1,5

**handed** 149:23

**handwritten** 121:7

**hanging** 180:10

**happen** 35:9, 11 176:17

**happened** 186:1

**happening** 151:11

**happy** 11:3 32:1 52:24

**hard** 9:7,14 10:18 14:25 40:25 129:4 174:19,21 188:16

**head** 15:7 32:14,19 59:8 118:2 119:3

**headed** 99:15 144:17

**heading** 99:15

**hear** 11:1 32:2 33:10,22 51:10 56:9 79:3 82:14 132:6 148:15

**hearing** 31:19, 25 36:9 159:5

**Heather** 7:16 8:24 65:9,13 94:18 115:23 136:6 138:7 192:4

**held** 9:7 26:14 72:6 77:23 113:9,10 128:7, 8 129:20 130:10 131:24 154:16 180:16 182:15 185:3

**helpful** 52:7 58:22 59:7 103:17 122:7 155:15 156:5 170:18

**helps** 179:25

**hesitant** 184:23

**Hey** 179:11,13 185:16

**higher** 96:20

**hired** 148:11 149:9

**history** 147:5

**hit** 75:9 76:11

**hold** 78:15 79:22 92:20 93:14 131:13, 16,17 136:10 137:4 170:12 176:9

**holding** 57:19 143:10 182:1

**holds** 190:16

**home** 7:18 78:6 81:20,24 82:4 96:18 116:14,16,17 130:15 134:7 173:15 177:13

**homicide** 12:8 169:17 178:5

**Hood** 13:9 18:9 164:8,13,23 167:3 171:18

**Hood/ washington** 164:16

**hope** 51:8

**hour** 104:15 134:13

**hours** 54:4 56:24 57:20,21 108:8 114:24 126:23 127:4, 11,12 129:17, 21,22 131:13, 16,20,22 133:1, 10,16 143:5,10 161:24 180:16 185:3 186:6 189:23

**housing** 128:19

**humanely** 168:22

**hungry** 185:16

**hypothetical** 37:12 38:15 40:20 42:11 43:25 47:3,23 50:19 132:18

### I

**ID** 8:7

**idea** 54:15 178:8

**ideas** 59:15

**identi** 183:2

**identical** 165:10 172:8

**identification** 11:22 13:20,23 23:23 52:13 59:3 93:2 100:5 123:2 140:1,7 142:19 152:4 166:25 168:14 171:14 183:2 192:13

**identified** 9:17 110:6

**identify** 9:2 13:8 15:4,12

**identifying** 19:6

**illegal** 160:5

**Illinois** 7:12,18 20:24 23:8 54:1 144:25 146:12, 20 153:7 178:24 181:19

**immediately** 55:12 57:3 86:1,11 87:4, 11,18 138:25 139:5 146:25 154:12

**impending** 20:25

**imperfect** 84:22

**imperfectly** 86:22

**impermissible** 74:20

**import** 41:6

**important** 114:10 160:24

**impression** 179:23

**improved** 141:17

**in-between** 20:15

**in-court** 101:2

**in-depth** 56:2

**in-service** 46:23 91:16

**inadmissible** 134:14

**inapplicable** 86:3

**incident** 144:12

**include** 19:10, 13 21:21 44:11, 16 71:20 82:7, 10,20,23 83:2 114:20 127:11 143:13

**included** 13:21 29:16 43:11 126:25 127:12

**includes** 19:9 81:4 102:19 168:11

**including** 12:20 41:17 43:19 44:2 45:23 48:25 138:15 141:24 182:10 189:16

**incommunica do** 70:9 71:21, 23 72:7,12 77:13,24 78:5, 6,17 79:13,23, 25 80:10 113:10 131:24

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 64 of 78 PageID #:9118
The Deposition of COMMANDER Eric JOHNSON, taken on September 21, 2021

206

incomplete
37:12 38:15
40:20 42:10
43:25 47:3,23
50:19 132:18

incorporate
44:11 74:5

incorporated
53:9 54:18
155:6

incorporating
60:17,18 67:23

inculpatory
72:13,21 73:3
82:4 107:19

incumbent
59:14 113:19
114:11 120:14
181:15

index 170:15

individual
25:8,13,20,24
26:7 34:18 35:1
39:19,24 40:23
72:14,20 73:1
74:2 75:9,13,20
77:1,5,8,17
80:1,4 81:20,24
85:21 113:9
115:5,9 130:19
136:19 157:24
159:23 160:5
161:1 176:14
177:4 181:14
182:12 191:14

individual's
73:19 74:6,12
189:14

individuals
80:5 89:19
117:19 181:5

inform 71:16

informal
116:10

information
39:9,16 110:19
113:6,20 125:2
135:18 136:21
140:13 169:7,

19

informed
129:15 133:14

informs 151:1

initial 139:2

initiated 24:12
36:5

injury 56:21

input 20:5

inquire 185:11

inside 127:13

inspection
126:12

instance 176:4

instantaneous
178:12

instituted
56:23

instructed
80:18

insuring 183:8

integral 97:18

intelligent
73:15 74:1,15
106:7 113:3

intelligently
74:4

intend 17:25

intent 51:20
52:2

interacting
150:4

interfered
82:17

interferes
161:6

internal 119:1
120:1

internet 100:14

interpret 67:12

interpretation
49:14 67:1

127:2

interpreted
24:11 35:7
66:10 127:4,10,
19 128:24
129:19 130:2,
22,25

interpreting
44:10,15

interrogate
38:25 55:8 61:1
146:15

interrogated
25:3,14 41:11
49:25 51:21
79:12 80:10
130:23 186:24

interrogating
50:14 72:20
77:21

interrogation
12:21 24:9,10,
17 26:7,17
30:18 31:7 34:2
36:1,6,9,20
38:13 43:6,20
45:7,15 46:17
47:20 49:1 50:1
52:4 56:2 60:6
65:5 69:23
71:13 74:19
75:1,13,25
76:5,8,10,22,25
80:2,20 81:3
88:11 89:5,12
99:12,18 101:1,
15 104:2
107:25 109:9,
22 110:14,23
111:5,14,16,21
113:9,14,18
117:4 131:9,23,
25 132:1,2,9
147:13 166:3
168:2 169:25
170:3,23 184:2,
8,13 185:13,22
189:19,22
190:5,8,11,23
191:14

interrogations
12:7,18 13:6,

13,15,25 14:6,
20 15:9 21:16
22:3,12 24:24
25:7 51:15
53:14 55:8
58:13,15 60:16,
21 71:17,19
99:3 105:16
107:16 109:7
119:12 136:15
150:19 157:3
162:19,24
163:19,22
184:2 191:9

interrogators
51:23 132:10

interrupt 11:8
14:3 15:1 31:18
47:13 62:11
118:22 135:24

interrupted
133:5

intervention
95:22

interview
151:4

interviews
12:8,19 13:12,
24 14:5,20
22:12 109:10

introduce
100:14

introduction
101:9

invalidate
70:11 71:18
72:13,21 73:2,7
81:15

investigates
183:23

investigating
97:21 110:18
120:15 182:20

investigation
84:24 89:1
96:14 97:20
98:12 113:18
114:12 118:17,
18 126:4 139:7

141:23 157:17
169:12 175:3

investigations
12:8 16:5 97:6,
16,17 98:10,19,
24 99:10
104:21,24
183:22

investigative
104:15 105:3

investigator
98:21 103:15,
23 122:6 156:3

investigators
98:2 144:14

involuntary
73:20

involve 95:25

involved 14:20
99:3,10 103:5,
10 157:3

involvement
21:15

involves
102:24

involving 16:5

issuance 69:3

issue 31:24
54:7 76:3
148:17,23,24
186:17

issued 53:19
54:16 149:17

issues 135:25
149:14 159:17

item 139:10

_____

J

_____

jail 54:3 125:12
126:21,22
127:15,22
128:19 129:14
130:13 133:13
134:18

Jakes 7:17
105:5 106:1



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Jakes's 7:9

January 12:3
44:24 124:7,19

job 46:6,8
60:15 91:20
97:23 113:5
141:7 144:13,
15 150:3

John 166:23
171:13

Johnson 7:22
8:12 17:11
19:14 29:19
31:4 34:13
37:13,21 38:2,4
69:6 94:18
191:4

join 17:11
29:19 31:4
34:13 37:13,21,
22 38:4

July 53:21 54:2
183:18

June 23:5

juries 168:2

jurisdictions
23:13

Justice 23:4
175:4

juvenile 12:9,
10,19 26:13
27:25 28:1,4,5,
14,15,18,21,23
29:5,11,22,24
30:1,6,9,18,24
31:7 34:5,21
35:7,15 36:3,20
37:1,3,8 38:13,
25 39:1,9,17
40:6,16 41:10,
21 43:20,21
45:15 49:24
50:14 51:1,15
52:4 53:13,20
54:1,8,14 55:24
56:3,4,6,8,14,
17 57:25 58:6,7
61:2,11,16,23
62:9 63:15
66:11 67:16,18

