IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY JAKES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19 cv 2204 |
| | ) | |
| THE CITY OF CHICAGO, *et al.,* | ) | Judge Manish S. Shah |
| | ) | Magistrate Judge Beth W. Jantz |
| Officer Defendants. | ) | |

**DEFENDANT BOUDREAU'S MOTION FOR PROTECTIVE
ORDER REGARDING PUNITIVE DAMAGES DISCOVERY**

Defendant KENNETH BOUDREAU, through his undersigned attorneys and pursuant to Fed. R Civ. P. 26(c), moves this Court for entry of a protective order limiting the scope of Plaintiff's punitive damages discovery, and in support thereof, states the following:

**INTRODUCTION**

Defendant Kenneth Boudreau has already agreed he will not raise his financial status as a defense to punitive damages in this case. (Dkt. 287). Plaintiff nonetheless insists that Boudreau respond to far-reaching discovery of his most private personal financial information. (*See* Group Ex. A, Plaintiff's First Interrogatories to Defendant Officers, No. 7; Plaintiff's First Requests to Produce to Defendant Officers, No. 32, 33). Given that Boudreau will not be raising his financial status as a defense to punitive damages, any discovery of his financial information is unnecessary and harassing. Moreover, Boudreau has been retired from law enforcement for almost a decade now, so there is no deterrent value in forcing him to divulge personal financial information. In short, Boudreau's private financial information will not make any fact in controversy in this case more or less probable (Fed. R. Evid. 401), nor is it proportional to the needs of this case because any punitive damages award would be insignificant compared to the potential compensatory

damage award. *See e.g. Rivera v. Guevara*, Case No. 12 CV 44278 (punitive damages award approximately 1% of the compensatory damages award); Fed. R. Civ. P. 26(b)(1). At bottom, Plaintiff is on a harassing fishing expedition for information that has no relevance whatsoever to this case.[1]

## DISCOVERY AT ISSUE

Plaintiff requested that Boudreau produce:

> 7. For punitive damages purposes, please estimate your net financial worth. Please describe how that net worth has been calculated by providing a balance sheet of all assets greater than $2,500 USD (including a description of any ownership of stock, mutual funds, real estate, etc.) and including all liabilities. Please also provide an income statement for the five years prior to the filing of his complaint, including your annual salary and any income from any other source for those years.
>
> 32. All Documents relating to your total financial net worth, including your three most recent tax returns. *See* Group Exhibit A.

This is in addition to Plaintiff's request that Boudreau also produce:

> "33. All Documents that support a defense by you in this litigation that an award of punitive damages would cause financial hardship."

## LEGAL STANDARD

Federal Rule of Civil Procedure 26 generally allows discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." F.R.C.P. 26(b)(1). "While discovery is often

---

[1] Plaintiff's law firm represents clients with six pending lawsuits against Boudreau. The discovery appears intended to harass Boudreau and gather information to use in other lawsuits against him.

2

broad, the Federal Rules of Civil Procedure authorize district courts to protect targets of discovery from 'annoyance, embarrassment, oppression, or undue burden or expense.'" *Am. Int'l Specialty Lines Ins. Co. v. NWI-I, Inc.,* 240 F.R.D. 401, 412 (N.D. Ill. 2007)), quoting *Stagman v. Ryan,* 176 F.3d 986, 993 (7th Cir.1999), quoting F.R.C.P. 26(c); *Sullivan v. Conway,* 1995 WL 573421, *1, 1995 U.S. Dist. LEXIS 14113, *2 (N.D. Ill. 1995) (recognizing that the policy of broad discovery is counterbalanced by the ability to limit discovery requests that impose undue burden or expense). Furthermore, a court may limit discovery if it determines that the burden of the discovery outweighs its likely benefit. *Id.* (citing F.R.C.P. 26(b)(2)(iii); *Wiginton v. CB Richard Ellis, Inc.,* 229 F.R.D. 568, 571 (N.D. Ill. 2004)).

## ARGUMENT

**I. Discovery of Boudreau's Private Financial Information is Irrelevant and Serves No Purpose.**

**A. Boudreau has not put his financial condition at issue.**

As previously stated, Boudreau has agreed not to raise his inability to pay as a defense to Plaintiff's request for punitive damages, which makes his financial condition irrelevant. The Seventh Circuit has specifically recognized that personal financial documents such as "tax returns are highly sensitive documents," *Johnson v. Soo Line R.R. Co.*, 2019 WL 4037963, * 2 (N.D. Ill. Aug. 27, 2019) (quoting *Commodity Futures Trading Comm'n v. Collins*, 997 F. 2d 1230, 1233 (7th Cir. 1993)), that become "relevant, for discovery purposes, where a litigant has put 'the level and sources of his income at issue.'" *Johnson*, 2019 WL 4037963, at * 2 (quoting *Poulos v. Naas Foods, Inc.*, 959 F. 2d 69, 74-75 (7th Cir. 1992)). Similarly, "the Illinois State Constitution offers protection for the reasonable expectation of privacy which our citizens have in their bank records." *See People v. Jackson*, 452 N.E. 2d 85, 88-89 (Ill. Ct. App. 1st Dist. 1983); *see also In re May 1001 Will Cnty. Grand Jury*, 604 N.E. 2d 929, 937 (Ill. 1992) ("[A]rticle I, section 6, of the Illinois

3

Constitution of 1970 (Ill. Const. 1970, art. I, § 6) assures citizens a right of privacy in their bank records.").