68:8,9,15,21
72:12 78:25
79:25 80:8,9
85:10,13,22,25
86:12 87:17
88:12,20 89:11
91:5,7,8,22
92:8,10 93:6,
10,18 94:5
95:16,25 96:2,
13,16,18 99:18
100:23 101:15,
18 102:20
104:7,13
106:16 109:7,
10,22 110:1,2,
7,8,14,23
111:18,20
112:13 113:2,
10,24 114:3,4,
14,19 115:11,
13,20 116:3,8,
13,15,25 117:5
118:9 119:10
120:7,8 121:8,
11,21 122:15,
16 123:18
124:22 125:1
128:23 129:13,
20 130:10
131:13,25
134:9 135:12,
15,23 136:14,
18,24 137:1
138:21 139:21,
25 140:5,11,14,
24 141:6 143:4,
22,25 144:23,
25 145:1,7,8,
11,12,13,14,19,
22 146:2,7,17,
18 147:1,2,13
151:4 152:13
153:8,13,14
154:7,18,20
157:4 161:16
162:11 172:13,
24 175:23,25
176:2,3,9,13
177:6,12 178:4,
6,25 179:10,21,
24 180:3,5
181:21,24
182:1,13,23
184:3,8,11
185:2,6 186:3,

23

juvenile's 42:9
47:19 87:19
113:23 120:6,
22 143:19
144:9 159:21

juveniles 13:6,
21 14:21 15:8,
15 16:5 25:3
33:24 34:11
46:7 50:24
51:21 55:8
56:12 57:23
58:21 60:21
61:1 72:6 78:17
79:12,22 83:12
84:5 87:24
89:16 90:1,23
93:6,16,21
94:23 95:11,13
96:13 98:3 99:1
102:17 103:2
114:14 115:14,
16 119:12
130:3,12,23
131:9 132:25
133:9,22 137:8
143:10 146:15
157:12,16
170:3,23 171:4
174:14 180:15,
19,21

juveniles'
59:17 117:7
158:4 159:3

─────────────

K

Kenneth 7:9

kick 161:5

kid 134:6
179:11,12

kind 13:17
44:25 60:10
126:16 148:19
161:17 170:21
175:4 177:9
178:17

knew 50:13

knowing
73:15,19 74:1,

15 113:3

knowingly
74:4 126:2

knowledge
47:21 48:8

knowledgeable 116:23

─────────────

L

laid 25:19 29:8

language
64:16 65:7
73:24 74:7,14
117:16 145:10,
12 151:7

large 181:2

latch 191:22

law 22:20 23:1,
5,15 24:12
61:10 92:11
103:16 104:5
122:7 125:24,
25 126:3,9
132:25 133:12
135:4 146:12,
20 154:9,10,16
155:1,8,14
156:4,5,7

lawyer 25:24,
25 67:17,19

lays 26:2

learn 46:8

learned 91:20
119:2

leave 130:16
131:18 132:3,
13 180:8
191:15

leaves 176:5

leaving 177:6,
12 181:24

left 20:18 99:7
130:11 156:25
178:19 180:7

legal 151:3,19

legs 174:23

length 77:7
78:4,5,10,17
133:21 186:5

lengthy 70:8
71:21 72:12
77:9,24 78:6
79:25

Leroy 166:24

letter 129:3

letting 130:1

level 16:2
58:18 64:9,13
116:6,11
124:16

Lewis 7:16

liaison 99:5

lieutenant
20:19,20 21:12

limit 114:18,24
131:6,8 134:13,
15 143:9

limited 34:10
147:14 165:14

link 71:1
152:16

list 38:20
170:15,24

listed 72:16
142:6 175:12

listening
160:12

listing 179:6

literally 38:17
131:19

litigation
163:10 171:18

live 31:16

locate 36:25
37:2 38:11
39:18 45:3,11
46:12 48:13
88:10

located 21:6
28:7,25 35:20



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

43:13 44:3,5,
11,16 49:9
61:25 66:13
121:3 186:12

**location** 7:14
168:19

**lock** 54:4
127:8,24
128:20 143:9

**lock-** 114:19

**lock-up**
126:21,22
127:3,6,9,24
128:1,8,9
129:14 130:13,
19 133:13
142:6 182:20

**locked** 114:15,
21,22,23 127:5,
13 128:18,25
131:4,9 143:5
189:15

**lockup** 127:3

**log** 56:11 58:3
89:16,23 90:1,
23 91:7,23
93:6,13,24
94:6,23 95:4
133:18,22,25
134:3,10
144:13,16
173:13 174:2
176:10,14
177:1 178:6,9,
19,21 179:1,9,
24 180:6

**Logged** 176:4

**logical** 111:8

**logistical**
96:15

**logs** 91:5 144:7
172:13,18
174:4,7,8,13,25
175:22 180:14

**long** 61:10
69:11 113:9
114:18 119:2
143:4 152:19
160:9 174:24

185:6,7 189:23
190:18

**longer** 161:7
179:14 180:16
181:18 182:13
186:17

**looked** 16:16
119:25 121:4,
18,19 145:3,10
171:22 172:1,4

**Lost** 133:7

**lot** 13:17 32:15
51:10 59:13
60:11,13 79:20
80:12 99:9
132:20 189:1

**love** 156:11

**lower** 116:6

**luck** 18:20

**lunch** 18:12
108:4,13,16,20

———

**M**

———

**made** 22:6
41:20 45:12
47:8 48:22 54:8
71:18 72:13
74:3 81:20
88:18 89:4
95:20 106:7
111:9 112:22
113:2 115:9
127:7 129:1
149:22,25
162:1

**mailed** 149:19

**maintain** 19:18
89:18 140:18,
24

**maintained**
43:10 90:3,5,23
126:11 174:24

**maintaining**
96:17

**maintenance**
21:20

**major** 22:5,18
89:22

**make** 10:23
16:17 32:1
36:24 39:10
40:6,16,22,23
41:8 45:4,13
48:2,22 49:6,
10,16,22 50:16
55:12 57:3
72:25 73:3
77:16,18,22
80:4,18 81:2
85:17 151:2
161:22,24
162:3 164:3,6
165:25 178:22,
23 181:1,6
187:6

**makes** 48:22
59:11

**making** 34:5
48:16 72:2
84:24 85:15
92:10 107:7
116:17 165:8
169:2 185:10

**maltreatment**
117:19

**man** 173:25

**management**
20:23

**maneuvering**
24:19

**manual** 16:11
99:21 108:12
122:23 123:13,
19 124:3,9
137:5,18,20,22
155:12,22
162:15 171:8

**manuals** 100:3
155:7 164:7
169:23

**mark** 92:17
134:10 152:2
153:6 171:8

**marked** 11:22
23:23 52:13
59:3 83:12 93:2

100:5 123:2,4
142:19 152:4
166:25 171:14
188:13 192:13

**marking** 92:19
165:12 166:20
171:10,17

**Martin** 166:24

**material** 63:9,
12 88:15 162:8
170:19

**materially**
172:7

**materials**
99:22 159:25

**matter** 7:9
167:5

**meaning** 27:13
28:4 34:21 35:8
38:11 41:9
44:23 73:25
83:21 103:20
128:24 159:23
177:11

**meaningful**
161:11

**means** 31:2,6
35:24,25 46:11
64:21 77:14,19
156:12

**meant** 103:19
108:22

**measures**
50:16

**mechanics**
176:12 177:2

**medical**
168:23

**meeting** 147:8

**member** 36:24
37:8 40:6,15
41:20 46:21
95:12 96:11
119:10 159:23
169:2

**members**
36:1,8,18 38:24

39:15 45:19
49:16 71:16
73:17 74:12
82:24 95:15
151:2

**memo** 16:3,7
60:17,19,25
63:11,22 67:13
81:6 145:17,18,
25 146:1 155:1
191:20,21

**memorandum**
53:2 55:23
59:11 122:13
188:9 189:10

**memory**
173:25

**mentioned**
22:10 44:12

**mi** 95:21

**mic** 32:13
149:7

**middle** 105:25

**midnight**
43:11

**mind** 13:10
19:6 59:5 66:17
73:18 74:12

**minimize**
92:20

**minimum**
38:20,24

**minimums**
37:17 38:10

**minor** 54:3
55:11 57:2
58:15 95:21,22
125:11 126:5,
21 127:21
129:7,15
133:14,21
134:17 154:10,
11,15,18,20
182:24

**minor's** 154:14

**minors** 125:16
126:10 127:20,
25 128:17



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 67 of 78 PageID #:9121
The Deposition of COMMANDER ERIC WINSTROM, taken on September 21, 2021
209

134:25 153:9
154:16

**minute** 30:14
52:8 69:14
70:16 135:12,
15 136:14,18
137:1 141:24
152:10

**minutes**
187:17

**Miranda** 22:19
25:15,16,18,19
26:3,17,22
27:14 28:16,19
29:2,6 30:22
34:5,6 35:4
36:19 41:10,21
73:20,25 74:15
80:20 106:8
107:9 109:25
111:19 112:11,
13 113:4,22
120:7