Here, because Boudreau elects not to assert an inability to pay defense, he has not put "the level and sources of his income at issue," *Johnson*, 2019 WL 4037963, at * 2, and as such, his financial position is irrelevant. *See Morgan v. Spivey*, No. 5:16-CV-365-FL, 2019 WL 4463299, at * 1 (E.D.N.C. Sept. 17, 2019) (citations omitted) (holding that when a defendant did not put his ability to pay into issue "financial condition becomes irrelevant to the issue of calculating an appropriate amount of punitive damage"); *Soto v. City of New York*, No. CV124241-MKB-VVP, 2014 WL 1278275, * 2 (E.D.N.Y. Feb. 25, 2014) (denying motion to compel financial information where defendants did not raise inability to pay defense because "the plaintiff's effort to compel the defendants to disclose extensive personal financial information is little more than a fishing expedition unlikely to lead to evidence admissible at trial").

### B. Boudreau's financial condition is irrelevant to the assessment of a punitive damages award.

Punitive damages should be based on the wrong, not the status of the defendant. *See* Seventh Circuit Model Civil Jury Instructions § 7.28, Committee Comments (a) - (b) (Punitive damages recoverable if Plaintiff shows by a preponderance of the evidence that actions of that defendant done knowingly and maliciously with evil motive or intent or reckless callous indifference to the federally protected rights of others); *see also* §7.28 Committee Comments (c) (Defendant's financial condition language ***should only be given if*** evidence was admitted on that topic). Plaintiff has no burden of production with respect to a Defendant's financial net worth to justify such an "exploration." *See Kemezy v. Peters*, 79 F. 3d 33, 36 (7th Cir. 1996). Instead, "the usual practice with respect to fines is not to proportion the fine to the defendant's wealth, but to

4

allow him to argue that the fine should be waived or lowered because he cannot possibly pay it." *Id*. (citing U.S.S.G. §5E1.2(a); *United States v. Young*, 66 F. 3d 830, 839 (7th Cir. 1995)).

Nonetheless, and despite the fact that Boudreau has not put the "level and sources of his income at issue" (*Johnson*, 2019 WL 4037963 at * 2), Plaintiff seeks wide-ranging and highly personal financial information through both interrogatories and requests for production. In the parties' joint status report (Dkt. 287), Plaintiff asserts that he is entitled to "explore" Boudreau's financial condition to justify an increased award of punitive damages because if Boudreau is wealthy, a larger punitive damages award is warranted to deter future conduct. *See* Dkt. 287, p. 2 (citing cases regarding the deterrence effect of a punitive damages award based upon individual wealth). This argument, however, is completely untethered to the specific circumstances here and turns the standard with respect to punitive damages on its head. Even assuming Plaintiff's speculation about Boudreau's "wealth" was true, the Seventh Circuit has held that an individual defendant's "wealth is not a sufficient basis for awarding punitive damages" because it "would be discriminatory and would violate the rule of law [ ] by making punishment depend on status rather than conduct." *Mathias v. Accord Economy Lodging, Inc*., 347 F. 3d 672, 677 (7th Cir. 2003). Plaintiff's approach ignores precedent establishing that punitive damages should be proportional to the wrongfulness of the defendant's actions and not to the wrongdoer's wealth status. *Mathias*, 347 F. 3d at 676 ("[S]anctions should be based on the wrong done rather than on the status of the defendant; a person is punished for what he does, not for who he is."); *Morgan*, 2019 WL 4463299 at * 1 ("However, the Supreme Court has also cautioned that, with respect to punitive damages, 'plaintiffs do not enjoy a windfall because they have the good fortune to have a defendant with a deep pocket.'") (citing *Pacific Mut. Life Ins. v. Halsip*, 499 U.S. 1 (1991)).