**mischaracteri
zes** 31:12 48:11
51:5 57:10
80:24 106:24
107:11,14,22

**misconduct**
117:15,17,22,
25 118:1
119:23

**missing** 16:17
95:23 96:14
97:17 98:3

**misstated**
69:20

**misstates**
60:22 62:3 64:1
66:15 67:7
79:18 86:7 87:8
102:7 148:7
158:23

**mister** 21:10

**misunderstan
ding** 157:25

**mom** 134:6

**moment** 94:9

**mommy's** 9:25

**monitor** 47:25
50:8 89:21
157:16 160:25
181:6

**month** 13:22
124:13

**months**
175:10,11

**morning** 7:3,
16 8:22,24

**motion** 169:8

**motions** 101:5
102:13 106:18
121:23

**move** 15:12
22:24 34:19
63:7 92:17
95:10 108:18
131:20

**moved** 21:2
32:12,13

**movement**
26:9

**muffled** 148:20

**municipal** 54:3
114:19 126:21,
22 127:3,6,9
128:19

**murder** 99:6
103:7 116:5
138:15 155:25
181:23 182:10,
19

**muted** 8:2

———————

**N**

**named** 15:25

**narcotics**
139:14

**nature** 51:25
132:2 182:25

**nearest** 68:10
122:17 146:19
153:14 154:18

**necessarily**
47:4,24 78:21
79:24 83:7,9
84:14,23 92:14
132:21 141:5
190:23 191:9

**needed** 29:11
43:5 49:24 84:3
89:13 146:25

**negotiations**
20:23

**nice** 8:22,24
69:11

**noise** 82:13,16

**non-criminal**
97:16

**non-youth**
116:23

**nonetheless**
70:7

**north** 19:11
20:21

**Northern** 7:11

**notation**
177:25

**note** 17:25
24:16 55:17
56:20 58:9
151:22 160:24

**notes** 156:11

**notice** 11:13,
17 13:21 17:8,
22 73:11
109:15 147:19
163:11

**noticed** 44:23
136:5

**notification**
85:15

**notified** 117:6
118:9 120:21
147:1 158:4
159:20 162:10

**notify** 48:7
55:13 57:4
59:17 87:5,6,
11,19 89:13

138:25 139:5
154:13

**notifying** 86:2
92:7,8

**noting** 126:14

**November**
21:4

**number** 7:12
15:7 24:4 31:17
39:16 53:2
61:1,11,15 85:6
100:13 104:2
105:19 123:20
131:1 139:13
150:18 155:19
159:18 169:2
189:10

**numerous**
187:4

———————

**O**

**oath** 17:3

**object** 18:8
26:19 32:21
36:13 51:24
62:23 63:4
79:3,14 109:19
112:6 115:4,8
128:18 132:15
172:20 189:16
191:22

**objected** 135:8

**objection** 17:9
21:17 22:4,17
25:12 26:24
28:13 29:18
31:3,12 34:12,
25 36:22,23
37:11 38:1,14
39:4 40:10,19
41:13,25 42:10,
17 43:8,24 46:1
47:2,22 48:10
50:5,18 51:4
54:9,25 57:10
60:3,22 62:2,7
64:1,7 66:1,15
67:2,7,25 68:14
71:14 72:8
74:16 75:2,7,11

76:16 77:11
78:1,8,20 79:18
80:11,24 81:22
82:5 83:4 86:4
87:8 88:13
89:6,14 91:1,18
97:9 98:22
101:16 102:7
106:24 107:11,
22 110:15
111:2 113:15
114:6 115:2
116:2 117:9,10
118:12 119:14
120:10,24
130:5 136:17
143:23 144:4
146:9 147:4
148:1,7 150:24
151:16 155:9
157:7,13 158:9,
23 159:8 162:5,
22 170:8 174:5
180:17 184:14
186:7 187:2
190:9 191:1,11

**objections**
37:19,23 38:5
39:4,12,20 40:1
47:6

**observe**
159:20

**observed**
112:12 117:6
118:8 119:9
120:21 157:19
158:3 159:3
162:9

**obtain** 41:22
48:15 49:4
61:15 139:12

**obtained** 23:2
134:14 168:12

**obtaining**
61:15 105:16

**occasion**
181:8

**occasionally**
19:22 20:4

**occasions**
14:8 183:6



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

occur 191:9

occurred 22:20

October 24:2 183:17,20

offender 28:14,15,18 29:11 34:5 100:24 101:15, 18

offenders 106:16 121:21 123:18 124:22 151:20

offense 133:19 154:21 178:4

offenses 103:21 138:4 139:10,15

offer 134:7

office 13:18 14:13,14,15 19:19 20:8,16, 18,22 41:20 43:14 95:12 127:9 135:20 144:16 184:11

officer 12:20 21:3,13 22:12 41:23,24 42:7, 9,25 43:5,19,23 44:12,20 45:5, 11,14 46:16 47:9,19 48:15, 24,25 49:3,4,8, 9,13,18 50:1, 15,25 51:14 56:15 58:5 68:7,10 79:1 81:4,7,8 85:7, 10,16 86:3 87:3,24 88:23, 25 89:4 91:21 93:16 95:13 96:8,10,20 97:4,6,11 99:8 101:1,3,21 102:1,11 103:10,20 104:16 106:17 108:12 110:17,

20,24 111:18, 22 112:9,11 114:2,7 116:8, 22,23 117:3 118:8 120:11 121:9,13,15,17, 22 122:15,17 126:1 128:11 130:18 133:24 134:5,8 136:13, 19 139:2 140:23 141:17 142:17 143:18 145:8,14,22 146:16,19 152:25 153:14 154:10,17,18, 20,21 155:7,22 157:19,23 158:19 159:4, 10,14,20 160:18,19 161:4,15,22 173:23 176:23, 25 177:5,12 179:10 181:6,8 182:17,22,25 183:5,12,15,25 184:12 185:5, 10,15,19,25

officer's 76:3 160:25

officers 7:23 12:18 22:14 24:12 41:7,22 42:15 43:11,13, 18 44:16,18 45:23 72:19 80:18 91:13,14, 15 96:5,23 97:2,10,24 98:5,13,18,20 99:16,22 100:18,25 101:14 102:16 103:4 105:11 106:17 109:7,8, 21 110:12 113:22 115:20 117:24 119:8 120:5,16,20 121:7,22 126:10 135:16 137:24 138:1, 18,20 149:16,

21 157:1,6,9, 16,22 160:15, 17,21 162:8 183:7 184:6 186:14,16 191:4

officers' 180:23,25

offices 14:14

official 177:20

olds 155:24

one-page 135:17

open 9:23 100:10 126:12

operating 137:5,23 166:21 171:12 186:19,20

operations 142:4

operative 124:3,6

opportunity 67:19 161:12 163:2

option 116:8

options 160:3, 9,18

orally 27:2

order 12:25 13:1 23:18 24:2,4,8,22 25:2,10 26:2 27:1,22 28:11 30:17,22 41:7, 16 44:13 51:7 58:21 65:10,25 68:4 69:21,25 71:8 73:5,24 74:4 81:11 83:16,20,24,25 84:12,17,19,22 86:22 88:4 91:24 92:19,21, 24,25 93:4 94:10 125:7 147:25 148:10

149:10,12,13, 15,17 150:1,8, 9,12,14 170:4, 24 171:3

orders 12:2 15:4,6,13,21,24 20:2 41:1 50:4 51:19 53:11 54:23 84:21 118:16,18 137:17 157:12, 14,20 160:17, 22 162:7 170:16,20

ordinarily 125:12 127:16, 22 134:19

outh 42:9

overlap 13:17

oversee 22:2

overseeing 89:19 157:11

---

**P**

P.M. 192:14

pages 152:21, 25

palliate 21:3

paper 96:3 135:21 149:19

paperwork 111:10,11,14 136:23 183:9

paraphrasing 102:9

Pardon 80:23 82:16

parent 28:6 35:19 36:11 37:8 38:11 39:1,8,10,16,22 40:8,16 41:9 44:8,19 45:4,11 46:12 49:4,16 55:13 57:4 59:18 61:24 66:12 67:18,19

81:9 86:2,11 87:5,19 106:11, 12,13 107:8 112:23 151:3, 19 154:13 162:1 173:15 177:13 178:10 179:10,16,22

parents 85:15 146:25

part 20:23 44:6, 13 53:12,25 54:23 55:10 56:2 57:19 60:17,18 68:3, 12,18 75:12 76:19 79:4 91:23 93:8 97:12,18,24 99:14 101:3 102:2,12,15 111:7 122:2 124:4 127:6 135:22 136:22 145:12,24 146:6,7,11,20 147:2 155:1 160:10 171:25 172:4 185:9

participate 117:4

participated 136:16

participation 99:17 110:13, 25

parties 84:12

patience 167:18

patient 24:18

patrol 58:18 59:10 60:12 83:24 84:10,13 87:4 90:17 91:10 92:13 95:13 130:16 172:13 173:3 181:8

pause 52:12 69:12 70:15

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

108:20 152:9, 15 187:15

**paused** 40:12

**pay** 96:20

**PDF** 152:18

**pending** 7:10 140:19 141:3,9 176:9

**Perfect** 7:25 8:5,13

**perfectly** 28:20 29:11

**period** 43:9 44:17 46:4,21 65:20 74:21 80:17 81:6 83:22 88:8,14, 17,21 89:11,15 91:4,6 97:18 98:9,14 100:19 110:12 114:17 118:14 124:4 127:25 128:8, 16 144:14 145:2 146:3,21 151:24 154:8 157:10 163:22 175:1 182:11 184:20