5

Supreme Court jurisprudence also casts substantial doubt on plaintiff's rationale. For example, in *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003), the Court overturned a punitive damages award it deemed to be excessive, stating that "[t]he precise award in any case, of course, must be *based upon the facts and circumstances of the defendant's conduct and the harm to the plaintiff*." *Id*. at 425 (emphasis added). Although the Court generally observed that the purposes of punitive damages are deterrence and retribution, *see id*., 538 U.S. at 416, "the degree of financial distress imposed on the defendant played <u>no part</u> in the Court's calculus concerning the excessiveness of the award." *Soto*, 2014 U.S. Dist. LEXIS 24627 at *3 (relying on *Campbell* and denying motion to compel individual defendants to provide discovery concerning their personal finances) (emphasis added). Rather, relying on *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996), the *Campbell* Court identified the following three guideposts for evaluating punitive damages awards, none of which depends on a defendant's income or wealth:

> (1) The degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

*Campbell*, 538 U.S. at 418 (citing *Gore*, 517 U.S. at 575). In analyzing these and other guideposts, the Seventh Circuit explicitly acknowledged that a defendant's wealth has no bearing on the reasons for punitive damages awards: "What is striking about the purposes that are served by the awarding of punitive damages is that none of them depends critically on proof that the defendant's income or wealth exceeds some specified level." *Kemezy*, 79 F. 3d at 35 (emphasis added).

Recognizing the irrelevance of a defendant's personal financial condition, courts in our district have determined that if a defendant introduces his financial condition by asserting an inability to pay, that the plaintiff be allowed to introduce evidence of **indemnification for compensatory damages**, as opposed to a defendant's personal financial position. See *Jones v. City*

*of Chicago*, 2017 WL 413613, * 4 (N.D. Ill. 2017) ("[Plaintiff] may, however, introduce evidence of the City's indemnification if Defendants open the door by presenting evidence of their financial condition"); *Gonzalez v. Olson*, 2015 WL 3671641, * 7 (N.D. Ill. 2015) ("[I]f Defendants plead poverty as to punitive damages, they open the door for Plaintiff to offer evidence of indemnification as to compensatory damages"); *Brinkley v. Santiago,* 11 C 6282, 2013 WL 12309671, at *3 (N.D. Ill. July 11, 2013) (granting in part plaintiff's motion in *limine* to bar defendants from introducing evidence regarding their inability to pay punitive damages, but allowing introduction of evidence concerning indemnification by the City of Chicago for compensatory damages should defendants introduce their lack of financial means as a defense).

It is also clear based upon Plaintiff's assertion that they are seeking this discovery to "justify an increased award" of punitive damages that he has already determined a range of punitive damages he intends to seek, which will likely be similar to other punitive damages requested by Plaintiff's counsel in similar police misconduct cases. Indeed, in *Rivera*, defendants who chose not to put on an inability to pay defense did not produce any financial information evidence. As a result, in the punitive damage jury instruction at trial, plaintiff's counsel in *Rivera* (the same firm who represents Plaintiff in this case) simply removed the financial condition element and argued at closing for a punitive damages award of $25,000 to $100,000. (*See* June 26, 2018 trial transcript of *Rivera*, 12 CV 4428, at 4119-4120; June 27, 2018 trial transcript in *Rivera*, 12 CV 4428, at 4226-4227, Group Exhibit B). The plaintiff in *Rivera* never argued that the case could not be prosecuted fully without having the personal financial information from the individual defendants or that the actual punitive damages awarded was too small to adequately set a deterrence factor in future misconduct – nor does Plaintiff make that argument here. As demonstrated in *Rivera*, Plaintiff's counsel is capable of determining the amount of punitive

7

damages sought without evidence of a Defendant's financial condition. In fact, the pattern jury instructions clearly contemplate simply removing the instruction concerning a defendant's financial condition should that evidence not be allowed. *See* Seventh Circuit Model Civil Jury Instructions § 7.28. Thus, for these reasons too, discovery of Boudreau's financial information is plainly not relevant.

### C. Boudreau's financial information will not increase the deterrence value of a punitive damages award.

Plaintiff's argument also ignores that knowing Boudreau's private financial information will not increase the deterrence value of the punitive damages award at all. Boudreau has long since been retired. His sole remaining Co-Defendant is deceased. Other officers will not be aware of his worth (nor should Plaintiff be allowed to publicly disclose this information) to judge how it will impact Boudreau financially. In short, Plaintiff has provided no legitimate justification for delving into Boudreau's most sensitive, private financial information.

An award of punitive damages will have no effect of deterring Boudreau's future conduct because he has been retired from law enforcement for almost a decade. *See Annis v. County of Westchester*, 939 F. Supp. 1115, 1122 (S.D.N.Y. 1996), aff'd in part, vacated in part, remanded, 136 F. 3d 239 (2d. Cir. 1998) (noting, in reducing punitive damages, that because defendant had "retired from the police force, there is little to no change that he will be again in a position of authority over a police officer."). Plaintiff also cannot argue that this information is warranted to deter other officers from committing misconduct as Boudreau's only remaining Co-Defendant is deceased, the prior Co-Defendants in this case were also long retired, and the allegations and investigation that is the subject of this lawsuit occurred in 1991, over 32 years ago. As such, preventing Plaintiff from discovering Boudreau's private, personal and highly sensitive financial information will not affect how other officers evaluate the severity of the award.