**periodic** 129:8

**periods** 80:3 98:8

**permissible** 74:19

**permit** 40:6

**permitted** 12:20 74:24 75:21 77:1,4 129:9

**person** 9:1 24:13 27:3,12 55:14 57:5 70:6,12 73:8 81:16 95:23 96:14 126:1 134:8 154:13, 14 168:11,21 179:25 185:11 192:8

**person's** 73:14 82:11

**personnel** 100:16,21 139:17 141:14, 21 151:19

**persons** 15:6, 14 92:2,22 97:17 116:18 168:14

**pertaining** 12:25

**pertains** 137:12,13

**pertinent** 138:21

**phone** 10:3,4 31:16 39:16 40:7,16 72:2 77:19 80:4 112:19 113:13 161:25 169:2 178:10

**photograph** 126:5 181:5

**photographed** 102:20,21 180:22

**photographing** 128:13 181:10 183:1,8

**photographs** 125:1

**phrase** 47:16 188:5 190:4

**physical** 74:25 75:4,19 76:4,9, 22 82:11,21

**physically** 180:7

**picking** 148:14

**picture** 174:2

**piece** 96:3 135:21

**piggyback** 64:10

**place** 49:13 66:13 94:14 95:8 98:7 117:21 118:4 121:12 125:12 127:16 134:18 143:5 146:20 154:7 159:15 161:8,13 179:4 178:24 182:2 184:16 185:4, 13,23 186:17 190:24

**placement** 56:6 57:24 129:14 133:13

**places** 119:24 121:3 127:22

**placing** 56:17 58:6,7 99:8

**plaintiff** 7:17 8:10 165:7

**Plaintiff's** 7:15 188:2

**planning** 70:22

**play** 16:1 98:25 99:5 121:15 149:10,11

**played** 97:7 98:20

**PLAYS** 33:5

**pleasure** 187:9,11

**pocket** 178:13

**point** 10:21 27:19 84:6 89:8 108:18 116:12 118:7 131:1 132:24 145:18 149:18 184:21 186:11

**police** 12:24 26:6 27:11 41:4 56:12 57:8 67:14 68:19,22 69:2 74:11,21 75:5 76:21 79:11 83:25 85:10 94:24

96:8,11,20 114:20 117:20 123:12 125:13 126:25 127:4, 17,23,24 128:11 129:21 130:3 131:12 133:23 134:20 145:8,14,22 148:11 149:9, 15,16 153:14 154:18,20 160:8 161:4,7 179:9,12 183:7

**policies** 12:2 20:2 21:15,21, 23 22:3 53:13 65:20 71:12 74:20 75:5 78:18,24 80:8 93:25 118:4,19, 20 119:5,11,19 120:1 146:8 157:20 159:10, 12,15 160:1,22 161:13,21 186:19

**Policing** 22:9

**policy** 20:5 21:4,11,13 22:10 26:5 27:10 29:20 30:16 38:18 41:4 44:17 49:2,12 50:3 52:2 54:14,20, 21 57:8,17 58:1,3,5,6,10, 17,18 60:20 63:16,24 64:6, 9,12,13 65:2,5 66:18 67:4,11 68:18,20,24,25 69:1 74:10 76:17,20 79:10, 22 80:16 81:1,5 84:3 89:8 91:19 92:14 94:14 95:7 117:17,18 119:21 121:3, 12,15 122:20 127:11 130:15 131:11 146:10 147:7,8 158:17

159:12 161:10, 11 184:16

**portion** 145:3, 5,6 166:3

**portions** 116:3 171:20

**portr** 157:5

**portrayal** 157:5

**position** 18:23 20:9,17 21:9, 10,19 163:4

**positions** 20:11,14

**positive** 17:3,4 29:22 57:16 179:19

**possession** 182:24

**possibly** 73:2 92:3 101:23

**potentially** 111:15

**pounds** 181:4

**practice** 23:8 44:18,22,25 45:3,10,18,25 46:6,9,10,20,22 47:17 48:6 49:3,13,14,23 51:14,21 58:9, 11,17 68:18,22 69:1 79:24 80:9,17 81:7 99:2,16 121:16 183:4

**practiced** 23:15 54:19

**practices** 12:2 50:4 51:8 52:2 57:16 76:20 78:18,24 79:10 146:8,11 158:17 160:22 184:18,24 185:23

**pre-service** 46:5 142:16



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

precedents
131:17

precursor 61:7

prep 118:21
171:19

preparation
17:17 105:8
119:7 153:11
160:1 163:8
171:20

prepare 15:5,
16 16:14
110:21 121:4

prepared
11:24 12:13
120:19

pres 25:25

presence 28:6,
24 35:16 43:22
46:16 48:24
49:2,12 50:25
51:2,22 61:24
62:10 64:15
66:11 78:25
103:16 104:4
122:6,14
143:21 146:16
155:14 156:2,4
184:13

present 25:24
36:3,19 37:3,10
38:12,24 39:3,
23,24 40:9
41:9,20,24
42:8,9 43:5,19
45:5,14 47:18,
19 50:1,15
51:15,22 52:3
56:15,21 67:20
68:7 80:19 81:7
88:11 89:5
100:25 101:1,
14,21 106:12,
13,17 107:8
109:9,11
110:22 111:5
112:11,23
121:7,10,17,22
130:3 132:11
143:18 144:8
151:4 155:8
168:14 184:1,9

186:2,4,25

presentation
100:11,15
104:20 105:2,3

presented
175:17

pressure
70:11 73:6
81:15,19 82:7

pretty 67:9
96:21 174:16

prevented
81:14

previous
55:18 58:5
79:21 139:21
150:11,13
185:13

previously
58:10 84:11

primary 161:6

printed 95:2
102:20 122:22
142:14 180:22

printer 152:21

printing 183:1

prior 8:7 15:22
17:22 19:18
20:9 30:17
31:6,10 34:1
43:19 45:6,9,14
46:17,23 47:19
51:5 54:23
57:17 58:1
66:16 68:19
69:2 79:19
80:19,24 86:7
89:5 106:8
107:8,9 112:14
146:7 149:16,
22 150:8,10
158:24 184:13
190:21

prisoners 56:9
125:13 127:17,
23 128:5
134:19

privileges

106:6

probation
96:16 116:13

probationary
91:15

problem 10:10
14:23 15:1
33:17 136:7
149:3 151:6,12

procedure
16:11 21:4,11
30:16 57:8
71:12 74:11
123:13 124:9
137:23 166:22
171:12

procedures
13:20,23 53:13
55:23 69:22
74:19,20 75:5
76:20 78:18
79:11 80:8
84:2,10 85:4,20
87:23 93:17
94:14,22 119:6,
11 167:11
186:20

proceed 8:19
33:18 153:1

proceeded
50:1

PROCEEDING
S 7:1

process 85:22
158:15 168:2
175:2 177:20
182:17,18

processed
34:19 84:5
102:21 137:14
138:4,14
140:15 176:7
177:18 180:4

processing
15:6,8,14 57:23
58:21 80:3
83:12 84:23
85:16 88:24
92:2,21 93:15,
20 96:13 99:1

102:16 104:3
109:23 110:8
111:11 116:4
123:18 124:22
135:22 136:23
137:8 139:3
141:12,22

produce 17:19
18:7,8 166:9

produced
17:22 18:9
99:22 100:3
163:10,11
164:8,12,15,16,
17 165:1 166:9
167:2 171:18

prohibit 40:3

prohibited
73:6 75:4,14
76:1,4,9 77:8
82:1,3,9 83:8,
10

prohibiting
72:2 117:18

promise 81:24

promises 70:9
72:24 81:20

promoted
18:17,22,24
19:17 20:9,19
21:5,7 91:16
148:6 150:10

promotion
18:18

prompt 57:24

proper 56:5
168:22

properly 32:2

prosecuted
28:3 61:13,18

prosecution
103:17 122:8
155:15

protect 76:3
111:19

protected
109:23,25

110:7 113:24
114:4 117:8
143:25

protection
28:15 34:16

protections
28:18 29:1,7
33:23,24,25
34:4,9

prove 106:5

provide 20:4
85:7 139:22
159:18 169:5

provided 9:8
12:24 25:25
28:23 65:19
74:3 112:13
114:3 142:8
147:20 149:13
150:20 168:22

providing
25:13

provision
29:16 35:24,25
41:6 72:10 86:1
130:25 146:1,
25

provisions
30:5 41:17
60:1,19 106:21
107:1 115:19
116:5 180:20
182:13 183:2

psychological
24:18 70:11
73:6 81:15,19
82:7

psychologicall
y 77:25

public 27:10
126:12

pull 52:9 59:24

punch 76:11

pure 83:24

purpose 28:9,
10 51:13,20
71:11,16 75:24
89:12 128:12



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 71 of 78 PageID #:9125
The Deposition of JAMIE COMMANDER, taken on September 21, 2021
213