8

### D. There is no adequate protection for Boudreau's highly sensitive financial information.

Finally, a protective order or confidentiality designation does not adequately protect Boudreau's privacy interests with respect to this type of information. Indeed, "[i]t seems self-evident that a person's personal financial records dating back five years… are something almost all persons would prefer to keep private… [A] request for such records would be, for most, annoying and quite likely embarrassing, unduly burdensome, and expensive as well. We think that rare is the person, even one of clear conscience, who would unhesitatingly respond to such a request without being compelled, even with assurances of confidentiality. *Estate of Lee ex rel. McGarrah v. Lee & Urbahns Co.*, 876 N.E. 2d 361, 369 (Ind. Ct. App. 2007). In fact, there is no guarantee that this type of personal financial information will not effect other and/or future litigation. Simply marking a document confidential and/or attorney's eyes only does not erase the knowledge of the information contained in the document(s) by the reader. And, as this Court is well aware, Boudreau is not only a named Defendant in another matter currently pending in this district brought by Plaintiff's law firm (see *Arnold Day v. Boudreau*, et al., Case No. 19 CV 7286, summary judgment briefing to be completed by February 19, 2024), Boudreau has also been sued by this particular firm a total of eight times between 2006 and 2019. As such, while the confidentiality and/or attorney's eyes' only designation may suffice to ensure that this information is not made publicly available, it is insufficient to ensure this information will not be used for any purpose other than preparation of trial or the instant litigation or that such knowledge will not affect future litigation. To conclude otherwise would be to determine that this case may somehow operate in a vacuum despite the extensive overlap, common players and common claims that are often made in these types of reversed conviction cases, and particularly against Boudreau by this law firm.

## II. Plaintiff's Requests for Financial Information are Overbroad and not Proportional to the Case

Finally, even if there was some justification for discovery of Boudreau's personal financial information (which there is not), Plaintiff's requests are unreasonably overbroad and not proportional to the needs of this case when weighing "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

As this Court is well aware, punitive damages are generally a modest portion of the damages awarded in these cases. Regardless, Plaintiff has asked Boudreau to provide a balance sheet of all his assets greater than $2500 (including a description of any ownership of stock, mutual funds, real estate, etc.), all his liabilities, an income statement for the five years prior to filing of the complaint, including annual salary and all sources of income for those years and any and all documents relating to his total financial net worth, including his three most recent tax returns. *See* Plaintiff's discovery requests, Group Ex. A, *supra* at p. 2. It is unclear why Plaintiff needs such a broad swath of Boudreau's private financial information if the only intention is to justify for a jury the requested amount of punitive damages, especially where Boudreau himself has agreed he will not raise his financial status as a defense to punitive damages.

Moreover, only a Defendant's **current** financial condition is relevant to a punitive damages award and therefore, it is unclear why Plaintiff needs information going back five years prior to the filing of the Complaint, which in this case would mean information from 2014 to the present. *See Novak v. Pearlstein*, 2016 U.S. Dist. LEXIS 82674, * 10-11 (N.D. Ill. June 24, 2016) (*citing Platcher v. Health Professionals, Ltd.*, 2007 U.S. Dist. LEXIS 68838, 2007 WL 2772855, at *3

10

(C.D. Ill. Sept. 18, 2007) ("'Only Defendants' current assets and liabilities are relevant to the punitive damages claims against them, and the documents requested far exceed what is necessary to establish those figures."). The extensive discovery Plaintiff seeks is also time consuming and expensive. *See Estate of Lee ex rel. McGarrah*, 876 N.E. 2d at 369 ("[A] request for such records would be, for most, annoying and quite likely embarrassing, unduly burdensome, and expensive as well."). For these reasons, the discovery sought by Plaintiff is clearly overly broad and not proportional to the needs of the case given the factors articulated by Rule 26.

## CONCLUSION

WHEREFORE, Defendant Kenneth Boudreau respectfully requests that the Court grant this motion and enter a protective order barring any discovery of Boudreau's personal financial information, and for such further relief as this Court deems appropriate.

June 28, 2023

Respectfully submitted,

KENNETH BOUDREAU

/s/ *Brittany D. Johnson-Delgado*
Brittany D. Johnson-Delgado
*Special Assistant Corporation Counsel*
Attorney for Defendant Boudreau
Rock Fusco & Connelly, LLC
333 W. Wacker, 19th Floor
Chicago, IL 60606
(312) 474-1000
bjohnson@rfclaw.com

11