129:15 133:14, 24 151:15,17

**purposes** 30:15 40:25 53:11,17 76:8, 10 124:18 128:6 154:19 165:13 166:4 171:7 179:9

**pursuant** 11:14,18 13:5 17:7,18,21 27:11 29:24,25 43:23 78:17 113:23 115:13 125:24 129:7 135:3 155:8 163:11 176:1 178:24

**push** 13:10

**put** 17:24 18:15 30:15 176:24 179:20

**puts** 59:14,16, 19 182:17

**putting** 63:7 179:7

———————

**Q**

**qualifications** 141:1,2

**qualified** 187:5

**question** 11:1, 7 14:8 15:3 17:10 21:18,25 22:13 27:3 28:5 29:23 34:12 36:3 37:11 38:7,14 42:2,5 46:17 50:5,18 51:4,9,25 55:2 62:9,22 64:4 65:8,16,22 73:8 78:2 79:2,4,7, 21,22 80:13 82:18 91:25 93:5 97:19 109:16 112:4 113:1 117:10, 11,13,23 118:5,

8 120:11 121:6 131:7 132:16 143:4 151:21 154:6 156:25 158:2,7,18 159:7,9 160:11 163:16 166:2 184:14,19 186:9 190:3 191:7,19

**questioned** 27:4,12 29:5 35:2,15 43:22 50:24 51:2 61:24 66:11 67:16 70:6 73:2 77:18 78:25 80:10

**questioning** 24:12,17,21 25:23 26:18,22 31:11,14 37:4, 10 39:3,25 40:18 41:10,21 42:9 62:18 67:20 75:10 76:12,22 77:1,5 80:8 95:15 98:17 106:23 107:9 112:14 119:1 165:13 178:4 188:4

**questions** 18:1 27:7,23 28:23 31:7,15 70:1,5,7,12 81:16 95:11 109:5 156:14, 25 158:14 163:24 167:6 172:12 174:12 175:22 187:8, 12,15 188:1,2,5 189:18,19 191:3,24

**quick** 187:16

**quickly** 91:20

———————

**R**

**raise** 8:14

**raised** 144:25

**ran** 116:14

**rare** 51:1

**re-** 32:3 176:14

**read** 27:21 32:4,23 33:11 53:25 57:7 70:4 101:11 125:22 126:15 134:24 136:2 145:9 150:21 151:7,9 155:1,5,7 162:7 180:19 190:14, 20

**reading** 28:8 64:15 65:2 66:21 101:7,8 111:19 115:23 135:5,7,13 155:11,19

**READS** 33:14

**ready** 8:14 68:1

**reason** 43:21

**reasonable** 36:25 37:2,7,18 38:10 39:5,8, 10,14,18,23 40:3,4,5,14 41:8,19,23 42:7,13 43:18 45:12 46:12 49:16 50:21 55:13 57:3 58:12 80:19 81:2 88:10 107:7 112:22 151:3 154:12 161:25 169:2

**reasons** 104:1 133:20

**recall** 13:16 14:14,18 22:5, 11,15 93:25 94:4 164:15 188:3 189:18, 21 190:2

**recalled** 186:1

**receded** 150:9

**receive** 18:18 29:6

**received** 45:24 46:4,23 91:14 122:9 149:14, 18

**recently** 13:17 174:17

**recited** 27:3

**recognize** 52:25 166:24

**recollection** 30:4 58:20,23 92:5 93:4 153:10 154:6 158:7

**record** 7:4 8:2, 8 10:10,14 17:25 22:25 23:25 25:16 27:22 32:6 38:3,16 62:23 69:16,17,18 70:4 88:10 91:8 96:8 100:8 108:24,25 123:11 139:22 140:1,5,11 142:22 156:21, 22 171:8,16 173:23 187:19, 20,21,22 192:12

**recorded** 91:5 173:13

**records** 126:9, 11

**REDIRECT** 191:5

**reduce** 54:13

**reduced** 57:17

**redundant** 35:4

**refer** 9:16 18:1 42:18 49:9 63:3,8 107:4 127:3 163:17

167:5,14

**reference** 69:24 170:19

**referencing** 16:4

**referral** 116:11

**referred** 25:11 44:7 89:24 116:19 122:10 153:11 171:2

**referring** 30:22 44:7 92:24 93:24 104:7,11 137:9 154:24 156:6,7 160:21 165:15 170:10

**refers** 25:13 31:10 124:12

**reflect** 38:3

**reform** 20:23

**refresh** 30:3 58:20,22 92:5 93:4 154:6 158:6 189:25

**refreshed** 154:23

**refreshes** 153:10

**refreshing** 154:5

**regard** 130:23

**regulations** 117:20

**reiterating** 54:22 95:7

**reiteration** 35:9,10

**relate** 34:4

**related** 13:5 22:3 103:2 105:5 117:19 119:11 120:1 159:10 184:16

**relating** 12:4 87:23 93:17 126:5 153:9



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 72 of 78 PageID #:9126
The Deposition of COMMANDER ERIC ADAMS KOHL, taken on September 21, 2021
214

relation 28:16

relative 28:7
35:19 36:11
37:9 38:11
39:2,22 40:8
41:9 44:8 45:12
46:13 49:5,17
61:25 66:12
87:22 112:23
113:6 179:22

relatives 40:17

release 116:19
141:5

released
116:18,20
154:12 173:15,
16 176:8,22
179:13 180:6

releasing
176:23

relevant 17:7,
21 72:4 74:21
88:5,15,16,22
89:1,8 98:8,9
100:19 110:11
113:17 116:4
145:1,6 146:3,
21 154:8 155:2
163:21 165:10,
14 166:5
170:16 184:20

remain 25:21
129:9

remains
175:25

remarks 24:18

remember
13:19 62:14
80:21 121:24,
25 122:1 159:5
171:23 179:4
188:16

remind 109:12
170:11

reminds
183:10

remotely 7:21,
24 9:1 10:20
11:1

render 134:14

reopen 19:4

reorganized
186:11

repeat 65:8
80:13 107:1

repeatedly
50:14

repeating
178:3

rephrase 15:2
65:16 117:12
129:25

replaced 93:1

replaces 65:5

report 91:4
93:19 114:5
117:15,17,21,
25 119:22,23
138:21 140:14
141:25 159:4,
24 160:19
168:8

reported
101:3,22
119:21 121:7,
10 143:19,21
144:9 184:7
185:5 186:3

reporter 7:3,5,
25 8:5,13,19
11:5 32:5,8,23,
25 33:3,5,6,11,
12,14,17 69:16,
18 70:20
108:23,25
148:18,24
149:3 152:5
156:22 187:20,
22 192:11

reporting
120:9,13 144:2

reports 110:20
138:22 141:25
169:6

representative
11:25 67:1

representing
7:20,22

request 44:20
45:4,13 46:16
48:16 49:3 81:8
139:1,20,25
142:4

requested
33:5,14 104:1

requesting
67:18 87:24

require 34:24
36:17 86:17

required 12:20
26:6 28:5 34:22
47:20 48:24
85:19 86:21
88:15,18,24
89:3 103:16
104:5 111:7,8,
18 112:15,17
118:11 120:20
122:7 133:18
141:25 145:13
146:12 154:9
155:8,14 156:4
167:12 168:23

requirement
26:16 30:17
48:7 49:23
50:3,6 62:6,14
63:17,18 64:14
66:10 72:9 81:2
87:3,17,18 88:9
89:10 91:23
94:13 101:23
110:12,16
111:22 120:9,
13 121:13
122:20 130:1
134:3 143:24
151:2 153:13
154:9 161:15
178:24 179:1
184:6 185:2,4

requirements
48:6 59:9 67:6
68:8 86:21 91:3
92:7 105:15
110:2 114:2
117:6 122:15
136:13 141:14

143:20 144:2
146:17 151:18
179:7 184:11

requires 27:1
35:1 36:21,24
86:19

requiring 89:9
95:21 103:2

reread 38:7

res 151:17

research 21:2,
10 66:19 119:4
158:13 159:16
161:12

resend 70:17

resides 154:15

resist 24:20

respect 21:15
22:13 28:19
30:4 45:24
48:20 49:15
60:20 80:7 92:7
93:5 99:17
100:19 106:22
110:14 113:7
120:7 125:11
127:20 130:2
136:15 137:18
143:20 145:11,
13 146:14,24
153:12 157:1,
12,21 160:16,
20 166:2
169:24 170:3
171:4 184:19

respond 18:3

responding
79:23 109:21

response
24:19 188:2

responsibilitie
s 19:18 20:1
59:12,16 60:13,
14 86:23 138:1,
18 139:17

responsibility
21:19 36:2,9,18
47:25 50:8,11

59:19 86:23
89:17,21
110:18 112:8,
21,24 114:8,9
144:12 180:23,
25 182:16
183:4

responsible
55:14 57:5
85:16 111:10
133:24 134:8
139:7 154:13

restate 11:2
38:6,8 40:12
65:21 79:6

restates
166:11

restraints
57:20

result 30:6
77:24 134:14
146:8

retail 85:11
116:7 177:17

retain 174:8

retention
174:23 175:10,
13,17

retrained
100:19

reverted 15:24

review 11:20
15:19 16:3,10,
14,19 99:21
139:23 140:21
141:19 144:23
149:21 150:17
163:8 171:19
182:9

reviewed 15:4,
6,10,15 16:18,
21 17:17 29:3
53:6 105:7
119:6 120:19
149:24 160:1
161:21 168:2
188:8

reviewing 30:5
33:25

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 73 of 78 PageID #:9127
The Deposition of COMMANDER Eric DINGROW, taken on September 21, 2021
215

revised 54:1
123:14

revision 151:1,
15,18

revisions
150:18

revolving
177:19

ride 95:24

rights 25:8
26:10 27:5,14
41:21 61:2,17
67:17 73:12,14,
20,25 74:3
106:8 109:23,
24,25 110:7
111:19,20
113:4,23 114:3
117:7 118:9
120:6,22
143:25 158:4
159:3,21 161:9,
16 162:3,10

Riley 14:16

ring 10:5

river 19:12
20:21

robbery 103:6
155:24 178:5

robust 66:10

role 20:7 96:23
97:6,20 98:20
99:2,12 103:15
111:12 156:3
157:6,16
160:25 161:2,8
182:3 185:9,24

role's 122:6

roles 20:1
98:25 99:4

roll 149:21,24

room 9:20 56:6
57:25 114:15,
21,22,23
125:18 127:6,8,
12 128:18
131:4,9,25
132:9 135:3

189:15 191:22

roughly 152:19

rule 11:14,17,
20 13:5 14:19
17:8 110:3
177:10

rules 116:15
117:19 118:2
181:24,25
183:5

running 127:5

Russell 13:22

Rutgers 23:3

RWOC 173:16

---

**S**

Safer 14:16

safety 76:3,4
82:11,21

sake 165:11

scenario 41:2,
4 44:4 51:19
76:2 88:23
111:6 180:8
186:1

scene 85:19
161:5

schedule
175:13,17

scheduled
174:23

school 23:1,5

schools 23:6

Science 23:4

screen 10:20
52:22 55:5
108:2 123:10
152:11 166:18
188:25 189:9

scroll 57:13

scrolling
167:11

section 25:10,

13 26:5 28:10
30:9 33:24
34:10 35:4,5
50:23 60:7 63:9
67:15,23 70:1
71:9 85:3 93:13
100:15 105:7
123:19 124:9,
21,25 125:23
128:15 137:7,9
140:2,7 142:4
147:9,16 153:7
162:24 165:14
167:16,20
168:21 170:5,7,
10 183:22

sections
105:23

secure 56:17,
22 58:8 116:16
129:14 130:10,
21 131:15
133:10,13
185:3,8 188:5,7
189:12 190:24
191:16,19

secured 71:25
115:11 130:15
131:20 132:4,7
133:2,3,9
143:5,9,10
191:9

seek 36:2,9
48:24 49:18

seeking 36:18

selected
164:17

selects 95:24

self-evident
88:25

sell 128:18

semantics
16:1

send 70:25
153:1

senior 150:4

sense 40:22,23
178:22,23
187:6

sentence
34:20 35:14

separate 64:11
101:23 115:15
125:17 126:11
135:1 176:4

separated
128:5,14

September 7:6
93:1

sergeant
50:13 58:5
59:17 85:14,22
86:20,24 87:2,7
89:18 90:3,6,
13,22 92:11,12
130:17 131:19
159:13 172:14,
15 183:19

sergeant's
144:16

sergeants
50:7 59:10

serve 19:21

served 11:17
13:4 14:9,19
19:19

service 148:5

set 184:24

setting 25:14

sex 98:11,12
183:23

sexual 98:2,5
103:7 155:25
178:5

share 90:15,17
95:1 108:2
166:18 188:24

sharing 92:1

sheet 95:22
135:12,15,16
136:14,18
137:2 170:21

sheets 141:24
144:7

shell 161:2,5

shelter 168:22

shift 42:15,19,
20,21 43:11

shooting
161:3

shoplifting
176:21 182:24

short 52:19
69:7 108:10,14
149:14

should've
17:22 163:11
182:6

show 10:19
30:13,14 52:5
73:24 74:5
92:4,6,16,18
108:1 142:17
152:11,13
167:10 170:14

showed 58:20

showing 10:21
93:9 152:21,25
167:2

shown 93:21
105:20

shows 133:19

side 18:15
30:15 63:7
136:2,6 179:8

SIDS 104:21

sight 10:4 58:1
115:16 128:14
181:7,25

sign 177:18

signature
192:3

significant
22:21 24:15

silent 25:21
49:2,7,12
121:15

silly 131:18

similar 171:23
183:5



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 74 of 78 PageID #:9128
The Deposition of MAJOR ERIC WARSZOWELd, taken on September 21, 2021
216

similarly 82:3
120:17 149:23

simply 22:7
42:3 58:14
63:15 64:19
115:10 116:4
143:24

singular 192:8

sir 90:18 99:15
119:15

sit 14:17 29:25
32:16 94:8
131:19

situation 38:21
47:7 81:3 132:6
176:18 177:5
184:22 185:20,
21

situations
40:4 120:14

six- 134:12

six-hour 110:3
114:18 131:6,8
132:1 134:15
143:9

slap 76:11

sleep 106:7
112:18

slightly 62:5
63:18

small 177:16

smaller 124:15

sneezes 175:7

solely 128:12

solemnly 8:15

somebody's
82:21

son 178:16

SOP 15:22
16:20,23 17:6,
16 18:2 59:24,
25 124:3,19
137:18 162:14,
19 163:18,21
164:3,24,25
166:5 168:7

170:2,7,15,21,
23 171:8,17

SOPS 15:10,
13,18,19,22
16:2,13,14
53:10 60:5
119:6 164:3,13,
17,18 165:9,25
170:16

sort 21:20
54:20 114:5
116:24 160:5
162:2 176:21
179:7 184:22

sorted 85:19

sought 118:20

sound 10:4
38:16 58:2
115:17 128:14
148:20 181:7
182:1

sounds 50:2,
21 66:8 69:15
92:5 132:7
158:5

speak 72:1

speaking
42:25 121:9
134:4

special 15:20,
21,23 53:5,11,
18 58:21 66:13
83:16,20,25
84:17,19 88:4
91:24 122:12
137:8 170:4,24
171:3 183:1,18,
22 186:12

specially
96:11

specific 13:12
26:3 28:12,14
37:15 39:13
41:2 48:3 50:6
72:9 73:24 84:1
89:8 96:19
119:19,20
121:6 132:23
150:1 151:23
159:9,12

160:20 161:10
164:9 182:2
184:22,23,24

specifically
44:12 51:20
96:12 101:17
105:12

specifics 37:5
47:11

speculating
54:15

speculation
17:10 37:12
38:15 40:20
42:11 43:25
47:3,23 50:19
53:24 54:10
57:12 78:9
81:23 130:8
174:6

Spence 13:18

squadrol
142:5

staff 40:5

stamp 52:24
100:8 104:16
123:20,21
138:6 164:20,
21,23 171:19

stamped 24:1
92:23 142:23
151:24

stamps 167:4

standalone
98:11

standard
137:23 166:21
171:12

standards
53:9

standing 37:25

start 23:17
56:4 85:7 127:5
174:12 190:3

started 11:12

starting 7:15

state 7:13 8:1
20:24 22:25
24:16 93:16
103:13 135:19
169:13 179:1
181:19

state's 139:22
140:20 141:18
169:7 181:16

stated 51:8
68:21 84:11

statement
27:12,25 28:3
30:24 32:21
34:11,20 35:8
61:16,19 74:6
80:2 83:6,9
105:19 106:8,
12 107:19
121:8,10,11
143:19 144:2,9,
0 168:15,17,
19 169:12
184:10 186:3

statements
71:18 72:13,21
73:3 101:2,3,22
105:16 106:15
107:6,16,18
121:21 143:21
167:16,24
169:18 172:2

states 7:10
24:11 68:8
70:12 73:8
81:16 101:17
122:16 146:17

station 85:13
90:15,17 91:7
116:10 125:13
126:25 127:4,8,
17,23,24
129:21 134:20
136:25 176:13
177:23

stationary
115:3,8 128:18
189:15 191:22

status 169:20

statute 145:13

statutes 54:1
153:7

stay 128:10
130:19

staying 177:6

stems 29:21
68:15

step 39:5,8,18,
24 40:14 41:23
42:7 46:16
50:15

steps 31:8
41:19 43:18
46:12 49:16
59:15 106:12
161:8

Stibich 16:4
66:22 145:18,
24 155:1
164:20 165:1
171:13 188:10

stipulate 37:23

stipulates 8:10

stop 15:2 85:21

stopping
108:11,18

Street 19:11

strengthen
64:11

strictly 75:24

strike 20:6
42:5 78:15
144:24

striking 75:13

strong 64:20
129:1

stronger
63:17,18 64:16,
20 65:2 66:23

study 142:14,
24 143:3

subject 89:1
150:1 158:13
181:20

subjects 21:22



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:19-cv-02204 Document #: 266-32 Filed: 11/04/22 Page 75 of 78 PageID #:9129
The Deposition of COMMANDER ERIC ZBROZEK, taken on September 21, 2021
217

**subordinates**
47:25 50:8,9

**subpoenaed**
101:4 102:12

**subsection**
27:22 28:11
29:3,7,8,17
30:4,20,23
35:14,24 36:4
41:17 48:23
63:11 68:3,6,23
71:9,12 73:12,
22 74:2 93:9
101:9 102:24
103:3 109:6
122:4 125:10,
25 126:9 129:6
133:12 134:24
140:9 146:15

**subsequent**
67:20

**substance**
169:24

**substantive**
22:7,11,21

**subtopic**
12:12,24 109:6

**subtopics**
12:7

**sufficient**
169:7

**suggest** 115:4

**suggestion**
82:2

**suggestions**
38:18 70:10
72:25 73:1

**summarizing**
135:17

**summary** 26:1
140:1,6

**superintenden
t** 21:24 166:23

**superintenden
t's** 20:22

**supervise**
157:2

**supervising**
20:7,15

**supervision**
50:16 58:4
129:8

**supervisor**
46:25 47:8,20
48:2,8 56:14
89:18,19 92:8
158:1 159:5,24
160:7,19
169:14 183:15

**supervisor's**
48:17

**supervisors**
47:24 49:24
89:13,20
149:24 150:4
157:8

**supplemental**
141:25

**supplementar
y** 168:8

**supplied**
150:14

**supposed**
34:1 41:7
46:11,25 73:18
74:12 100:20
113:2,23
114:14 115:14,
16,21 138:25
140:18,23
141:9,22 142:3
144:8 157:2,22,
23 162:3,9

**suppress**
169:8

**Supreme**
24:11 25:18
190:16

**surprise**
176:16 179:2

**surprised**
119:18 177:24
180:13

**surrender**
154:20

**suspect** 25:4
35:7 36:20
38:25 39:17
41:11 43:6,21
45:15 49:24
76:11 77:22,23
88:12,20 99:18
106:5 107:20
112:14,18
131:13 162:11
182:23 185:6

**suspect's**
24:20 41:21
78:7 118:9

**suspects** 12:9,
19 50:14 78:25
89:11 105:17
109:7,10
111:18 157:4

**SVU** 186:13

**swear** 8:15

**switch** 96:5

**switched**
98:10

**switching**
31:21

**sworn** 35:25
36:8,18,24
38:24 39:15
40:6,15 41:7,
20,22 42:7
43:18 45:11,19,
23 46:21 48:24
49:16 71:16
72:19 73:17
74:11 80:17
91:14 95:12,15
96:11 151:18
159:23 183:12

**system** 116:13

**systems**
155:15

---

**T**

---

**table** 16:16
167:10

**tactic** 76:22

**tactics** 24:18

**tailored** 84:13
105:12

**takes** 55:11
57:1 154:10
179:10 182:16

**taking** 69:11
94:22

**talk** 11:6 16:13
28:9 32:11
74:18 96:5
107:18 123:17

**talked** 15:18
99:11 115:21
162:14 180:9

**talking** 49:21
55:23 70:23
71:3 106:21
107:4,5,6
138:3,13
158:15 165:16
170:25 171:4
179:5 181:14

**talks** 131:2

**task** 99:1

**tasked** 96:17
117:8 157:10
159:22

**technical** 22:6

**technically**
90:1

**technician** 7:5
161:2,4

**techniques**
104:15 105:4

**telephone**
106:7

**ten** 69:13
156:12

**ten-minute**
156:10,13

**terms** 9:22
10:2 36:17
96:23 160:21
182:14

**terrible** 42:2

**test** 64:3 174:1

**testified** 13:18
14:11 49:8
78:23 79:9
80:16 81:1
83:16 159:2
163:8,14 191:8

**testify** 11:24
12:13 88:6

**testifying** 94:1
146:22 179:15

**testimony**
8:16 17:7,18
31:13 33:5,15
48:4,23 50:2
51:5 53:12
57:11 60:23
63:21 64:2,5
65:4 66:8,16
67:8,10 72:5
79:19 80:21,24
85:24 86:5,7
87:9 94:5,13
106:25 107:12
120:19 148:8
155:3 158:12,
21,24 159:19
160:3 179:8
188:2 190:21

**text** 153:22

**texts** 126:15

**TFI** 171:7

**That'd** 189:1

**that'll** 33:9

**theft** 85:11
116:7 177:17

**theme** 62:4
63:18 86:8,10,
20

**themes** 59:13
60:12 87:1

**theoretical**
76:7

**thing** 10:25
12:23 40:3
50:21 69:10
81:13 121:16
178:17 185:18,



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

19

**things** 14:21
19:23 32:13
54:22 58:18
69:21 84:2
96:16 110:6
112:19 113:16,
17,21 116:21,
24 119:3
120:14 157:24
159:11,21,25
162:25 175:5,
16 182:15,24

**thinking** 108:14
143:8 147:10

**thirsty** 185:16

**thought** 49:7
71:3 77:15
80:15 108:7,21
109:18 121:8
133:7 136:5
179:8

**threat** 83:8

**threaten** 76:21

**threats** 82:8,9,
10,20,23 83:2

**throw** 177:20

**throws** 178:17

**time** 7:6 8:25
9:1 16:4 18:16
22:1,15 25:4
27:8,18 30:10
37:22 42:14
43:9 44:17,22,
23 45:24 46:4,
21 49:15 50:4
58:9,11 61:11
65:20 66:20
67:17 69:6
72:4,6,9 74:21
77:7,23 78:4,5,
10,17 80:3,13,
17 81:6 83:22
84:1,6 85:12
88:5,8,14,17,21
89:10,15 90:24
91:4,6 94:14
95:8 96:9,10,18
97:18 98:8,9,13
100:19 108:7

110:3,12 114:4,
13,17,24
116:14 117:5,
21 118:4,13
119:9 121:13
124:4 125:18
127:19,25
128:7,23 129:4,
13,16,19 130:2,
9,12 132:25
133:15,21
134:13,15
135:2 143:8,9
144:14 145:2,
10 146:3,21
149:18 151:24
154:8 155:2
157:10 158:5,
12,13 159:16
160:7 161:7
163:19,22
166:7,8 168:17
172:21,22
173:2,17,19,20
177:23 178:14
181:17,22
182:11 184:6,
17,19,20 185:4
186:5,10,14,16,
22 187:8
189:16 192:10

**times** 13:3 99:3
120:25

**tired** 190:17

**title** 13:19
21:12 97:11

**titled** 15:9,23

**titles** 22:8

**today** 7:5,7,19
10:19 11:24
14:17 15:5
17:7,16 29:25
53:6,11 63:21
64:5 66:9 72:5
78:23 79:9
85:25 88:6 94:8
105:8 117:14
119:7,22
120:19 144:25
146:22 153:12
158:18 159:6
160:2 163:9
170:25 171:21

174:13,25
175:1

**today's** 15:16
18:9

**top** 15:7 59:8
106:1 119:3
124:7,8 142:25

**topic** 12:1,13,
15,17 13:5
109:15 113:6
147:17

**topics** 12:5
13:17,24 14:18
17:18 105:13
116:22

**totally** 69:13

**touched** 98:25

**Townsend**
164:19 166:23

**Townsend's**
164:24

**track** 144:18

**traditionally**
177:16

**train** 133:7

**trained** 41:16
45:19 54:18
80:18 91:19
96:11,12 102:1
120:20 147:24
148:4,10 150:3,
11,13 163:18

**trainer** 106:4

**trainers**
100:14

**training** 12:3,
24 20:3 44:19
45:22 46:5,6,
20,23,24 47:18
48:6 49:15,23
51:13 69:2
76:18 78:24
80:9 81:8
91:14,16,21
99:16,21 100:2,
3,11 101:13
102:16,19,24
103:9,13

104:16 105:5,
11,12 107:18,
24 119:8
121:16,19
122:2,9 137:18,
20 146:8,11
147:19 149:14,
15,21,24 150:1
155:7,12,20,22
159:25 160:22
162:8 184:18,
21 186:15

**transcribed**
148:16

**transfer** 122:3
140:13 142:5
155:13,23
181:20,22

**transferred**
28:2,22 29:13
34:18 61:12
182:11

**transfers**
102:25 181:18,
19

**transition** 98:7

**transitioned**
186:15

**transmit** 126:2

**transport**
95:18

**transportation**
130:21 134:7
189:16

**transported**
95:12,14

**transporting**
95:16

**treated** 168:22

**treatment**
157:15,18,21
160:25 168:23

**tremendous**
111:10

**trial** 101:5
102:13 106:18
121:23

**trigger** 115:4

**trip** 96:2

**trouble** 31:19
148:14

**true** 12:17,23
26:13 51:16
52:11 72:24
76:19 78:21
79:10 83:9
91:10 113:7,25
114:25 141:2
146:24 157:12

**trust** 16:8

**truth** 8:17

**turn** 25:6 55:4
81:10 83:11
85:21 104:14
108:11 118:25
123:16,17
137:3 147:16

**turned** 153:13

**turning** 85:13
121:6

**two-hour** 46:5

**type** 119:1

**types** 119:19

———————

**U**

**Uh-huh** 86:15

**unable** 41:22
44:4,19 45:3,11
46:15 48:13,15
49:4,17 72:1
77:18 80:4

**uncommon**
177:5

**underage** 80:1

**underlying**
44:3

**undermine**
24:20

**underscored**
57:4 63:20

**understand**
35:2,3,8 40:25

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

utilizing 175:1, 2

---

**V**

vary 37:6

venue 154:19

verify 8:6

version 16:22, 24 18:9 66:23 169:24 179:18

versus 7:9 25:19

victim 99:6

victims 123:18 124:23 183:19 186:12

video 7:5,7

village 154:21

violated 117:7 118:10 120:22 159:21

violates 161:11

violation 118:11 134:12, 15

violations 157:20 158:4 159:3

violence 114:18

violent 139:6

Vision 15:23

volume 31:21 177:15

voluntarily 74:4

voluntariness 80:1

voluntary 73:15 74:1,15 105:20 113:3

---

**W**

wait 52:14 130:11

waiting 130:20

waive 73:25 74:3

waived 34:6 67:17

waiver 73:12, 14,20,25 74:5, 14 80:20 106:8 113:3

waiver's 74:3

waiving 192:3

walk 84:25 134:6 161:4 176:13 178:18 182:20

walking 177:3

wanted 54:13 85:1 97:23 98:16 99:14 145:19 154:25

warned 26:9 28:5 35:15 61:23 62:9 70:7

warning 28:19 80:20

warnings 25:15,17,18 26:3,17,23 27:2,24 28:16, 23 29:2,6 30:21,22 34:6 36:19 41:10 106:22 107:9 112:12,13

warrant 55:12 57:2 154:11

Washington 13:9

watch 42:19,20 43:1,4,7,10,12, 15 56:22

water 77:2

---

106:6 112:18 113:12 161:24

ways 99:9

weed 177:17 178:13

weeds 98:4

weigh 132:22

west 19:11

wide 21:21 84:18 170:20

Winstrom 7:8 8:1,4,14,22 11:21 13:3 15:3 18:11,16 24:7 33:22 38:9 42:6 43:17 63:8 64:5 65:24 79:10 109:2 144:17, 22 153:20 163:14 166:17 178:12 187:9, 25 192:2,10

Winstrom's 8:7 31:20,23 32:24 165:11

witness's 67:8 87:9

witnesses 12:8,10,19 109:10 169:19

wondered 145:9

wondering 93:18 94:1,2

word 44:3 63:19 64:19,20, 21,22,23,25 65:1,6 67:12 77:13

worded 58:2,4 62:5 147:6

wording 22:7 57:24 58:12 62:14 73:23 86:19 145:6 147:7,11

words 26:10

---

74:10 111:24 186:23

work 10:6,8 22:2,14 97:1 189:4

working 43:11

workplace 150:15

works 90:7

world 72:3 77:9,19 132:10

worries 27:20

would've 119:1 149:23 150:11,13 172:21 183:19

wow 190:16

wrap 118:2

write 38:18

writer 67:4,11

writers 66:18

writes 81:17

writing 41:4 63:16 73:8

written 12:1 29:21 34:10 51:7,18 58:7 68:25 69:1 76:17 81:5 85:9 86:22 101:2,22 107:6,15 117:16 121:10 143:19,21 144:9 167:16, 24 169:12,18 172:1 174:14 186:2

wrong 159:14 191:16

wrote 145:25 146:1 168:8

---

**X**

XYZ 136:22

---

understanding 27:13 74:13 170:9

understands 28:4 34:21 61:16,17 74:7

understood 10:7,15 21:25 27:4

unequivocal 26:10

uniform 90:6

unique 176:18 177:4

unit 16:2 20:8, 16 64:9,13 98:11 100:10, 11 104:19 124:16 139:6, 23 140:21 141:19 183:19 186:12

United 7:10 24:11

units 149:20

unknown 186:4

unlocked 56:6 57:25

unnecessary 145:7,15,21 153:15 154:17

unpack 44:21 79:20 80:12

unrelated 157:14

unusual 185:20

unwritten 12:1

utilize 174:8,17

utilized 67:12 174:19



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

**Y**

**Yamin** 7:20
8:11 13:15 17:9
18:3,12 21:17
22:4,17 25:12
26:19,24 28:13
29:18 31:3,5,
12,18 32:3,7,
15,18,21 33:2,
4,7,10,13,16,19
34:12,25 36:13,
22 37:11,19
38:6,14 39:4,
12,20 40:1,10,
19 41:13,25
42:10,17 43:8,
24 46:1 47:2,6,
22 48:10 50:5,
18 51:4,24
52:16,19 53:23
54:9,25 55:2,16
57:10 60:3,22
62:2,7,16,19,25
64:1,7 65:8,13,
15,21 66:1,3,15
67:2,7,25
68:14,16 69:9,
15 70:22 71:3,
14 72:8 74:16
75:2,7,11 76:16
77:11 78:1,8,20
79:2,6,14,16,18
80:11,23 81:22
82:5,12,16 83:4
86:4,7 87:8
88:13 89:6,14
91:1,18 97:9
98:22 101:6,16
102:5,7 104:11
105:23 106:2,
24 107:11,14,
22 108:6,13,21
109:12,16,18
110:15 111:2,
24 112:6
113:15 114:6
115:2,23 116:1
117:9 118:12
119:14,16
120:10,24
123:20 125:22
126:14 130:5,7
132:15,18

134:23 135:5,9,
24 136:8,17
138:6,9 139:8
141:1 142:20
143:23 144:4
146:9 147:4
148:1,7,13,21
149:1,4,6,8
150:24 151:6,9,
11,16,21
152:12,16,19,
22 153:3,16,21,
24 154:3 155:9
156:16,20
157:7,13 158:9,
23 159:8
161:18 162:5,
22 163:5,13,23
164:1,5,9,15
165:3,6,19
166:7 170:8
172:20 174:5
180:17 184:14
186:7,9 187:2,
12,18,24 189:1,
5,6 191:3,11,25
192:4,7

**Yamin's** 38:4

**yard** 125:18
135:3

**year** 103:21
153:11 183:13,
21

**year-old**
182:18,20

**years** 54:12
67:14 83:21
125:11,16
126:10 127:20,
21 134:18,25
151:5 183:14

**yesterday** 9:9

**young** 183:5

**younger**
127:20 151:5,
20

**youth** 12:18,20
16:10 22:13,14,
19 41:24 42:15,
25 43:5,6,10,
11,13,19,23

44:11,16,18,20
45:5,14,23
46:16 47:9,19
48:15,25 49:2,
4,8,9,12,18,25
50:15,25 51:14
56:15 58:4
68:7,10 79:1
81:4,7,8 85:16
86:13 87:6,11,
24 88:19,23,25
89:4 96:5,8,10,
23 97:2,4,6,10,
11,24 98:5,13,
18,20 99:7,16,
22 100:18,25
101:1,3,14,21
102:1,11,16
103:4,10
104:16 105:11
106:16,17
108:12 109:6,8,
21 110:12,17,
20,24 111:17
112:9,11
113:22 114:2,7
115:20 116:8,
22 117:3 118:8
119:8 120:5,11,
16,20 121:6,9,
13,15,17,22
122:14,17,23
123:13 124:9
128:11 130:18
133:24 134:5,7
135:16 136:13,
19,21 137:5,24
138:3,13 139:1,
2,17 140:23
141:17 142:15,
16 143:18
146:16,19
155:6,7,12,22
157:1,6,9,15,
16,18,19,21,22,
23 158:19
159:10,14,20
160:15,17,20,
24 161:9,15,22
162:8 173:23
175:25 176:5,
19,22,25 177:5,
11 179:5
180:22,23,25
181:6 182:3,4,
17,22,25 183:6,

9,14,15,17,22,
25 184:6,11
185:5,9,15,19,
24,25 186:14,
16,24

**youths** 137:13

**Yup** 156:20
189:5

**Z**

**zoom** 9:1,24
10:1,22 153:17

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com